IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD A. LUTHMANN
an individual,

      Plaintiff,

vs.

DANESH NOSHIRVAN,

      Defendant(s).

_____/

CASE NO:
2:25-cv-00337-JLB-NPM

Hon.  John L. Badalamenti

**DEFENDANT, DANESH NOSHIRVAN MOTION TO DISMISS PLAINTIFF
RICHARD LUTHMANN'S FRIVOLOUS COMPLAINT AND
MOTION TO STRIKE PURSUANT TO RULE 12(f)**

I. **Introduction**

Richard A. Luthmann's ("**Luthmann**") Complaint is the definition of a shame pleading. Luthmann has direct known (and proven) ties to Ralph Garramone, M.D. ("**Garramone**") and Jennifer Couture ("**Couture**"). Both are defendants in 2:23-cv-1218 ("**1218 Case**"), which alleges a conspiracy with cyber-terrorist, Joseph A. Camp ("**Camp**"). See 1218 Case, Dkt. 139. In 2024, Camp's association with Garramone and Couture became relatively well known.  As a result, Couture began consulting with Luthmann and Frank Parlato in relation to a smear campaign directed at Danesh Noshirvan ("**Noshirvan**"). On October 30, 2024, Luthmann published his first blog to Substack.com wherein Luthmann

expressly confirmed that he was hired to report on 2:23-cv-0340 ("**0340 Case**") and 1218 Case. Following that initial blog, Luthmann began making regular bi-weekly posts to substack.com related to the 0340 and 1218 Case. All related blog posts contained absurd, outlandish, libel statements intentionally published to harass Noshirvan and his family. Presumably, Luthmann's publications occurred at Couture's direction.

Interestingly, on May 19, 2025, Luthmann was called to testify at an evidentiary hearing in the 1218 Case. When asked directly about his ties to Couture and Garramone, Luthmann plead the fifth. Luthmann plead the fifth so many times, the Court deputy commented that Luthmann looked like a gangster on the witness stand. When asked who hired him to publish defamatory articles about Noshirvan on his Substack.com account, Luthmann, again plead the fifth.

In short, this lawsuit is vexatious and is simply a multiplicity lawsuit in a frivolous attempt to escalate a failed 0340 Case (Couture was a Plaintiff) and detract from the 1218 Case (where Garramone and Couture are defendants). Period. Luthmann's Complaint should be dismissed because: (1) this Court lacks personal jurisdiction over Noshirvan, (2) the amount in controversy does not meet the threshold requirement of $75,000, (3) Several Counts are barred by the single publication rule, (4) Florida's Anti-Slapp statute does not create a private cause of action and Luthmann use of same is procedurally improper, (5) injunctive relief is

not available in Florida for defamatory statements and  Luthmann has not made a requisite showing to support application of a prior restraint on speech or a preliminary injunction, (6) Luthmann's request for declaratory relief is duplicative of libel counts, subsumed, and barred by the single publication rule, and (7) the term pedophile as utilized in the Substack post relates to a psychiatric disorder; a state-of-mind. A mental fantasy. Standing alone, the term does not denote any criminal, sexual, or deviant action.[1] Dismissal is warranted.

## II. Background

1. On April  16, 2025, Luthmann published a blog labeled "Danesh Jumps the Shark.[2] In that article, Luthmann published stolen materials, which he falsely claimed depicted minors (the photographs did not).

2. On April 17, 2025, Noshirvan published an article discussing  the treatment his wife received during her deposition.[3]  In that article, Noshirvan explains that: (i) Camp and Richard Luthmann happen to be Jennifer Couture's goons. (ii) there is list of people who have defamed Noshirvan at Jennifer's direction (including Luthmann). (iii) "[t]he abusive deposition by Julian was the exact abuse Noshirvan and family

---

[1] https://www.merriam-webster.com/dictionary/pedophile
https://jaapl.org/content/42/4/404 (Pedophilia and child molestation are not the same).
https://www.law.cornell.edu/wex/pedophilia;
https://connects.catalyst.harvard.edu/Profiles/display/Concept/Pedophilia
[2] https://luthmann.substack.com/p/danesh-jumps-the-shark?utm_source=substack&utm_medium=email&utm_content=share
[3] https://thatdaneshguy.substack.com/p/breaking-lawyer-of-child-stalker

endured from Couture, Garramone, and Camp. The abuse that they are being sued for. (iv) Julian and Luthmann are in possession of sexually explicit images Camp stole without consent. (v) Julian, his clients, and their associates also implied that the adult women in the photo may be underaged without any evidence. If that was true (it's not) it would mean THEY'RE KNOWINGLY IN POSSESSION OF AND DISTRUBUTED CHILD PORN.

