IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD A. LUTHMANN
an individual,

      Plaintiff,

vs.

DANESH NOSHIRVAN,

      Defendant(s).

_____/

CASE NO:
2:25-cv-00337-JLB-NPM

Hon.  John L. Badalamenti

**DEFENDANT, DANESH NOSHIRVAN MOTION TO DISMISS PLAINTIFF RICHARD LUTHMANN'S AMENDED COMPLAINT**

I.    **Introduction**

Richard A. Luthmann's ("**Luthmann**") "self-identifies as a professional investigative journalist." See 2:23-cv-1218 ("**1218 Case**"), Dkt. 459, p. 3. But in reality Luthmann is a 45-year-old blogger living in his parents' home in Naples, Florida. See 2-25-cv-0337 ("**337 Case**"), Dkt. 53., p. 71; 53-1, p. 25. Luthmann is a felon convicted of fraud and extortion conspiracies.[1] Luthmann has a criminal history with falsifying business records, identity theft, stalking, criminal impersonation through social media, filing a false police report and multiple election law violations.[2] Luthmann is

---

[1] https://www.justice.gov/usao-edny/pr/staten-island-attorney-richard-luthmann-sentenced-four-years-prison-fraud-and-extortion

[2] https://lawyersmutualnc.com/article/lawyer-jailed-for-social-media-misuse/

also a disgraced and disbarred attorney.[3] The disciplinary Board found that Luthmann suffers from "addiction" due to an unresolved "psychiatric condition" but neither played a role in Luthmann's "criminal conduct."[4] See Fn. 3.

Luthmann is prolific cyberstalker and digital provocateur under the guise of journalism. He is a predator with a blog. See 2:23-cv-1218, Dkt. 380, Ex. 20. Luthmann does not work for, or with, traditional media outlets. *Id.* Dkt. 228. Instead, all of Luthmann's self-serving blogs are owned and operated by Luthmann's entities, Scrivener, LLC and Richard LaFontaine, LLC, and his trust: 2022 RAL Irrevocable Trust. Both entities are based and operated out of Luthman's parent's home.[5] And both entities were created shortly after Jennifer Couture's criminal activity in a Dunkin Donuts parking lot went viral. See Fn. 4 Operating across Substack.com, Twitter/X, Muckrack.com, TikTok, YouTube, SoundCloud, Facebook, FlGulfnews.com, thefamilycircus.com, nypress.com, Parler, Snapchat, Truth Social, Threads, LinkedIn, and Instagram Luthmann presents himself as a "journalist" when, in reality, he is nothing but an online smear campaign specialist who accepts money to smear peoples' reputation. Luthmann admits that he is an influencer with

---

[3] Supreme Court of New Jersey, Disciplinary Review Board, Docket No. 20-115, District Docket No. XIV-2017-0724E ("[s]ome criminal conduct is so utterly incompatible with the standard of honesty and integrity that we require of attorneys that the most severe discipline is justified by the seriousness of the offense alone.").

**[4] N.B. The Court must take special care in fact checking Luthmann's citation in the Amended Complaint because several citations are inaccurate. For example, Luthmann cited Martinez v. Aero Caribbean, 764 F.3d 1062, 1064 (9th Cir. 2014) as Eleventh Circuit precedent. See Dkt. 53, ¶96.**

[5] https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=OfficerRegisteredAgentName&directionType=Initial&searchNameOrder=LUTHMANNRICHARDAJR%20L220004105540&aggregateId=flal-l22000410554-c45481fc-343a-4be4-b2c4-35589eebb499&searchTerm=luthmann%20richard&listNameOrder=LUTHMANNRICHARD%20L070001063751

over "100,000 followers" with "**two million monthly reads**" per month.  337 Case, Dkt. 53, ¶¶33, 37. Luthmann also concedes that he is a "media plaintiff."

