## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

RICHARD A. LUTHMANN
an individual,

      Plaintiff,

vs.

DANESH NOSHIRVAN,

      Defendant(s).

_____/

CASE NO:
2:25-cv-00337-JLB-NPM

Hon.  Kyle C. Dudek
Hon.  Nicholas P. Mizelle

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
## <u>FOR SANCTIONS AND TO DISQUALIFY DEFENSE COUNSEL</u>

## I.    Introduction and Preliminary Statement

Danesh Noshirvan ("**Noshirvan**"), respectfully submits this opposition to Richard A. Luthmann's ("**Luthmann**") Motion for Sanctions and to Disqualify Counsel (Doc. 92). Luthmann's motion is a baseless tactical attempt to derail this litigation by smearing Noshirvan's counsel and coercing a settlement. Luthmann's motion rests on mischaracterizations of Chiappetta's statements and conduct, and it ignores Luthmann's own bad-faith tactics – leveraging disciplinary complaints to coerce settlement – which prompted Chiappetta's remarks. No court order has been violated, no ethical rule has been breached, and no prejudice to the administration of justice has been shown. On the contrary, the record reflects that Noshirvan and counsel have acted within their rights and obligations, while Luthmann  (a twice-disbarred former attorney and convicted felon) has engaged in retaliation and harassment outside the bounds of proper litigation conduct.

Sanctions and disqualification are extraordinary remedies to be invoked only upon a clear showing of misconduct and prejudice – a showing utterly lacking here. Luthmann's allegations that defense counsel, Nicholas A. Chiappetta, Esq. ("**Chiappetta**"), called a court-encouraged mediation "extortionate" and "terroristic," committed ethical violations, or created a conflict of interest are unfounded and distorted. The Court encouraged mediation; it did not order it, and Noshirvan has every right to decline settlement discussions and proceed with litigation. Luthmann's motion is the culmination of a retaliatory campaign: after

failing to intimidate Noshirvan into a quick settlement, Luthmann filed a Florida Bar complaint against Chiappetta in an effort to have him suspended and gain leverage in this case. Luthmann's attempt to relitigate 1218 Case issues here – and to miscast counsel's justified refusal to accede to Luthmann's extortionate tactics as an affront to the Court – should be rejected.

## II.    The Court's Encouragement of Mediation

On October 8, 2025, the Court entered a text order (Doc. 91) noting that the parties had engaged in a settlement discussion and encouraging further mediation efforts. The Order did not mandate mediation or impose any settlement requirement; it simply directed the parties to advise by October 22, 2025 whether a settlement was likely or whether the case would proceed on the litigation track. In full compliance, Noshirvan timely informed the Court that he did not intend to settle at this time and wished to proceed with litigation. In doing so, Noshirvan  violated no court order – he exercised his fundamental right. There is no rule or law that can compel a party to settle against their will, and Florida's professional rules entrust the decision whether to settle exclusively to the client's judgment.

Noshirvan determined that he does not wish to settle, and Chiappetta abided by that decision, as required. Notwithstanding Noshirvan's choice, Luthmann persisted in pressuring for mediation. On October 15, 2025 – over a week after Noshirvan had notified the Court of his intent to continue litigating – Luthmann unilaterally sought to initiate a mediation session with Attorney John Barkett, even

copying third parties (including U.S. Department of Justice officials) on the correspondence. Chiappetta responded that Noshirvan was "*not prepared to mediate at this time*", given that Luthmann had produced no discovery to inform any meaningful settlement dialogue. Dkt. 92-1, p. 2. Chiappetta noted that under the Case Management Order, the parties had until mid-2026 to conduct mediation, and that an "early" mediation would be premature before Luthmann met his discovery obligations. Noshirvan's counsel's litigation position was reasonable.

### III.    Plaintiff's Coercive Negotiation Tactics and Threats

In an email on October 20, 2025 (8:50 AM), Luthmann reacted with open hostility: he taunted Chiappetta about an alleged impending suspension, threatened to drag counsel's law firm into the case as a "*third-party counterclaim defendant,*" and even made ominous references to subpoenaing Noshirvan's supposed "*dark money*" supporters while invoking a recent Presidential declaration about "*Antifa*" being domestic terrorists (an apparent effort to paint Noshirvan as a terrorist) (Ex. A to Pl.'s Motion). Luthmann further stated that "the PUBLIC PERCEPTION is that YOU and YOUR CLIENT called the federal court mediation process … terroristic and extortionate," admonishing counsel that he "should not be saying those things." In other words, Luthmann explicitly sought to use defense counsel's alleged intemperate remark as leverage – casting it as an insult to the Court – while simultaneously threatening to report or frame Noshirvan and counsel as connected to terrorism. This email, far from reflecting a party genuinely interested in a good-

faith resolution, reveals Luthmann's intent to browbeat and intimidate through inflammatory accusations and extrajudicial threats.

