IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

---------------------------------------------------

RICHARD LUTHMANN,

         Plaintiff,

 v.

DANESH NOSHIRVAN,

         Defendant.

---------------------------------------------------

Case No. 2:25-cv-337-KCD-NPM

**PLAINTIFF'S REPLY DECLARATION PURSUANT TO ECF # 94**

## PLAINTIFF'S REPLY DECLARATION PURSUANT TO ECF # 94

I, **Richard Luthmann**, declare under 28 U.S.C. § 1746 as follows:

### INTRODUCTION

1. I am the Plaintiff in the above-captioned action. I submit this sworn Reply Declaration in support of my Motion to Disqualify Defense Counsel Nicholas Chiappetta (ECF Doc. 92), in reply to Defendant Danesh Noshirvan's opposition (ECF Doc. 95), and with the permission of the Court (ECF Doc. 94). I have personal knowledge of the facts set forth herein. This declaration focuses on (1) Mr. Chiappetta's unresolved ethical conflicts of interest warranting disqualfication, (2) the absence of any written waiver or informed consent from Defendant, (3) Defendant's contradictory statements about his fee arrangement, (4) the need for an in-person evidentiary hearing, and (5) the prejudice to Plaintiff if any stay extends beyond a short substitution period once Chiappetta is dismissed from this case.

1

## CONFLICT OF INTEREST AFTER AUGUST 12, 2025 REPRIMAND

2. On August 12, 2025, the Honorable John E. Steele publicly reprimanded Attorney Nicholas Chiappetta for professional misconduct in *Noshirvan v. Couture*, No. 2:23-cv-1218 (M.D. Fla.), formally stating that "Nicholas Chiappetta has failed to meet the professional standards expected from officers of the court." The reprimand cited Florida Rule 4-8.4(d) prohibiting conduct "prejudicial to the administration of justice." Judge Steele found that Chiappetta violated his responsibility to control his client during a deposition, condoned abusive conduct, and later authorized his client to republish defamatory posts.

3. This reprimand prompted ongoing Florida Bar disciplinary proceedings. Chiappetta has admitted these proceedings and that the Bar is treating Judge Steele's findings "very seriously." As is my right as a concerned member of the public interested in consumer protection, I initiated the pending bar discipline against Mr. Chiappetta. Because of the seriousness of Judge Steele's August 12, 2025, reprimand and the Florida Bar's watchdog role to protect Florida's consumers of legal services, the matter is currently docketed as Florida Bar File No. 2026-50,256(15C). See the attached **Exhibit A.**

4. Chiappetta has hired the "Florida Bar Defense" law firm of Smith, Tozian, Daniel & Davis, P.A., to defend him. See Florida Bar Defense. *FloridaBarDefense.com.* Available at https://www.floridabardefense.com/ (last visited Nov. 5, 2025). The matter is very serious.

5. The Luthmann Grievance is but one of several that I know about. See the attached **Exhibit B** (Chiappetta has engaged in sharp practice related to non-party journalist and content creator Cortney Kotzian in retaliation for her coverage of the September 10,

2025, hearing in this matter; the Grievance is docketed with the Florida Bar as 26-5456).[1] His own conduct exposes Chiappetta to potential suspension, creating a direct personal-interest conflict under Florida Rule 4-1.7(a)(2), which forbids representation where "there is a substantial risk that the representation ... will be materially limited by ... a personal interest of the lawyer." His priority to defend his own license materially limits his ability to represent Defendant Noshirvan objectively.

6. The record shows that Chiappetta's conflict is not hypothetical. He linked his refusal to engage in settlement discussions directly to my filing of a Bar complaint against him, writing: "Neither I, nor my client, will negotiate with a terrorist attempting extortion," and later explaining that this remark arose from my "pending Bar complaint." Such admissions prove that personal *animus* and fear of disciplinary consequence drive counsel's decisions.[2] That is wholly improper and a violation of Defendant's rights.

### NO INFORMED CONSENT OR WAIVER OF THE CONFLICT

7. Despite the obvious conflict, no waiver or informed consent exists. Defendant's opposition (ECF Doc. 95) includes no affidavit from Noshirvan confirming that he was advised of the conflict or consented in writing. Rule 4-1.7(b)(4) requires informed consent "confirmed in writing or clearly stated on the record." None has been offered.

8. Instead, Noshirvan and Chiappetta concede the conflict. Defendant's brief merely asserts—without sworn support—that he and counsel's interests "are aligned." But that self-serving statement cannot substitute for a valid written waiver. The absence of any

---

[1]

[2] Mr. Chiappetta admitted his improper motivations to Attorney John Barkett in an email attached to the moving papers. Moreover, the Eleventh Circuit is clear that any claimed confidentiality is eviscerated when attorneys engage in misconduct, and all evidence is admissible. *Drummond Co. v. Conrad & Scherer, LLP*, 895 F.3d 1272, 1289–92 (11th Cir. 2018) (en banc) (attorney misconduct justified exception to work product).

3

such consent renders continued representation ethically impermissible. See *R. Regulating Fla. Bar 4-1.7(a)*.

### INCONSISTENT STATEMENTS ABOUT FEE ARRANGEMENT

9. Defendant Noshirvan has made *irreconcilable statements* about his payment arrangement with Chiappetta. In a 2024 chat with co-conspirator James McGibney, offered by Noshirvan in the related case of *Couture v. Noshirvan*, 2:23-cv-00340-SPC-DNF (the "340 Case"), ECF Doc. 143-1, Filed 06/28/24, Page 158 of 189, Noshirvan confirmed that Chiappetta was engaged on a contingency basis. See the attached **Exhibit C**.