3. On April 17, 2025 at 11:14 a.m. Luthmann emailed statutory pre-suit notice (§770.01, Fla. Stat.) to myself and my attorney. See Dkt. 1-2, p. 29. The original statement published on April 17, 2025 was:

> "This misogynist was told by my wife that she didn't want to share personal information with him because he will share it with pedophiles Joey Camp and Richard Luthmann to harass her with."

4. At 11:58 a.m. on April 17, 2025, Noshirvan's counsel agreed in writing to correct the typo in the statement. See Dkt. 1-2, p.33. Noshirvan's retraction or correction occurred by 11:58 a.m. on April 17, 2025; the statement read:

> "This misogynist was told by my wife that she didn't want to share personal information with him because he will share it with pedophile[] Joey Camp[;]  and convicted felon and disbarred attorney Richard Luthmann to harass her with."

5. Noticeably, the "s" from the term pedophile was removed and a semicolon was added to clarify related but independent clauses. The correction occurred within 44 minutes of receipt of Luthman's pre-suit notice. See Noshirvan's declaration. Dkt. 1-2, p. 33. On April 17, 2025, at 11:58 a.m., Luthmann was expressly advised:

> To the extent that you self-profess to be in possession of stolen property and falsely claim that property depicts minors, you - yourself would be illegally in possession of child porn. Now that we clarified that, my client is willing to amend the statement to:

> "This misogynist was told by my wife that she didn't want to share personal information with him because he will share it with pedophile Joey Camp;  and convicted felon and disbarred attorney Richard Luthmann to harass her with." *Id.*

6. The quote in paragraph 3 is the only statement in which Luthmann provided statutory pre-suit notice. Dkt. 1-2, p. 29.

7. Noshirvan's Substack publication is posted on a passive website, which does not sell anything but allows subscribers. Luthmann's Complaint fails to state that Noshirvan's statements were accessible in Florida and accessed in Florida prior to correction.

8. Subject matter jurisdiction does not exist because Luthmann's defamation claim is limited to ***actual damages*** (see §770.02, Fla. Stat.), and only 12 viewers viewed the publication before correction occurred. At a CRM of 5.40 per thousand views or impressions, Luthmann fails to

meet the jurisdictional amount necessary for diversity jurisdiction.  See Silversmith Declaration, p. 50-51.[4] (12 impressions x $5.40/$1,000 CPM = $0.06).

## III. This Court Lacks Personal Jurisdiction Over Danesh Noshirvan

### A. Standard

Personal jurisdiction "concern[s] the extent of a court's power over the parties and the fairness of requiring a party to defend itself in a foreign forum." *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 857 (11th Cir. 1988). It "represents a restriction on judicial power ... as a matter of individual liberty." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 1570, 143 L.Ed. 2d 760 (1999). "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE*, Inc., 843 F.2d 489, 492 (11th Cir. 1988). A two-step analysis is required; the court must first determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute and then examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States

---

[4] Mr. Silversmith's report was created for rebuttal in 2:23-cv-1218. However, his analysis as it relates to damages is relevant here. See pgs. 48-50, ¶105.

Constitution. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). A plaintiff seeking to subject a nonresident defendant to jurisdiction of the court through the long-arm statute must do more than allege facts that show a possibility of jurisdiction." *Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*, 139 F. App'x 140, 142 (11th Cir. 2005) (quoting *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990)). However, a defendant contesting the complaint's allegations concerning jurisdiction must present evidence in support of his position. *Id.* (quoting *Acquadro v. Bergeron*, 851 So.2d 665, 671 (Fla. 2003)).