In early 2024, Jennifer Couture ("**Couture**") contacted Luthmann for the purpose of utilizing his services. See Dkt. 454, p. 16. Luthmann drafted and emailed Couture a business proposal shortly thereafter.   Ralph Garramone, M.D. ("**Garramone**"), Couture, and Luthmann agreed to work together to smear Danesh Noshirvan's ("**Noshirvan**") reputation. By this time, Joseph A. Camp's ("**Camp**") association with Garramone and Couture was established. See 1218 Case, Dkt. 456. Couture consulted with Luthmann and Luthmann's associate Frank Parlato ("**Parlato**") in relation to a smear campaign directed at Noshirvan. But Parlato wanted $75,000 dollars from Garramone and Couture to participate. On the other hand, on October 30, 2024, Luthmann published his first smear campaign blog to Substack.com wherein Luthmann expressly confirmed that he was hired by a private party to report on 2:23-cv-0340 ("**0340 Case**") and 1218 Case. See *id.* Dkt. 228. Following that initial blog, Luthmann began making regular posts to substack.com related to the 0340 and 1218 Case. All related blog posts contained absurd, outlandish, libel statements intentionally published to harass Noshirvan and his family and smear their reputation. All those related blog also miraculously and disingenuously presented Couture and Garramone  in a very favorable light. Presumably, Luthmann's publications occurred as a coordinated effort with Couture and Garramone.

DARVO is a manipulative tactic used by individuals or institutions to deflect blame and responsibility for harmful actions. It stands for "Deny, Attack, Reverse Victim and Offender." The person accused (Luthmann in the 1218 Case) will first deny the accusation, then attack the accuser's (here Noshirvan's) credibility, and finally portray themselves as the victim (Luthmann in the 337 Case). The vast majority of Luthmann's allegations in the Amended Complaint are acts Luthmann or his co-conspirators have done to Noshirvan as part of the coordinated "smear campaign." If not, why would Luthmann plead the Fifth when questioned in open court on May 19, 2025? See 1218 Case, Dkt. 450-1; 337 Case Dkt. 59.

Luthmann's 71-page First Amended Complaint ("**FAC**") asserts six overlapping causes of action—defamation, abuse of process, prima facie tort, malicious prosecution, intentional infliction of emotional distress, and declaratory judgment. While prolix in style, the FAC fails to allege facts sufficient to state any claim upon which relief can be granted. At best, Luthmann seeks to transform Noshirvan's alleged online criticism and commentary—statements on TikTok, Substack, and other platforms—into actionable torts. But the First Amendment, Florida law, and federal pleading standards under Rule 12(b)(6) foreclose these claims. Many of the challenged statements are rhetorical hyperbole, not provable facts. The FAC also attempts to repackage non-cognizable claims (such as prima facie tort) and improperly duplicates defamation allegations under alternative labels. For the reasons below, the FAC should be dismissed with prejudice.

## II. Statement of Relevant Facts ("SORF")

1. Luthmann is an influencer with over "100,000 followers" with "two million monthly reads" per month.  337 Case, Dkt. 53, ¶¶33, 37. Luthmann also concedes that he is a "media plaintiff" and that he thrust himself into 2:23-cv-0340 ("0340 Case") and 1218 Case via Substack.com blogs. Luthmann is a public figure for purposes of this case.

2. Luthmann was hired by or agreed to participate in a concerted effort to promote Couture's and Garramone's reputation while destroying Noshirvan's reputation. See Exhibit B.

3. On April 16, 2025, Luthmann published a blog labeled "Danesh Jumps the Shark.[6] In that article, Luthmann published stolen materials, which he falsely claimed depicted minors (the photographs did not).

4. On April 17, 2025, Noshirvan published an article discussing  the treatment his wife received during her deposition.[7]  In that article, Noshirvan explains that: (i) Camp and Luthmann happen to be co-conspirators with Couture. (ii) Luthmann is in possession of sexually explicit images Camp stole and disseminated without Noshirvan's consent in violation of §784.049, Fla. Stat. (iii) Luthmann also published and implied that the adult women depicted in the photograph may be underaged without any evidence, proof, or verification. If true

---

[6] https://luthmann.substack.com/p/danesh-jumps-the-shark?utm_source=substack&utm_medium=email&utm_content=share
[7] https://thatdaneshguy.substack.com/p/breaking-lawyer-of-child-stalker

(it's not) it would  mean Luthmann is knowingly in possession of, and distributed, child pornography.