Most egregiously, Luthmann employed the specter of attorney discipline as a bargaining chip. Indeed, prior to filing the instant motion, Luthmann filed a grievance with the Florida Bar against Chiappetta, and he did so not out of any true concern for ethical norms, but to exact tactical advantage. Specifically, Luthmann has publicly stated his inten*t "to pursue disciplinary action against Chiappetta for the purpose of securing his temporary suspension, thereby preventing him from prosecuting"* various federal cases involving Chiappetta's client. Plainly, Luthmann openly aims to sideline Noshirvan's chosen counsel by engineering an ethics conflict. Luthmann's communications reinforced this strategy: he improperly attempted to leverage the pending Bar complaint to force a settlement of this case on favorable terms to him. It is this extortionate pressure along with client directives, that prompted defense counsel's strongly worded refusal to negotiate.

## IV.    Defense Counsel's "Extortionate Terrorist" Remark in Context

Central to Luthmann's motion is the claim that Chiappetta referred to "court-ordered mediation" as "extortionate" and "terroristic." This characterization is misleading. What actually occurred is that, in a private email on October 3, 2025 – well before the Court's encouragement of mediation on Oct. 8 – Luthmann demanded that Noshirvan settle the case under threat of aggressive measures, which by then already included saber-rattling about disciplinary complaints and public

smear campaigns.[1]  Noshirvan's counsel responded bluntly that *"Neither I, nor my client, will negotiate with a terrorist attempting extortion"*, adding that Luthmann  had a better chance of "winning the lottery" than obtaining $10,000 from Noshirvan.  This was not a comment directed at the Court or any lawful mediation process. It was aimed squarely at Luthmann's conduct – namely, his use of threats and coercion. Indeed, Noshirvan's counsel clarified that *"the reference to an extortionate terrorist arose from Luthmann's improper attempt to leverage his pending bar complaint against Chiappetta to resolve the 337 Case."* Dkt. 92-1, p. 4. In the same email, counsel reiterated that *"Neither I, nor my client, will negotiate with anyone acting in bad faith. Here, that is Luthmann."* These statements make clear that it was Luthmann's bad-faith behavior – attempted extortion under color of a settlement offer – that was being criticized. Counsel was emphatically not impugning the Court's suggestion of mediation or the general concept of alternative dispute resolution; he was rejecting an abuse of process.

To the extent the phrasing is viewed as harsh, Noshirvan submits that it must be viewed in light of Luthmann's own outrageous conduct. Luthmann copied government officials on correspondence to portray Noshirvan as linked to *"domestic*

---

[1] Extortion is a verbal or written communication, maliciously threatening or  accusing another of any crime or offense, including malicious threats to injure a person, property or reputation of another, or expose another to disgrace, or to impute any deformity, with intent thereby to extort money, gain any pecuniary advantage whatsoever or compel a person to do any act or refrain from doing any act against his or her will.  §836.05, Fla. Stat. **Litigation does not immunize Luthmann's conduct.**

*terrorists,"* and who crowed about forcing Chiappetta's "suspension." Luthmann's hands are unclean. In any event, a single hyperbolic email remark in the course of heated negotiations – had no impact on the proceedings or the Court – is not sanctionable. *In re Finkelstein*, 901 F.2d 1560, 1565 (11th Cir. 1990); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007)(requiring <u>objective</u> "bad faith" conduct); *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020).

Counsel's comment neither violated any law or rule nor prejudiced the adjudication of the case; if anything, it reflected a perhaps overzealous effort to protect the client from what counsel perceived as extortion. Luthmann has not shown that Noshirvan's counsel acted in bad faith. Therefore, sanctions under 18 USC 1927 or the Court's inherent authority are not available.