10. In contrast, his sworn October 24, 2025, declaration in *Noshirvan v. Couture* states: "Our fee arrangement … is not contingent. After application of prior payments, my current contractual obligations … total $277,304.60." See the attached **Exhibit D**.[3]

11. These contradictions expose either a misrepresentation or a concealed financial arrangement. If the engagement is contingent, Chiappetta holds a personal stake in case outcomes; if hourly, he is owed over $277,000 and thus a creditor. Both scenarios compromise his independence and violate Rule 4-1.7(a)(2).

12. The Court cannot ignore this inconsistency when assessing the existence and severity of counsel's conflicts.

### NECESSITY OF AN IN-PERSON HEARING

13. That is why Noshirvan must produce all billing records, engagement letters, and attorney fee agreements (all non-privileged documents related to the Noshirvan-

---

[3] This sworn statement by Noshirvan was recently filed in another case and discovered after the filing of the instant moving papers. The Pro Se Plaintiff is not a CM/ECF filing user and must prepare and hand-deliver paper filings to the Clerk of Court prior to the due dates.

Chiappetta relationship in all matters before the Fort Myers Federal Court – the 340, 1218, and 337 Cases), and the Court must hold an in-person hearing to explore the full depths of the admitted conflicts. Is Noshirvan operating under informed consent? Does Chiappetta remain Noshirvan's counsel of choice after informed consent? Is this a *per se* conflict of interest, or is it waivable by Noshirvan?

14. Given the disputed facts surrounding Chiappetta's fee structure, disclosure practices, and ethical conflicts, an in-person evidentiary hearing is necessary. Only live testimony under oath can clarify:

- Whether Defendant Noshirvan was ever informed of counsel's disciplinary exposure;
- Whether any fee agreement was contingent, hourly, or hybrid;
- Whether Defendant knowingly consented to the conflict of interest.

15. The Eleventh Circuit recognizes that district courts have broad discretion to hold evidentiary hearings on attorney disqualification and professional-conduct issues. *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (courts must balance ethical compliance with fairness to litigants). Because the record lacks any sworn waiver or contemporaneous documentation, a hearing will permit examination of both Noshirvan and Chiappetta under oath and provide the Court a complete factual basis before ruling.

## PREJUDICE TO PLAINTIFF FROM A PROLONGED STAY OF PROCEEDINGS

16. I acknowledge that during the pendency of these serious proceedings that affect the Defendant, Mr. Noshirvan's due process rights, the integrity of these proceedings and the legal profession, and the public's perception of all these things, a stay of proceedings is appropriate. However, after the immediate issues with Attorney

Chiappetta are resolved, there exists no legal or factual reason for the stay, other than that the Court should grant a short stay—no longer than 30 days—to allow the Defendant to obtain conflict-free counsel or proceed *Pro Se*. Any longer stay would severely prejudice me as Plaintiff.

17. First, in light of Judge Steele's recent $62,320 sanction in the 1218 case, Defendant's finances appear unstable, and delay increases the risk that assets will dissipate before judgment. See *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (courts must avoid stays that cause "immoderate … delay"). Second, each month of inactivity escalates costs and impedes discovery essential to my claims. Third, Defendant has ignored a reasonable settlement offer without a counteroffer, and further delay rewards obstruction rather than resolution.

18. The Eleventh Circuit holds that stays should be "narrowly tailored" to prevent unfair prejudice. *In re Air Crash Near Miami, Fla.*, 725 F.2d 1467, 1470 (11th Cir. 1984). Here, if the Court grants a hearing and Mr. Chiappetta ultimately departs from this case, a limited 30-day stay will suffice for substitution. Any extension beyond that undermines efficiency and risks mooting relief. Prompt continuation of discovery after substitution best serves justice and FRCP Rule 1's mandate for "just, speedy, and inexpensive" determinations.

## CONCLUSION

19. The evidence establishes that Nicholas Chiappetta's ethical conflicts are admitted and remain unwaived; his disciplinary exposure and disputed financial ties to Defendant materially impair his representation. Neither Chiappetta nor Noshirvan has provided sworn evidence or written consent curing or even explaining these defects. An

6

evidentiary hearing is essential to resolve these factual issues. A brief substitution stay—no more than 30 days—should be permitted; a prolonged stay would unjustly prejudice me.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 5, 2025

Respectfully submitted,

**Richard Luthmann**
**Plaintiff, Pro Se**
**4199 Los Altos Court**
**Naples, FL 34109**
**(239) 631-5957**
**richard.luthmann@protonmail.com**

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, I sent for filing a true and correct copy of the enclosed upon Nicholas A. Chiappetta, counsel of record for Defendant Danesh Noshirvan, which will be delivered to counsel's email addresses of record on the court's CM/ECF system:

nick@chiappettalegal.com
service@chiappettalegal.com

Mr. Chiappetta has previously stated on the record at the September 10, 2025, hearing that he has voluntarily blocked Richard Luthmann's emails in his law firm system. Delivering anything to him directly is an exercise in futility because Mr. Chiappetta has a history of acting in bad faith and playing games. If he believes the email does not serve his interests, he denies receipt.

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: November 5, 2025

Richard Luthmann
Plaintiff, Pro Se

7