### B. Argument

Here, Luthamnn bears the burden of establishing a prima facie case of jurisdiction over Noshirvan but completely fails to allege long-arm jurisdiction pursuant to section 48.193, Florida Statutes. This foible is not only critical, but also fatal to this Court jurisdiction over Noshirvan. While arguably Florida's long-arm statute does allow jurisdiction for "committing a tortious act within" the State of Florida, Luthmann was required to show that the exercise of jurisdiction would not offend "the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1208 (M.D. Fla. 2021).

"[A] nonresident generally must have "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014)(cleaned up). The minimum contact requirement applies even when intentional torts are involved. *Id.* The focus "is on 'the relationship among the defendant, the forum, and the litigation.'" *Id.* That relationship must arise out of contacts self-created by the defendant and the forum state. *Id.* Defendant's contact with persons who reside in the forum state is irrelevant to the analysis. *See Id.* A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum. *Id.* (explaining that the court's jurisdictional inquiry in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804, "focuse[d] on 'the relationship among the defendant, the forum, and the litigation.'). In *Calder*, a newspaper publication **sold and distributed over 600,000 physical copies** in California and the defendant <u>knew</u> that the brunt of the injury would be felt in California. *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 Fed. Appx. 406, 408 (6th Cir. 2015)(questioning the *Calder* in light of *Walden*). Based on the defendant's knowledge and intentional distribution of over 600,000 physical copies of a publication into a forum state, the Calder court found that personal jurisdiction exited. *Calder*, 465 U.S. 783. Unlike *Calder,* no physical copies were sold in Florida and only approximately 12 people (none in Florida) viewed the Substack article before it was corrected. On these facts, *Walden*, not *Calder* applies.

To make matters worse, Luthmann did not allege that Noshirvan maintained contacts or a personal connection with Florida or that Noshirvan's substack message board was accessible and accessed in Florida. The Eleventh Circuit Court of Appeals affirmed a district court's dismissal for lack of personal jurisdiction, reasoning that the complaint failed to make a showing on an essential element of its case, that is, that the statements were accessed in Florida. *Catalyst Pharm., Inc. v. Fullerton*, 748 F. App'x 944 (11th Cir. 2018)(addressing alleged posts on a Yahoo Finance Message Board); *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010); *Zimmerman*, 521 F.Supp.3d at 1211; *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020)(defendants have done nothing to "tether[ ]" the effect of their actions to the forum state; due process rights are violated).

## IV. This Court Lacks Subject Matter Jurisdiction over Danesh Noshirvan

### A. Standard of Review

Federal courts are courts of limited jurisdiction. *Landrum v. Delta Int'l Mach. Corp.*, 2008 WL 2326324 (M.D. Ala. June 3, 2008); *Kokkohen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *Landrum* at *1; *Kokkohen*, 511 U.S. at 377. Federal courts owe a "strict duty" to exercise the limited jurisdiction Congress confers on them. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). "[S]ubject matter

jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power." *E.R. Squibb & Sons v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 929 (2d Cir. 1998). Whether raised by the litigants or not, the federal courts, including appellate courts, are duty-bound to determine jurisdiction and dismiss any case in which it is found to be wanting. *See De La Sancha v. Taco Bell of Am., Inc.*, 08-81325-CIV, 2008 WL 5111331, at *1 (S.D. Fla. Dec. 4, 2008)(citing *Liberty Mutual Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir.1995), for proposition that Federal courts have "an ever-present obligation to satisfy themselves of their subject matter jurisdiction", which "applies equally in removal cases"). "[J]urisdiction is not a game. As the U.S. Supreme Court has made abundantly clear, it is one of the fundamental tenets of our Constitution that only some cases may be brought in federal court." *E.R. Squibb & Sons*, 160 F.3d at 929 (citing *Healy v. Ratta*, 292 U.S. 263 (1934)).

## B. Argument

This a case is before the Court on the alleged basis of diversity jurisdiction pursuant to 28 U.S.C 1332. See Dkt 1, ¶5. However, 28 U.S.C 1332 requires not only complete diversity of citizenship between the parties but also that the amount in controversy exceed the sum of $75,000 dollars. Luthmann implausibly argues that one article containing ***a single statement*** that referred to Luthmann as a pedophile could result in over $75,000 dollars in damages. However, Luthmann's assertions

are belied by attachments to the Complaint. See Ex. D and E.  Notably, Luthmann

provided statutory pre-suit notice pursuant to section 770.01, Florida Statutes on

April 17, 2025 at **11:14 a.m.** See Dkt. 1-2, p. 29. At **11:58 a.m**. on April 17, 2025,

Noshirvan's counsel agreed in writing to retract the statement. See Dkt. 1-2, p.33.