5.   On April 17, 2025 at 11:14 a.m. Luthmann emailed statutory pre-suit notice (§770.01, Fla. Stat.) to Noshirvan and the undersigned. At 11:58 a.m. on April 17, 2025, the undersigned agreed in writing to correct the typo in the statement. See Dkt. 1-2, p.33. Noshirvan's retraction or correction occurred by 11:58 a.m. on April 17, 2025. The correction occurred within 44 minutes of receipt of Luthman's pre-suit notice. See Dkt. 25, Ex. 1-2. On April 17, 2025, at 11:58 a.m., Luthmann was advised:

> To the extent that you self-profess to be in possession of stolen property and falsely claim that property depicts minors, you - yourself would be illegally in possession of child pornography.

6.   The terms "pedophile, "child stalker" and "federal witness intimidator" are true statements reasonably grounded in fact. See Dkt. 53, ¶292 .

7.   The phrase "not a journalist but a predator with a blog" was only made in a court filing in the 1218 Case and  is subject to litigation privilege.

8.   The phrase "criminal conspirator" was only made in a court filing in the 1218 Case and  is  subject to litigation privilege.

9.   The phrase "goes into business with child predators like … Luthmann" is reasonably grounded in fact. See Dkt. 53, ¶292.

10.   The phrase Luthmann has been involved in a crime where he lured someone to a private room so that that person could be held at gunpoint … so he could have money taken from him" is truthful. See Supreme Court of New Jersey,

Disciplinary Review Board, Docket No. 20-115, District Docket No. XIV-2017-0724E attached as **Exhibit A.** Cf. Dkt. 53-1.

11. The phrase Luthmann "is coming after my family and targeting and harassing me" is truthful and subject to litigation privilege. See 1218 Case, Dkts. 380, Ex. 20, 454, and Exhibit B; *Cf.* Dkt. 53-1, p. 31.

12. The phrase Luthmann was hired by Couture and Garramone  to engage in stalking and harassment is substantially true. Whether Luthmann was hired as opposed to agreed to conspire is of no real consequence to the statement that Luthmann stalked and harassed Noshirvan. See Dkt. 53-1, p. 52 (Luthmann bcc'ing Garramone, Couture, and Susan Miller "**Suze**").

13. Luthmann's exhibit "C" is defective. The alleged notice is dated January 02, 20**24** but claims publication on January 01, 20**25**. Unless Luthmann is a psychic the notice is not possible. See Dkt. 53-1, p. 30.  Luthmann also failed to include those statements in his actual counts.

14. Luthmann's quoted statements in paragraphs 201.a-j. are substantially true litigation privilege statements.  But none of those statements were in Luthmann's pre-suit notice. See Dkt. 53-1, p. 30.

15. Luthmann requests that the undersigned "be treated as a co-conspirator" in this 337 Case. Such a finding would defeat diversity jurisdiction as the undersigned is resident citizen of Florida. See Dkt. 53, ¶279. Dismissal is appropriate.

### III.    Legal Standard

### A. Motion to Dismiss 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A Plaintiff must offer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

To meet the *Iqbal/Twombly* plausibility standard, a complaint must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556. A claim will not survive "if it tenders naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557). Unsupported allegations and conclusions of law do not benefit from the favorable reading rule. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The court should not assume that the plaintiff can prove facts that were not alleged. *Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1261 (11th Cir. 2009) ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [a]

plaintiff's allegations."). Dismissal is particularly appropriate where, as here, the claims are duplicative, contradicted by the record of prior proceedings, and otherwise incurable as a matter of law. S*ee Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

### IV.     Luthmann failed to adequately state a case of action

#### a.  Luthmann Is A Public Figure

Public figures often have greater media access and "voluntarily expose themselves to increased risk of injury from defamatory falsehoods." *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1310 (M.D. Fla. 2021), aff'd, 2021 WL 5858569 (11th Cir. 2021). Limited public figures are individuals "who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Young v. Kopchak*, 368 So. 3d 1001, 1005–06 (Fla. 4th DCA 2023). To determine whether one is a limited public figure, courts must "determine whether there is a 'public controversy' " and "then determine whether the plaintiff played a sufficiently central role in the instant controversy to be considered a public figure for purposes of that controversy." *Id.* A public controversy is "any topic upon which sizeable segments of society have different, strongly held views." *Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72, 76 (Fla. 4th DCA 1986).