**V.      The Related Noshirvan v. Couture Litigation (1218 Case)**

Luthmann's motion references Chiappetta's conduct in *Noshirvan v. Couture*, No. 2:23-cv-1218 (M.D. Fla.), as purported evidence of ethical lapses justifying sanctions or disqualification here. But Luthmann omits the critical context: Judge Steele already addressed and resolved those issues, and did *not* find grounds to disqualify Chiappetta. The 1218 Case is contentious. During a remote Zoom deposition, Noshirvan briefly erupted in anger at opposing counsel's provocation. Chiappetta, who was not physically present, twice instructed his client to stop and leave the room. Although the court ultimately issued a verbal reprimand to Chiappetta for not doing more to defuse the situation, the court explicitly found "no

objective basis to issue sanctions" against him, noting that its reprimand was a matter of subjective judgment. 1218 Case, Dkt. 454. The court imposed no suspension, no referral, and no monetary penalties on Chiappetta.  Crucially, the 1218 court considered whether any further action against Chiappetta was warranted and decided it was not. 1218 Case, Dkt. 454 ("[Chiappetta's] conduct here is not sufficient to warrant … sanctions under [18 U.S.C 1927]").

Shortly thereafter, Luthmann initiated a Florida Bar complaint rehashing the same allegations that the federal court had put to rest. The Bar grievance contains no new evidence of unethical conduct; its purpose, transparently, is to gain a litigation advantage by sidelining Chiappetta. Luthmann essentially seeks to weaponize his own misconduct into a tool to remove Noshirvan's counsel. Such gambit should not be countenanced by this Court.

In the backdrop of Luthmann's motion is a broader pattern of vexatious behavior. All of this underscores that Luthamnn's call for sanctions and disqualification is not grounded in genuine concern for the integrity of these proceedings, but in a strategic effort to hamstring Luthmann's ability to defend himself.

### VI.    No Misconduct Warranting Sanctions Has Occurred

"A court may impose sanctions for litigation misconduct under its inherent power[s]." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). "These powers are necessarily vested in courts to manage their

affairs to 'achieve the orderly and expeditious disposition of cases.'" *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)(quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

To trigger the Court's inherent powers, "the party moving for sanctions must show subjective bad faith." *Hyde,* 962 F.3d at 1310. That "mean[s]" showing "intentional and not just reckless behavior." *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340, 1346 (11th Cir. 2024)(citing *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224-25 (11th Cir. 2017)). This showing can be done with either (1) direct evidence of subjective bad faith or (2) evidence of conduct "so egregious that it could only be committed in bad faith." *Hyde*, 962 F.3d at 1310(quoting *Purchasing Power*, 851 F.3d at 1224–25).

Similarly, 28 U.S.C. § 1927 permits fee sanctions only for conduct that unreasonably and vexatiously multiplies the proceedings. *In re Finkelstein*, 901 F.2d at 1565.  Here, Luthmann's allegations fall far short of these stringent standards.

### A. Defendant's Refusal to Mediate Was Within His Rights and Violated No Court Order

Luthmann repeatedly characterizes Chiappetta's conduct as flouting a "court-ordered mediation." This is a false premise. The Court never ordered mandatory mediation; it merely encouraged the parties to explore settlement and set a date by which they should update the Court on their intentions. Noshirvan complied fully, notifying the Court by the specified date that he preferred to proceed with litigation.

Mediation by its nature is a voluntary process unless explicitly mandated – here mediation was not required to occur until <u>July 10, 2026</u>. Luthmann's attempt to transform the Court's encouragement into an "extortionate" mandate is disingenuous. Noshirvan cannot be in contempt or defiance of an order that never existed. Nor can Defendant (or his counsel) be sanctioned for simply declining to settle. To the contrary, both law and ethics recognize the client's autonomy in deciding whether to settle. *The Florida Bar Re: Amendment to Rules Regulating The Florida Bar*, 605 So. 2d 252, 311 (Fla. 1992)(addressing Rule 4-1.2). Noshirvan elected not to settle; counsel honored that decision – full stop. This conduct is *not sanctionable*.

Luthmann's argument that by resisting mediation and using harsh words to describe his pressure tactics, defense counsel somehow prejudiced the "administration of justice." But Luthmann offers no coherent explanation of any impediment. A party's decision to forego settlement discussions does not burden the court. Put simply, there is no prejudice.

### B. Counsel's  Remark Does Not Constitute Sanctionable Misconduct

Luthmann hangs much of his sanctions argument on a single emailed phrase in which Chiappetta refused to "negotiate with a terrorist attempting extortion." As discussed above, this remark arose in a private context of contentious negotiation, spurred by Luthmann's own improper threats.