The original statement published on April 17, 2025 was:

> "This misogynist was told by my wife that she didn't want to share
> personal information with him because he will share it with
> pedophiles Joey Camp and Richard Luthmann to harass her with."

Noshirvan's retraction occurred by 11:58 a.m. on April 17, 2025; the
statement read:

>  "This misogynist was told by my wife that she didn't want to share
> personal information with him because he will share it with
> pedophile Joey Camp;  and convicted ***felon and disbarred attorney***
> Richard Luthmann to harass her with."

Luthmann makes no mention of Noshirvan's revised statement, nor does he

take issue with being called a felon or a disbarred attorney ─ as both are true and

factually accurate.  First, the initial statement was only published for 44 mins and

Luthmann does not mention how many views it had. See **Declaration of**

**Noshirvan**. The current retracted or corrected version only shows 29 views in

total. "The average CPM ("cost per mille" or cost-per-thousand views) for social

media advertising is $5.40." So, arguably it would cost Luthmann less than $0.06

to repair any harm done to him. **See Silversmith Report.** Secondly, Luthmann was

required to provide a five-day cure period. See §770.01, Fla. Stat; *Comins v.*

*Vanvoorhis*, 135 So. 3d 545, 560 (Fla. 5th DCA 2014); *Plant Food Sys., Inc. v. Irey*, 165 So. 3d 859, 861 (Fla. 5th DCA 2015)(holding a website engaging in the free dissemination of information and internet publishers of various and information constitute a public medium for purposes of pre-suit notice). Because a full and fair correction or retraction of an honest mistake was made timely made, Luthmann can only recover "**actual damages.**" See §770.02, Fla. Stat. Luthmann's actual damages are under a dollar Period. Thus, Luthmann has not plausibly alleged, nor has he satisfied the jurisdictional requisite to invoke this Court's diversity jurisdiction.

### V.    Luthmann failed to adequately state a case of action

#### A. Motion to Dismiss 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A Plaintiff need not plead "detailed factual allegations," but the complaint must offer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

To meet the *Iqbal/Twombly* plausibility standard, a complaint must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (alteration added)). A claim will not survive "if it tenders naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557). Unsupported allegations and conclusions of law do not benefit from the favorable reading rule. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The court should not assume that the plaintiff can prove facts that were not alleged. *Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1261 (11th Cir. 2009) ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [a] plaintiff's allegations." (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)). Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

### B.  The Single Publication Rule Bars Counts 3, 4, 5, and 6

Under Florida law, a plaintiff cannot proceed on concurrent counts for related torts that are "intended to compensate for the same alleged harm" as a defamation claim." *Miller v. Gizmodo Media Group, LLC*, 18-24227-CIV, 2019 WL 1790248, at *11

(S.D. Fla. Apr. 24, 2019)("When claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essential the same defamatory publication or event.")) (citation omitted). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Grlpwr, LLC v. Rodriguez*, No. 3:23CV16480-TKW-HTC, 2023 WL 5666203, at *7 (N.D. Fla. 2023)(citation omitted). Thus, under the single publication doctrine, a cause of action that is based on another tort may not be maintained "regardless of whether [a plaintiff] chooses to assert the alternative claim, succeeds on the alternative claim, or the alternative claim is barred." *Griffin v. United States*, No. 3:18-CV-651-J-39MCR, 2019 WL 1092741, at *7 (M.D. Fla. 2019)(citation omitted). "In contrast, a plaintiff may recover for separate claims when they are 'properly pled upon the existence of independent facts.'" *Miller*, 2019 WL 1790248, at *11.