Luthmann by his own admission, is a social media influencer with 100,000 followers and 2 million blog views per month. See SORF, ¶1. Luthmann through his Substack.com blogs, which were calculated to influence public perception of the 0340 Case and 1218 Case, thrust himself into this controversy. See Ex. B.   Both the 0340

Case and 1218 Case have been widely publicized on the internet. And Luthmann

thrust himself into both cases by agreeing to participate in a concerted effort with

Couture and Garramone. *See, e.g., In Street v. National Broadcasting Company*, 645 F.2d

1227 (6th Cir.1981)(finding rape victim in widely publicized Scottsboro nine case to

be a limited public figure); *see   Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir.

2018)(efforts to influence the outcome of a public controversy render a person a

limited-purpose public figure).

### b. Failure to plead actual malice

*Sullivan* defines actual malice as "knowledge that [a false statement] was false"

or "reckless disregard of whether it was false or not." *See N.Y. Times Co. v. Sullivan*,

376 U.S. 254, 279–80, (1964). "The mere existence of a false statement does not, on its

own, demonstrate [a defendant's] knowledge of its falsity." *Edward Lewis Tobinick,*

*MD v. Novella*, 848 F.3d 935, 946 (11th Cir. 2017). Actual malice "is a subjective test,

which asks whether the publisher 'in fact entertained serious doubts as to the truth

of his publication,' " but published anyway. *Block v. Matesic*, 2025 WL 1807423, at *17

(S.D. Fla. June 30, 2025)(pleading express malice is insufficient in this context).

Because Luthmann is a limited public figure, he must establish "actual malice"

on behalf of Noshirvan in order to maintain a defamation action. *Nodar v. Galbreath*,

462 So.2d 803, 806 (Fla. 1984); *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020)

(limited-purpose public figure). Actual malice is not proven when a source of

information might also have provided the information to further self-interest. *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 715 (4th Cir. 1991).

All of Luthmann's quoted allegations in the FAC (p. 46, ¶292) are germane to the widely disseminated public spectacles: the 0340 Case and 1218 Case. The terms "pedophile, "child stalker" and "federal witness intimidator" are not only true statements but are reasonably grounded in fact. See Dkt. 53, ¶292.A-C.). For example, Luthmann thought he was in possession of sexually explicit images of children and chose to intentionally disseminate those images on Substack.com. A federal court found that Luthmann's dissemination of expert witness reports lead to witness intimidation by Camp. See 1218 Case, Dkt. 454 and 459. Luthmann has also published photographs and unusual commentary about Noshirvan's children online. And Luthmann associates with Camp who is has "threatened and advocated for sexual mutilation and rape of Noshirvan's minor children." 1218 Case, Dkt. 456, ¶¶184-7. Therefore, it cannot be said that anyone would entertain serious doubts as to the truth of publication of those terms as it relates to Luthmann. Thus, Luthmann was required to plead and prove actual malice by clear and convincing evidence. Luthmann did not. The FAC does not plausibly allege actual malice.

### c. Luthmann's claims are not defamation per se

Luthmann's defamation claim is one of defamation by implication—meaning that the statement is susceptible of both defamatory and nondefamatory meanings. So, to show actual malice, Luthmann is required to adduce evidence not only that

Noshirvan knew the defamatory meaning was false, but also "that the Noshirvan intended to communicate the defamatory meaning. *Block*, 2025 WL 1807423. A showing of falsity alone is insufficient to show actual malice in an implication case. **Block**, at 20. Luthmann failed to allege something that establishes Noshirvan's intent to communicate the defamatory meaning. See *Kendall*, 716 F.3d at 90. The words themselves are not probative of falsity or recklessness. *Block*, at *23. And a publisher's refusal to retract a statement it learns to be false "after publication," does not establish actual malice "at the time of publication." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (Easterbrook, J.); *Klayman v. City Pages*, 650 Fed. Appx. 744, 750–51 (11th Cir. 2016)(failure to investigate and poor journalistic standards are insufficient to establish actual malice).