First, the comment was not made in a filing to the Court or in open court; it was a heated reply to an adversary's email. It had *no impact* on the litigation process

itself.  Second, while the terminology ("terrorist," "extortion") is not polite, it was
prompted by genuine concern over Luthmann's very real behavior. Luthmann was
effectively telling Noshirvan, "*Settle on my terms or I will escalate collateral matters (Bar
complaints, public shaming).*" Chiappetta's response expressed his view that
Luthmann's proposal was not a good-faith settlement overture but a form of
blackmail. Third, at most, Luthmann has pointed to a momentary lapse of decorum
that has since been tempered.

In sum, Chiappetta's remark does not approach the level of sanctionable
attorney misconduct. It violated no rule (frankly, Rule 4-8.4(d) – conduct prejudicial
to justice – is cited by Luthmann, but this contemplates serious interference with a
proceeding, not a harsh word in private). The Court should deny sanctions.

### C. No Ethical Violation Justifying Sanctions or Discipline Has Been Demonstrated

Luthmann's motion alludes to unspecified "ethical violations" and
unprofessional behavior but cites no specific Rule of Professional Conduct that
counsel has violated in this case. The Florida Bar rules caution against "conduct
involving dishonesty" (Rule 4-8.4(c)) and "conduct prejudicial to the administration
of justice" (Rule 4-8.4(d)), among others. But there is no evidence that Chiappetta has
run afoul of these or any other rules. He has not made misrepresentations to the
Court or engaged in any deceit; he has not hidden or destroyed evidence; he has not

disobeyed any court-imposed obligation. Luthmann's dispute with Chiappetta is essentially one of civility, not ethics.

To the extent Luthmann  leans on the events of the 1218 Case to suggest unethical conduct, that reliance is misplaced. The federal court in *1218 Case* thoroughly examined Chiappetta's conduct and issued a limited reprimand for how counsel handled a difficult deposition scenario.

Chiappetta's response to that reprimand has been model: he accepted responsibility, did not challenge the findings, and proactively took steps to improve his practice. This is the opposite of an attorney who is defiant or incorrigible. If anything, Luthmann's resurrection of those previously issues –– is another indication that his motion is driven by spite, not substance.

Finally, Luthmann's own role cannot be ignored when assessing the equities of "unprofessional" conduct. Luthmann is a former lawyer who was disbarred twice and is a convicted felon; his litigation tactics in this and related matters have been fraught with personal attacks, media grandstanding, and vexatious filings. He has, for instance, publicly smeared Noshirvan and even exposed private litigation materials online. While Noshirvan does not ask the Court to adjudicate Luthmann's character, this context matters when Luthmann claims to champion professional ethics. In sum, there is no ethical violation by Chiappetta for this Court to "correct" via sanctions.

### VII.    Disqualification of Defense Counsel Is Unwarranted and Improper

Luthmann's secondary request – to disqualify Chiappetta from representing Noshirvan – is an even more extreme remedy than sanctions, and it is plainly unsupported here. "[M]otions to disqualify are substantive motions affecting the rights of the parties." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). They are governed by two sources of authority — federal common law and local rules of court. *Id*. The party moving to disqualify counsel bears the burden of proving grounds for disqualification. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons exist." *In re BellSouth Corp.*, 334 F.3d at 961. Disqualification of one's chosen counsel is a drastic remedy that should be resorted to sparingly. *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982). When ruling on a motion to disqualify, a court must "be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely choose counsel." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976). An opposing party's motion to disqualify counsel "should be viewed with caution, however, for it can be misused as a technique of harassment." Fla. R. Prof. Cond. 4-1.7 cmt.

When a lawyer's conduct is allegedly unethical but does not threaten the orderly administration of justice, violating an ethical rule is a necessary but not

always sufficient condition for disqualification. *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997); see also *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2005) (collecting cases). When the conduct at issue does not threaten the orderly administration of justice but is allegedly unethical, … district courts rest their disqualification decisions on the violation of specific Rules of Professional Conduct, not on some "transcendental code of conduct … that … exist[s] only in the subjective opinion of the court." *Schlumberger*, 113 F.3d at 1561 (citation omitted). Courts "must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Id.* And even if an ethical rule has been violated, the Court must look to "various factors, such as the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment" ("the Anodyne factors"). 365 F. Supp. 2d at 1237.

Luthmann has not met and cannot meet that heavy burden.