Luthmann's claims in Counts 3, 4, 5, and 6, are based on the same inaccurate conclusory allegations that he was "accused of pedophilia", "labeled a pedophile", or "falsely accused of the crime of pedophilia" (which does not exist). See Dkt.1, ¶¶20-4, 63-4, 74, 83-4, 86, 95-7, 101, 108, 113-7. Because Counts 3, 4, 5, and 6 contain the same underlying conclusory allegations of an allegedly defamatory term, that

seek the same damages, those counts must be dismissed with prejudice. See *Miller*, 2019 WL 1790248, at *11. (dismissing a tortious interference with business relationships claim as one sounding in defamation).

In that same vein, Luthmann has not properly a claim for negligent or intentional infliction of emotional distress in Count 3. *See Ponton v. Scarfone*, 468 So. 2d 1009, 1010 (Fla. 2d DCA 1985)(sexual utterances insufficient); *Lay v. Roux Laboratories*, 379 So.2d 451 (Fla. 1st DCA 1980)(humiliating language, vicious verbal attacks and racial epithets insufficient); *Studstill v. Borg Warner Leasing*, 806 F.2d 1005 (11th Cir.1986)(harassment, jokes, off-color comments, profane language, and unwanted physical contact, insufficient to support a claim for IIED). Under Florida law "conduct must be exceeding outrageous and reprehensible in order to form the basis for a claim of intentional infliction of emotional distress." *Golden v. Complete Holdings*, 818 F.Supp. 1495, 1499 (M.D.Fla.1993); *Howry v. Nisus, Inc.*, 910 F. Supp. 576, 580 (M.D. Fla. 1995). Luthmann has not met that heavy burden. The Court must dismiss Counts 3, 4, 5, and 6.

### C.    Florida's Anti-Slapp Statute Does not provide a civil cause of action

Section 768.295, provides in part:

*A person* or governmental entity *in this state may not file or cause to be filed*, through its employees or agents, *any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue*, or right to peacefully

assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

*A person* or entity *sued by a* governmental entity or *another person* in violation of this section *has a right* to an expeditious resolution of a claim that the suit is in violation of this section. A person or entity may move the court for an order dismissing the action or granting final judgment in favor of that person or entity...The court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section.

Nowhere in Florida's Anti-Slapp statute does the legislature expressly authorize a private cause of action. In fact, the statute imposes a penalty on a Plaintiff who attempts to suppress or chill protected speech. The only right provided by the Legislature, was provided to the defendant – the person sued.

When the language of [a] statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 3d 1, 9 (Fla. 2012) (courts apply the "unequivocal meaning" of a statute's "clear and unambiguous" text and do "not resort to the rules of statutory interpretation and construction" where the language of the statute "conveys a clear and definite meaning"). "This is so because the Legislature is assumed to know the meaning of the words used in the statute and to have expressed its intent through the use of the words." *Wyche v. State*, 232 So. 3d 1117, 1120 (Fla. 1st DCA 2017) (citing *Dadeland Depot, Inc. v. St.*

*Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1225 (Fla. 2006)). Put simply, "courts must presume that a [L]egislature says in a statute what it means and means in a statute what it says there." *Storey Mountain, LLC v. George*, 357 So. 3d 709, 715 (Fla. 4th DCA 2023). Because the legislature intentionally omitted any right to a private cause of action in the Anti-Slapp Statute, the Court must dismiss Count 4.

### D.    Injunctive relief is not available for alleged defamation and the issue is moot as the publication was timely corrected

As a substantive right, "injunctive relief is not available to prohibit the making of defamatory or libelous statements." *Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So. 3d 1086, 1090 (Fla. 3d DCA 2014); *Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla. 4th DCA 2013)(same). Further, a district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998) (citing *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989)). In the Eleventh Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' " as to each of the four prerequisites. *Id.*; *see also Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir.1975)

(grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion); s*ee Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 909 F.2d 480, 486 (11th Cir.1990) (affirming denial of preliminary injunction even though plaintiff established likelihood of prevailing because plaintiff failed to meet burden of proving irreparable injury); "*Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990) (reversing preliminary injunction based solely on plaintiff's failure to show irreparable injury); *Flowers Indus. v. FTC*, 849 F.2d 551, 552 (11th Cir.1988) (same); *United States v. Lambert*, 695 F.2d 536, 540 (11th Cir.1983) (affirming denial of preliminary injunction and stating that a plaintiff's "success in establishing a likelihood it will prevail on the merits does not obviate the necessity to show irreparable harm"). The asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." *City of Jacksonville*, 896 F.2d at 1285 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir.1989)).