Luthmann has not sufficiently and plausibly alleged actual malice. Period. See Dkt. 53, ¶¶130-1. While Luthmann alleges Noshirvan acted "maliciously" he offers no facts showing knowledge of falsity or reckless disregard. Conclusory assertions do not satisfy *Twombly/Iqbal.* Thus, Count I fails.

### d.  Non-actionable Opinion or Hyperbole

"Freedoms of expression require 'breathing space.'" *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 772 (1986). Allegations that Noshirvan called Luthmann a "pedophile" or "child stalker" are classic rhetorical hyperbole, not verifiable assertions of fact. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 50–51 (1988) (protecting "vigorous epithets" under First Amendment). Further, this Court must assess

whether a statement is "pure opinion," and "must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication," and must "consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement." *Turner v. Wells*, 198 F. Supp. 3d 1355, 1367 (S.D. Fla. July 29, 2016) (Gayles, J.). However, Luthmann did not provide adequate context.

The statements quoted by Luthmann are taken out of context and are mere opinion, commentary, or rhetorical hyperbole. *See Flynn v. Wilson*, 398 So. 3d 1103, 1114 (Fla. 2d DCA 2024)(providing example of nonactionable name calling that lacks a verifiable factual core). None of these statements are actionable.

### e.  Luthmann Failed To Comply With A Condition Precedent

Florida law mandates that a plaintiff "serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory." Fla. Stat. § 770.01. To satisfy this requirement, the "notice must specify the alleged false and defamatory statements contained in the article or broadcast." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1112 (Fla. 2008); *Rendon v. Bloomberg L.P.*, 2025 WL 1482420, at *5 (11th Cir. 2025). And that must happen at least five days before filing an action for libel or slander. *Id.* The "recognized purpose" of this requirement is to enable the publisher "to retract any false statements, or statements contended by the offended party to be false." *Cook v. Pompano Shopper, Inc.*, 582 So. 2d 37, 39 (Fla. 4Th DCA 1991).

Pre-suit notice applies to Noshirvan. See Dkt. 53, ¶¶40-1, 53-4; *Comins v. Vanvoorhis*, 135 So. 3d 545, 560 (Fla. 5th DCA 2014)(holding that a blog was covered by section 770.01 and noting that "many blogs and bloggers will fall within the broad reach of 'media'"); *San Juan Products, Inc.*, 2023 WL 1994087, at *3 (M.D. Fla. 2023)(explaining the scope of *Comins*); s*ee, e.g.*, *Plant Food Sys., Inc. v. Irey*, 165 So. 3d 859, 861 (Fla. 5th DCA 2015) (holding that "an internet publisher of various purportedly scientific, technical, and medical journals and information" was covered by section 770.01); *Grlpwr, LLC v. Rodriguez*, 2023 WL 5666203, at *2 (N.D. Fla. 2023)(finding that Defendant's YouTube channel qualifies as an "other medium" because it is operated to disseminate information, commentary, and editorializes on a matter of public interest).

Luthmann was required to allege under Fed. R. Civ. P. 9(c), compliance with a condition precedent for each quoted statement. He did not. *See Faller v. Beasley Broad. Group, Inc.*, 2025 WL 589231, at *3 (M.D. Fla. 2025); *Tobinick v. Novella*, 2015 WL 1191267, at *9–10 (S.D. Fla. 2015)(a party cannot satisfy § 770.01 while the defamation case is already pending); *Gifford v. Bruckner*, 565 So. 2d 887, 888 (Fla. Dist. Ct. App. 1990) ("Compliance with section 770.01 … is a condition precedent to maintaining an action, … one cannot satisfy the statute" after complaint is filed).