**A. Luthmann's Manufactured "Conflict" Has No Legal Merit**

Luthmann appears to argue that Chiappetta's personal interest in defending himself against Luthmann's Bar complaint creates a "conflict of interest" with Noshirvan, warranting disqualification. This theory does not hold water. Under Rule 4-1.7 of the Florida Rules of Professional Conduct, a personal interest conflict exists

if "there is a substantial risk that the representation of the client will be materially limited by the lawyer's own interests." *SuperCooler Techs., Inc. v. Coca Cola Co.*, 682 F. Supp. 3d 1071, 1079 (M.D. Fla. 2023)(Rule 4-1.7 is based on two principles.) Here, there is no divergence between Noshirvan's interests and Chiappetta's – their interests are aligned. Both Noshirvan and his counsel share the objective of defeating Luthmann's claims and exposing his bad-faith tactics. Chiappetta's interest in rebutting Luthmann's accusations (in the Bar forum) goes hand-in-hand with zealously advocating for Noshirvan, because Luthmann's accusations against counsel stem directly from counsel's effective advocacy for Noshirvan. Put simply, the better Chiappetta defends this case, the more he vindicates himself and Noshirvan against Luthmann's retaliatory attacks. There is no material limitation on counsel's ability to represent Noshirvan – if anything, counsel is galvanized to represent Noshirvan more vigorously, which benefits the client. Noshirvan is willing to sign a "waiver" if this Court should require a conflict waiver.

Importantly, Luthmann lacks standing to even assert a conflict on Noshirvan's behalf. Courts have repeatedly held that a litigant generally cannot seek to disqualify opposing counsel by claiming a conflict that really concerns the relationship between that counsel and his own client. *Pagidipati v. Vyas*, 353 So. 3d 1204, 1211 (Fla. 2d DCA 2022)(a stranger to the attorney-client relationship lacks standing to seek disqualification). Noshirvan (the client), however, has voiced no such concern; to the

contrary, Noshirvan wishes to continue with Chiappetta as his attorney. Instead, Luthmann injects himself into the attorney-client relationship of his adversary. This is improper. It is a transparent ploy to remove an effective advocate by any means necessary. Allowing disqualification here would set a dangerous precedent. A precedent of incentivizing strategic misuse of the disciplinary process for advantage. The Court should firmly reject this gambit.

### B. No "Prejudice to the Administration of Justice" Justifies Disqualification

Luthmann's motion invokes the phrase "prejudice to the administration of justice," perhaps alluding to Rule 4-8.4(d) or that Chiappetta's presence somehow taints the case. But Luthmann offers no concrete scenario in which counsel's continued representation would prejudice the proceedings or Luthmann's rights. The test for disqualification is whether the attorney's continued involvement will "result in actual prejudice" or create a "clear danger" of such prejudice. See *Anodyne, Inc.*, 365 F. Supp. 2d at 1238. Here, there is no such danger.

Furthermore, the judiciary strongly favors respecting a party's right to chosen counsel, especially where disqualification is sought by an adversary for strategic reasons. *Woods*, 537 F.2d at 810; *Norton*, 689 F.2d at 941 n.4. Noshirvan has a longstanding attorney-client relationship with Chiappetta across multiple matters; Chiappetta possesses intricate knowledge of the case, the key players, Luthmann's pattern of misconduct. Disqualifying him would significantly prejudice Noshrivan by forcing him to bring new counsel up to speed in a complex, highly personal

litigation, and by signaling a victory (tactical and psychological) for Luthmann's coercive campaign. Disqualification would reward Luthmann's bad faith conduct and severely harm Noshirvan's interests, all without any countervailing benefit to the fairness of the proceedings. The Court should not countenance such an outcome.

### VIII. Luthmann's Violation of the Confidential Judicial Settlement Conference

Luthmann's conduct following the Court-encouraged settlement conference constitutes a serious violation of the confidentiality governing judicially supervised settlement communications. The Court's October 8, 2025 text order expressly referenced a "settlement conference" and "further mediation efforts," which, under Florida Statutes, 44.405 and 44.406, the Middle District of Florida's Local Rules, and Federal Rule of Evidence 408, are confidential and inadmissible for any purpose other than settlement. By publishing and publicizing the content of those discussions, attributing statements to defense counsel, and weaponizing them in this motion, Luthmann has breached that confidentiality. See Dkt. 92-1, p. 7 ("Minutes"); Dkt. 47, p. 6-7.