Here, several elements necessary for an injunction are not met. Similarly, Luthmann bares a heavy burden, which he has not met. *See Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971)( "No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices … warrants use of the injunctive power of a court.")). This Court must dismiss

Count 5 because no plausible claim for injunctive relief has been pled; and this request is **moot** because the Substack post was corrected within **44 minutes** of publication.

### E.    Truth, opinion, and commentary are complete defenses to a claim for defamation

When a tort claim is "brought as a result of constitutionally-protected speech, the claim is subject to the same First Amendment requirements that govern actions for defamation." *Gardner v. Martino,* 563 F.3d 981, 992 (9th Cir. 2009) Communication of substantially truthful information and opinions are constitutionally protected speech. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107 (Fla. 2008). Florida law requires "that the publication shall be substantially true, and that mere inaccuracies, not affecting materially the purport of the article, are immaterial." *Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 461 (Fla. 3d DCA 2023). A statement is pure opinion when it is "commentary or opinion based on facts that are set forth in the subject publication or which are otherwise known or available to the reader or listener." *Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d 353, 356 (Fla. 3d DCA 2020). By contrast, a statement is mixed opinion "when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication." *Stembridge v. Mintz*, 652 So. 2d 444, 446 (Fla. 3d DCA 1995) (quoting *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981)).

Thus, "commentary or opinion based on facts that are set forth in the subject publication or which are otherwise known or available to the reader or listener do not constitute libel." *Scott v. Busch*, 907 So. 2d 662, 667-68 (Fla. 5th DCA 2005).

First, the publication at issue expressly stated that Joseph A. Camp stole alleged "revenge porn images" utilized by Julian Jackson-Fanin. See Dkt. 1-2, Ex. C, p.25. Second, the publication stated that Luthmann and Joseph A. Camp are Couture's goons, and that they defamed Noshirvan at Couture's direction. *See Id.* Third, the publication expressly alleged that the Defendants and their associates in the 1218 Case claimed that the allegedly "sexual explicit image" at issue depicted a minor (not true). *See Id.* Luthmann is an associate of the Defendants in the 1218 Case and is also in possession of the stolen allegedly "sexual explicit images."[5] Luthmann believes that the images in his possession were sexually explicit (as opposed to simulated) depictions of minors (not true).[6] With that belief, Luthmann intentionally viewed, disseminated, distributed, and publicly discussed those images *ad nauseum*. With this backdrop, there is factual basis to form the opinion or provide commentary on Luthmann's readily observable predilection.

Fourth, pedophilia is a mental disorder as opposed to a crime like molestation. See Fn. 1 and 3. The critical distinction is that a mental disorder resides in ones

---

[5] https://luthmann.substack.com/p/good-day-danesh-luthmann-hopes-noshirvan
[6] **N.B.** Note the reference oat Docket 1-2, p. 26 "If that was true (it's not) that means THEY'RE KNOWLINGLY IN POSESSION OF AND DISTRIBUTING …."

head. While a crime occurs when one "acts on" the impulse of the mental disorder. *Id.* In Pedophilia and DSM-5: The Importance of Clearly Defining the Nature of a Pedophilic Disorder[7], Fred S. Berlin explains that "acting on" urges or fantasies has many meanings and often creates ambiguity in diagnosis. *Id.* Mr. Berlin further explains that while "acted on" could mean molestation, it could also mean self-gratification via mental fantasy or viewing photographs. *Id.*

What is important is that pedophilia is psychiatric disorder. The term refers to a state-of-mind. The reference to Luthmann's predilection is a reference to Luhmann's state-of-mind. Luthmann viewed, disseminated, distributed, and publicly discussed images that (he erroneously thought) were minor performing (what he erroneously thought) were sexually explicit acts. That means Luthmann (erroneously) thought he was in possession child pornography; and yet, he view it, disseminated it, distributed it, and discussed it. Clearly, Luthmann aroused some personal fantasy – even if mistakenly created solely in his own head.