Here Luthmann attached a defective pre-suit notice and did not allege the statements quoted in the notice. See Dkt. 53-1, p.30-4. The other pre-suit notice attached to the FAC only states "you go into business with child predators like

…Camp and … Luthmann." Because  Luthmann failed to comply with § 770.01 for each quoted statement before bringing this action, dismissal for each statement not contained in the notice must be "with prejudice" since the defect is incurable.

### f.  Noshirvan's Statements Are Privileged

### i.  Substantial Truth

"Florida recognizes the substantial truth doctrine" which notes that "a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *See Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234 (Fla. 3d DCA 2021). The following statements are substantially true or opinion:  (1) "pedophile, "child stalker" and "federal witness intimidator" are not only true but are reasonably grounded in fact. See Dkt. 53, ¶292 . (2)  "goes into business with child predators like … Luthmann" is reasonably grounded in fact. See Dkt. 53, ¶292. (3) Luthmann has been involved in a crime where he lured someone to a private room so that that person could be held at gunpoint … so he could have money taken from him" is truthful. See Ex. A. (4) Luthmann "is coming after my family and targeting and harassing me" is truthful. See 1218 Case, Dkts. 380, Ex. 20, 454, and Fn. 6. *Cf.* Dkt. 53-1, p. 31.  (5) Luthmann was hired by Couture and Garramone  to engage in stalking and harassment is substantially true. See Dkt. 53-1, p. 52 (Luthmann bcc'ing Garramone, Couture, and Suze).  (6) Luthmann's quoted statements in paragraphs 201.a-j. are  substantially true statements.  But none of those statements were in Luthmann's attached notice. See Dkt. 53-1, p. 30.

### ii. Litigation Privilege Applies

Litigation privilege applies in all causes of action, whether for common-law torts or statutory violations Privilege. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007). "[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior … so long as the act has some relation to the proceeding." *Echevarria*, 950 So. 2d at 383.

Litigation privilege applies to: (1) "federal witness intimidator" is subject to privilege. See 1218 Case Dkt. 380, Ex. 20, 454, and 459. (2) "not a journalist but a predator with a blog" occurred in 1218 Case. See 1218 Case Dkt. 228. (3) "criminal conspirator" was only implied in 1218 Case court filing. See 1218 Case Dkt. 380, Ex. 20, 454, 459 and 228. (4) Luthmann "is targeting and harassing me" occurred in 1218 case filing. See 1218 Case, Dkts. 380, Ex. 20, 454, and Fn. 6. Cf. Dkt. 53-1, p. 31.

### iii. Good Faith - A Right, Duty, or Interest Privilege

"Florida embraces a broad range of the privileged occasions that have come to be recognized under the common law." *Block*, 2025 WL 1807423, at *35. The speaker's interest or duty to speak "need not be one having the force of a legal obligation; it may be one of imperfect obligation," or it could be "public, personal or private, either legal, judicial, political, moral, or social," or "arise out of the relationship or status of the parties." *Leonard v. Wilson*, 150 Fla. 503, 509, 8 So.2d 12 (1942).

Clearly good faith any reporting to the State Police, the FBI, or U.S. Marshals who have a mutual interest in protecting the public would qualify as privileged. See, e.g., *Block*, 2025 WL 1807423, at *35; *White v. Sch. Bd. of Hillsborough Cnty.*, 2008 WL 227990, at *6–7 (M.D. Fla. 2008). Noshirvan has a legally recognized interest in reporting the mysterious package sent to his in-laws containing statements from Dr. Gordon's expert witness report. See Dkt. 454 and 459.

### g. Prima Facie Tort (Count III)

Florida does not recognize prima facie tort as an independent cause of action. *Stolowitz v. Nuance Communications, Inc.*, 2022 WL 2304489, at *5 (S.D. Fla. June 27, 2022)(citing *Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1213 (M.D. Fla. 2005)). Count III fails as a matter of law.