Specifically, Luthmann's motion repeatedly references purported statements made during or immediately following the Court's judicial settlement conference, including alleged comments by defense counsel concerning mediation, the settlement posture, and characterizations of the process. Those communications, occurring in the context of a court-facilitated settlement dialogue, are privileged and

protected from disclosure. Luthmann's decision to incorporate them into this filing—complete with attached exhibits containing email exchanges referencing the conference and the mediator—directly violates the confidentiality that attaches to judicial settlement proceedings. See Local Rule 4.01 and 4.03(g) (mandating that the substance is confidential and that no party, lawyer, or other participant is bound by, may record, or without the judge's approval may disclose any event, including any statement confirming or denying a fact); Fed. R. Evid. 408(a) (prohibiting use of "statements made during compromise negotiations" to prove liability, fault, or misconduct).

Even more troubling, Luthmann disseminated these materials to third parties without Court authorization, including copying media figures and government officials on emails referencing the settlement discussions. This extrajudicial disclosure of confidential judicial communications undermines the candor and integrity essential to the settlement process. Federal courts consistently recognize that the success of judicially supervised settlement efforts depends upon participants' ability to communicate freely without fear that their words will later be weaponized.

By filing and publicizing confidential content from a judicially supervised settlement exchange, Luthmann has placed this Court and opposing counsel in an untenable position and created a tainted record. Defendant respectfully submits that

this breach should be recognized as a violation of Rule 408 and Local Rule 4.01/4.03, and 44.405 and 44.406 (allowing damages and attorney's fees), Florida Statutes, warranting both the rejection of any argument predicated on privileged communications and appropriate admonishment of Luthmann to prevent further misuse of confidential settlement material.

### IX.    the Court Should Stay This Matter Pending Resolution of The Bar Disciplinary Proceeding and Resolution of Noshrivan's Other Cases Pending With This Court.

A limited stay is warranted to preserve the integrity of ongoing judicial and administrative processes, prevent duplicative litigation, and protect the safety of Noshirvan, his family, and counsel. The Supreme Court recognize that a district court may stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997).*

Here, there is clear evidence of a coordinated campaign of harassment, intimidation, and interference directed at Noshirvan's family, and Chiappetta—conduct that has escalated as the 1218 case approaches trial. Multiple Telegram communications between Joseph A. Camp ("**Camp**") and Luthmann's associate, Courtney Kotzian, discuss the filing of serial Florida Bar complaints against Chiappetta as a litigation strategy. Additionally, the law firm representing Chiappetta in connection with the disciplinary response has received threatening and harassing emails from both Camp and Luthmann.

Compounding the misconduct, Noshirvan's wife, has again begun receiving threatening and harassing emails tied to the same online network that has targeted her since 2022. These renewed threats coincide with Luthmann's and Camp's escalation of cyber-harassment activities in conjunction with pending litigation events. Counsel reasonably anticipates that such conduct will intensify as Noshirvan v. Couture (1218) approaches trial and as the Bar proceedings continue.

A temporary stay would allow the Court and the Florida Bar to address the ongoing disciplinary and safety issues in an orderly manner, prevent parallel litigation from being weaponized as a harassment platform, and ensure that Noshirvan and his counsel can safely and effectively participate in proceedings. Courts have found stays appropriate where parallel proceedings threaten to prejudice a party's ability to litigate fairly or where harassment and intimidation compromise the integrity of the process. *See Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000).

The requested stay would be narrowly tailored and temporary — limited to the duration necessary to conclude the disciplinary review and the resolution of the related federal cases, both of which will substantially clarify overlapping factual issues. Noshirvan respectfully requests that this Court enter a limited stay of this action pending resolution of the above-identified matters, to protect the fairness, safety, and integrity of these proceedings.

## X.    Conclusion

Luthmann's motion for sanctions and to disqualify defense counsel is wholly without merit and is transparently driven by strategic animus rather than genuine concern for the judicial process. Luthmann has identified no violation of a court order, no bad-faith conduct that warrants sanction, and no conflict of interest or prejudice that would justify the drastic step of disqualification.

Therefore, Noshirvan respectfully requests that the Court deny Luthmann's motion (Doc. 92) in its entirety and impose sanctions pursuant to Fla. Stat. §44.406. Noshirvan further asks that the Court caution Luthmann against further misuse of motions practice for abusive purposes, and award any other relief the Court deems just and proper under the circumstances.

DATED: November 04, 2025

Respectfully submitted,

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
*Attorneys for Noshirvan*
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 04, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to: Richard A. Luthmann.


*/s/Nicholas A. Chiappetta*
Nicholas A. Chiappetta