Stated differently, based on his own belief that the material depicted minors in explicit acts, Luthmann's continued viewing and discussion of those materials reflects a state of mind that reasonably supports opinion-based commentary on a sexual fixation, regardless of the objective truth of the images' content. Put simply, the term "pedophile" refers to a psychiatric condition, a mental disorder or

---

[7] Journal of the American Academy of Psychiatry and the Law Online December 2014, 42 (4) 404-407.

fixation, not an accusation of illegal behavior. Given Luthmann's own apparent belief that he possessed illicit material, and his subsequent handling and discussion of that material, commentary suggesting he has a disturbing sexual interest is a protected opinion, rooted in disclosed or publicly known facts.

While Luthmann makes much to do about criminal, sexual, or deviant actions in his Complaint, Noshirvan never made any statement referring Luthmann's conduct or "acting" on his "urges." It is indisputable that the Substack post (corrected within 44 minutes of publication), was a pure opinion based on facts forth in the publication and readily available to the reader. And commentary or opinion based on facts that are set forth in the subject publication or which are otherwise known or available to the reader or listener do not constitute defamation. Accordingly, this Court must dismiss Counts 1 and 2.

### F.    Luthmann's Complaint Violates The Shotgun Pleading Rule

Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings are cumbersome, confusing complaints that do not comply with these pleading requirements." *Id.* at 1321-23. There are four basic types of shotgun pleadings: (1) those in which each count adopts the allegations of all preceding counts; (2) those that do not re-allege all preceding counts but are replete with conclusory, vague,

and immaterial facts not obviously connected to any particular cause of action; (3) those that do not separate each cause of action or claim for relief into different counts; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Id.* at 1321–23 (quotations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to ... give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018)(a district court should strike a "shotgun pleading" *sua sponte*).

Here, Luthmann adopted all the allegations and rolled them into each preceding count. See Dkt. 1, ¶¶62, 73, 82, 92, 100 and 111 (realleging "all previous paragraphs"). Under these facts, a dismissal under Rules 8(a)(2) and 10(b) is appropriate because it is virtually impossible to know which conclusory allegations are intended to support which claims for relief. *See, e.g., Jackson*, 898 F.3d at 1360.

## VI.    CONCLUSION

For all the reasons stated in this Motion, Noshirvan, respectfully request that the Court dismiss Luhmann's Complaint entirely with prejudice.

## VII.   Motion to Stike immaterial, impertinent, or scandalous matters from Luthmann's complaint.

Pursuant to this Court's Civil Action Order the undersigned reviewed

*Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:12-cv-755-T-26TBM, 2012 WL

12920185 (M.D. Fla. Sept. 17, 2012), and *United States Sec. & Exch. Comm'n v. Spartan*

*Sec. Grp., LTD*, No. 8:19-cv-448-T-33CPT, 2019 WL 3323477 (M.D. Fla. July 24,

2019), and will explain how several paragraphs and attachments bear no possible

relationship to the alleged controversy. First, Luthmann's Complaint primarily

revolves around a single isolated statement that was corrected or retracted within

44 minutes of publication. See Dkt. 1, ¶¶20-23. Yet, Luthmann in his <u>Complaint</u>

makes several unfounded allegations for which he does not have standing to

pursue, includes medical documents from the 2:23-cv-1218 case, and raises slew

of allegations simply to assassinate Nosahirvan's character. See Dkt. 1, ¶¶16, 25-6,

29-42, 47-53, 54-9 and compare with Counts I through V. See slso, Dkt. 1-2, p. 2-21

(medical records for Noshirvan and wife).  Most of Luthmann's allegations are

untethered from reality.

Wherefore, I respectfully request that this Court strike scandalous,

impertinent, immaterial allegations outline above and provide any other relief the

Cort deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

I certify that I attempted to meet and confer with Luthmann via email regarding the motion to strike but he was not available to confer. The undersigned will follow up accordingly.  A motion to dismiss does not require a conferral.

DATED: June 24, 2025.

Respectfully submitted,

Danesh Noshirvan
Pro se
2411 Charleston Rd.
Mansfield, Pennsylvania 16933
daneshnoshirvan@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Richard A. Luthmann
Pro se
338 Sugar Pine Lane
Naples, Florida 34108
(239) 631-5957
richard.luthmann@protonmail.com

*/s/Danesh Noshirvan*
Pro se