### h. Luthmann's Abuse Of Process (Count II) Malicious Prosecution (Count IV) Claim Fails

Abuse of process requires (1) an illegal, improper, or perverted use of process; (2) ulterior purpose; and (3) damages. *Steinmetz v. Pickholtz, No. 3D24-0417, 2025 WL 1646405, at *4 (Fla. 3d DCA June 11, 2025)*. Here, a discovery subpoena was issued in the 1218 Case. See 1218 Case, Dkt 228. The discovery subpoena was withdrawn due to a clerical error regarding the place of compliance. See 1218 Case, Dkt 230.  The Court's order at docket 230 forecloses Luthmann's argument that the subpoena was issued for an "illegal, improper, or perverted" purpose. See 1218 Case, Dkt 230 ('Even if Luthmann is a journalist, that does not render him immune from discovery.").

To effectively plead a claim for malicious prosecution, the plaintiff must allege (1) the commencement of an original proceeding; (2) legal causation; (3) a bona fide termination in the plaintiff's favor; (4) the absence of probable cause; (5) malice; and (6) damages. *Steinmetz*, at *2. The FAC references subpoenas in the 1218 Case. But subpoenas are discovery devices, not independent judicial proceedings. And even if they were, Luthmann admits the subpoena was withdrawn without ruling—not a termination on the merits in his favor. This element is dispositively missing.

### i.  Luthmann's IIED claim fails

To state an IIED claim under Florida law, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. 2d DCA 2007).

Luthmann alleges emotional distress from Defendant's online statements and court filings. But courts consistently reject IIED claims based solely on speech, even offensive speech, unless accompanied by threats of physical violence or extreme conduct. See *Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004)(insults, indignities, threats, and false accusations insufficient); *see Ponton v. Scarfone*, 468 So. 2d 1009, 1010 (Fla. 2d DCA 1985)(sexual utterances insufficient); *Lay v. Roux Laboratories*, 379 So.2d 451 (Fla. 1st DCA 1980)(humiliating language, vicious verbal attacks and racial epithets insufficient); *Studstill v. Borg Warner Leasing*, 806 F.2d 1005 (11th Cir.1986)(harassment, jokes, off-color comments, profane language, and unwanted physical contact is insufficient). The Court must dismiss Count 5.

### j.  Declaratory relief is not available

A district court should dismiss a declaratory relief claim where it "will serve no useful purpose." *Toms v. State Farm Life Ins. Co.*, 2022 WL 2758212, at *4 (M.D. Fla. July 14, 2022). Declaratory relief is improper and serves no useful purpose when it duplicates issues raised in tort claims. *Id.* When issues presented in a claim for declaratory relief can be resolved by other vehicles of resolution, courts decline to entertain the declaratory relief claim. *Id.* The single publication rule applies.

Here, Luthmann seeks declarations that (1)  Noshirvan's statements were false and defamatory—the same relief sought under defamation (¶¶337A, D); (2) were related to a discovery subpoena  —the same relief sought under abuse of process and malicious prosecution(¶337.B); (3) and internet harassment — the same relief sought under IIED(¶337. B). the remainder would constitute an advisory opinion. (¶337. C) Courts routinely dismiss declaratory judgment counts that add nothing to underlying tort theories. Put simply, Luthmann's declaratory action is subsumed by the other Counts for Relief in the FAC.

### k.  Luthmann's Complaint Violates The Shotgun Pleading Rule

Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings are cumbersome, confusing complaints that do not comply with these pleading requirements." *Id.* at 1321-23. All shotgun pleadings share the flaw of failing to give

defendants fair notice of the claims and their supporting grounds. See *Id.* at 1323.

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

Here, the FAC is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action, requiring additional counts, and names defendants even though Luthmann never served them. Dismissal is appropriate.

## VI.    CONCLUSION

For all the reasons stated in this Motion, Noshirvan respectfully request that the Court dismiss the FAC entirely with prejudice.

Respectfully submitted,

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Mr. Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following: Richard A. Luthmann, *pro se*, 4199 Sugar Pine Lane, Naples, Florida 34109, (239) 631-5957; richard.luthmann@protonmail.com

*/s/Nicholas A. Chiappetta*
Nicholas A. Chiappetta