IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

-------------------------------------------------

RICHARD LUTHMANN,

Case No. 2:25-cv-337-KCD-NPM

Plaintiff,

**DECLARATION OF PLAINTIFF**

v.

**RICHARD LUTHMANN**

DANESH NOSHIRVAN,

Defendant.

-------------------------------------------------

## DECLARATION OF RICHARD LUTHMANN IN SUPPORT OF PLAINTIFF'S OBJECTIONS

I, Richard Luthmann, declare as follows:

1. I am the Plaintiff in this action, and I am also known as Richard A. Luthmann, Jr.

2. I make this declaration based on personal knowledge. If called to testify, I could and would testify competently to the facts stated herein.

3. On April 9, 2026, the Magistrate Judge entered an endorsed order (ECF Doc. 99) denying without prejudice my motion to lift the stay (ECF Doc. 98) based solely on an alleged failure to comply with Local Rule 3.01(g) and the Civil Action Order's (ECF Doc. 3) conferral requirements. I mean no disrespect to the Magistrate Judge by making these objections.

4. Before filing Doc. 98, I attempted to engage defense counsel in a good-faith effort to resolve or narrow the dispute about whether the stay should be lifted. As reflected in the conferral emails attached to my motion (Doc. 98-1) and in my subsequent written communications, I identified the issue to be resolved, sought defense counsel's position, and requested confirmation of availability for a conference. See the Email dated April 9,

1

2026, attached herewith as **Exhibit A.** I even talked about meeting Mr. Chiappetta at his office with armed security helpers (I even found some guys from Hiahleah). At first I thought it was a good idea, but for reasons explained *infra.* I have been advised that such an interaction could go sideways very easily (O.K. Corral).

5. Defense counsel's position, as I understand it, is that he will confer only through an unrecorded telephone call or an in-person conference at his private office, outside of this judicial district, and he will not meaningfully address the issue in writing.

6. As a pro se litigant, I have a practical need to avoid "he said / she said" disputes about what occurred during any required Rule 3.01(g) conference. Florida law makes it unlawful to record a telephone conversation without the consent of all parties. See Fla. Stat. § 934.03(2)(d). My understanding is that defense counsel has not consented to the creation of a recording, and I have therefore sought a conferral process that can be reliably memorialized in writing.

7. On July 15, 2025, the Magistrate Judge entered an endorsed order (ECF Doc. 38) clarifying that the Civil Action Order should not be construed to impose lawyer-only professionalism standards on pro se parties. I relied on that clarification to understand that Civil Action Order requirements phrased in counsel-centric terms should be applied practically and reasonably to pro se litigants.

## CAPACITY & LEGAL ABILITY

8. I am aware that in *United States v. Luthmann, No. 1:17-cr-00664-RJD-RER, Statement of Reasons at 1–2 (E.D.N.Y. Oct. 15, 2019) (Weinstein, J.),* the late, great Senior United States District Judge Jack B. Weinstein made detailed findings concerning my mental health, cognitive functioning, and capacity as it relates to the practice of law. Judge Weinstein

expressly recognized that I suffered from significant mental health conditions (including psychiatric disorders and substance abuse) and impaired judgment, which directly affected my conduct and decision-making during the relevant period. These findings were not casual observations—they were grounded in a forensic evaluation and formed part of the Court's § 3553(a) analysis regarding my characteristics and abilities. See the attached **Exhibit B**.

9. Judge Weinstein further observed that my conduct reflected "absurd, bizarre, and ruthless" decision-making and emphasized the broader "danger in ignoring mental health problems of practicing lawyers." The Court recognized that these impairments impacted my professional functioning, including my ability to conform to expected standards of legal reasoning, judgment, and communication. This is a critical context: the federal court acknowledged that my cognitive and psychological limitations materially affected my capacity to function as a traditionally "learned" legal actor.

10. In practical terms, these findings demonstrate that I cannot reasonably be held to the same standards of precision, formality, or procedural navigation expected of a licensed and fully capable attorney. My documented mental health impairments also limit my ability to engage in even basic interpersonal interactions, including those that fall within the core expectations of a Local Rule 3.01(g) meet-and-confer session. This directly reinforces the law-of-the-case ruling that pro se litigants—particularly those with documented impairments—are not subject to attorney professionalism standards. See ECF Doc. 38 (holding that pro se parties are not bound by Florida Bar professionalism rules). The Magistrate Judge's rigid enforcement of Local Rule 3.01(g), without accounting for these

documented limitations, constitutes a failure to apply controlling facts already recognized in federal court.

## PATTERN OF DISHONESTY & BAD FAITH

11. Based on my personal knowledge, documentary evidence, and filings in this and related cases, Attorney Nicholas Chiappetta has engaged in a repeated pattern of dishonesty, misrepresentation, and bad-faith litigation conduct. This is not a single incident—it is a consistent course of behavior reflected across multiple proceedings and communications.

12. For example, evidence submitted in related litigation shows that Mr. Chiappetta created and used an email account impersonating another attorney, including the use of a fabricated domain and identity to send and receive communications. This conduct goes far beyond aggressive advocacy—it constitutes deception directed at opposing parties and the court, undermining the integrity of the judicial process itself.

13. Additionally, filings and sworn materials demonstrate that Mr. Chiappetta has submitted misleading or fabricated materials to advance litigation positions, including the use of altered documents and unsupported allegations designed to impugn opposing parties. Courts reviewing this conduct have already found that he failed to meet professional standards and, in related proceedings, acted in bad faith and enabled abusive litigation tactics.

14. This pattern extends to his conduct in this case, where he has obstructed meaningful conferral while simultaneously positioning himself to claim procedural noncompliance by the opposing party. The April 9, 2026 Order itself acknowledges that defense counsel offered to confer, yet the record shows that such offers were made in a context where trust

4

was objectively compromised by prior dishonesty and where I reasonably sought a verifiable, accountable form of communication.

15. In sum, Mr. Chiappetta's conduct demonstrates a deliberate strategy: avoid genuine engagement, create a record of supposed noncompliance, and then weaponize Local Rule 3.01(g) as a procedural trap. That is not the purpose of the Rule, and allowing it to be used in this manner rewards bad faith while punishing a party acting under documented constraints and legitimate concerns.

### ATTORNEY CHIAPPETTA'S VIOLATIONS OF THE CIVIL ACTION ORDER (ECF DOC. 3)

16. Pursuant to the Civil Action Order, Attorney Nicholas Chiappetta, as a licensed member of The Florida Bar practicing before this Court, is bound by the **Guidelines for Professional Conduct by the Trial Lawyers Section of The Florida Bar**, which articulate baseline expectations of candor, civility, cooperation, and good-faith engagement in litigation. These Guidelines emphasize that a lawyer's word "should be his or her bond," that counsel must act with "courtesy and civility," and that attorneys should cooperate to avoid unnecessary litigation and motion practice. They further require that lawyers not use the litigation process as a means of harassment, not misrepresent facts or positions, and remain reasonably available to engage in required meet-and-confer communications.

17. To date, Mr. Chiappetta's conduct in this and related matters has fallen far short of these standards. For example, rather than engaging in civil and constructive dialogue, Mr. Chiappetta has used inflammatory and derogatory language to describe both me and the Court's own mediation process, including characterizing court-supervised settlement efforts as "terrorism" and "extortion." Such statements are directly contrary to the Guidelines' requirement that attorneys maintain respect for the court and refrain from

5

disparaging remarks toward opposing parties and proceedings. This conduct undermines not only professional civility but also the integrity of the judicial process itself.

18. Additionally, the Guidelines require attorneys to cooperate with opposing parties to avoid unnecessary motion practice and to make themselves reasonably available for meaningful meet-and-confer discussions. The record demonstrates that I repeatedly initiated substantive written conferral efforts to address specific legal and factual issues, yet Mr. Chiappetta declined to engage meaningfully, instead resorting to obstruction, delay, or escalation. This pattern forced unnecessary motion practice that the Guidelines expressly seek to prevent.

19. The Guidelines also prohibit creating a misleading record or ascribing positions to an adversary that have not been taken. However, Mr. Chiappetta has repeatedly characterized my litigation conduct in extreme and inaccurate terms, including framing legitimate legal actions as improper or coercive. This behavior distorts the record and is inconsistent with the duty of candor and fairness owed by attorneys practicing before this Court.

20. Further, the Guidelines caution that attorneys must not use litigation tactics to harass, intimidate, or unnecessarily prolong proceedings. Mr. Chiappetta's refusal to engage in good-faith conferral, coupled with his subsequent reliance on alleged procedural deficiencies to seek denial of motions, reflects precisely the type of gamesmanship the Guidelines are intended to prevent. Instead of narrowing issues or facilitating resolution, his conduct has contributed to delays, created spoliation of evidence and prejudice, and increased litigation costs.

21. In sum, while I am not bound by the Florida Bar's attorney-specific professionalism standards as a pro se litigant—as this Court has already recognized—Mr. Chiappetta is

bound by those standards. The disparity in obligations is significant. The record demonstrates that I have attempted to engage constructively and resolve disputes, while Mr. Chiappetta has failed to meet the minimum expectations of professionalism required of an officer of the Court. This imbalance further supports the need for judicial guidance and oversight in the conferral process, rather than rigid enforcement of Local Rule 3.01(g) against only one party.

## ATTEMPTS TO COMPLY IN GOOD FAITH WITH HEROD HIMSELF

22. I have, on multiple occasions, conferred in writing with Attorney Nicholas Chiappetta regarding the issues presently before the Court, including those relating to Local Rule 3.01(g), discovery disputes, disqualification, and the underlying misconduct at issue in this litigation. These communications were not cursory or perfunctory. Rather, they were detailed, substantive, and directed toward resolving both procedural and substantive disputes without unnecessary motion practice, consistent with the purpose and spirit of the Court's Civil Action Order. In these written communications, I outlined legal bases, proposed resolutions, and invited meaningful dialogue. See, e.g., my prior meet-and-confer notices and correspondence dated May 2025 (**Exhibit C**), July 2025 (**Exhibit D**), August 2025 (**Exhibit E**), and September 2025 (**Exhibit F**).

23. Despite these repeated efforts, Mr. Chiappetta has consistently failed to engage in good faith. Instead of responding substantively to the issues raised, he has ignored, deflected, or escalated disputes while preserving a litigation posture designed to manufacture procedural default arguments. The record reflects that I attempted to resolve disputes through written conferral well before filing motions, including proposing stipulations of fact, narrowing issues for adjudication, and seeking agreement on threshold matters such as

disqualification and discovery scope. These efforts satisfy not only the letter of Local Rule 3.01(g), but its intended function—to reduce unnecessary court intervention.

24. Mr. Chiappetta's current reliance on an alleged failure to "confer" is therefore disingenuous and strategic. Having declined to participate in meaningful written dialogue over an extended period, he now attempts to weaponize the rule by insisting on a narrow, hyper-technical interpretation that disregards the substance of prior conferral efforts. This is particularly improper where the Court's own order acknowledges that the purpose of conferral is to foster "a substantive conversation," not to create procedural traps. The history here shows that substantive communication was initiated repeatedly by me and rejected or ignored by opposing counsel.

25. Moreover, Mr. Chiappetta's insistence on rigid conferral formalities—after months of refusing to engage on the merits—constitutes a classic dilatory tactic. It allows him to delay adjudication of serious issues while creating the appearance of procedural noncompliance by the opposing party. This conduct is inconsistent with the Federal Rules' mandate to secure the "just, speedy, and inexpensive determination" of every action. See Fed. R. Civ. P. 1. It also undermines the integrity of Local Rule 3.01(g), which is intended to promote efficiency, not to reward obstruction.

26. In sum, the record demonstrates that I have conferred in good faith, repeatedly and substantively, through written communications that addressed the core issues in dispute. Mr. Chiappetta's refusal to engage meaningfully—and his subsequent attempt to recast that refusal as a procedural deficiency—should be rejected by the Court as an improper and dilatory litigation tactic.

## PRUDENT ADVICE TO AVOID A "SET-UP" OR THE "OK CORRAL"

27. I have also considered the manner in which any further conferral with Attorney Nicholas Chiappetta should occur in light of his prior statements and conduct. In particular, Mr. Chiappetta has already characterized my participation in court-ordered settlement efforts as "extortion" and "terrorism," including statements that neither he nor his client would negotiate with a "terrorist attempting extortion." See ECF Doc. 92. These statements were made in the context of court-supervised proceedings and directly impugn both my integrity and the legitimacy of the Court's own mediation process. Such rhetoric reflects not only hostility, but a breakdown in the basic level of trust necessary to conduct a meaningful and good-faith meet-and-confer.

28. Given that history, I have serious and reasonable concerns about participating in an in-person meeting at Mr. Chiappetta's private law office, particularly one located outside this District. After consulting with individuals whose judgment I respect—including professionals familiar with litigation risk and personal safety—I was advised that such a setting is neither necessary nor prudent under the circumstances. The concern is not hypothetical; it is rooted in the adversarial posture of opposing counsel and his prior escalation of rhetoric and conduct. A compelled, out-of-district, in-person meeting between hostile parties—absent neutral oversight—creates unnecessary risk and serves no legitimate purpose that cannot be achieved through safer, more accountable means.

29. Further, I have been advised that attempting to conduct such a meeting—even with third-party security present—would introduce avoidable complications and potential misunderstandings. No litigant should be placed in a position where a routine procedural requirement risks escalating into a confrontational or unstable situation (like the O.K.

Corral). The goal of Local Rule 3.01(g) and of going to court in the first place is to foster resolution and efficiency, not to create conditions resembling a coercive or adversarial "showdown" environment. Requiring an in-person meeting under these facts undermines, rather than advances, the Rule's purpose.

30. I am also mindful that my prior history has been the subject of allegations and narratives—most of which I dispute—that could be mischaracterized or exploited if an in-person encounter were later described inaccurately as an untoward or even criminal act. Under these circumstances, proceeding with an off-the-record, in-person meeting in a private setting presents unnecessary risk of misrepresentation and even false criminal reporting. I believe Danesh Noshrivan and Nicholas Chiappetta are so hard up to shake down The Cincinnati Insurance Company, they will do anything and say anything – dangerous animals indeed. This concern is heightened where opposing counsel has previously made inflammatory and false accusations and demonstrated a willingness to characterize litigation conduct in extreme and misleading terms, and even in outright lies. Judge Steele took him to the woodshed in March in the 1218 case for some of his poor behavior.

31. For these reasons, I have been advised—and I agree—that the appropriate course is to seek guidance from the Court rather than attempt further informal conferral under conditions that are unlikely to be productive. Based on the parties' course of dealing, prior communications, and the breakdown of trust between the parties, any additional conferral efforts would be futile without judicial direction. I therefore respectfully submit that the Court is best positioned to tailor the requirements of Local Rule 3.01(g) to the specific facts and circumstances of this case, including determining the appropriate method, format, and scope of any further conferral.

32. In sum, my decision not to proceed with an out-of-district, in-person meeting at opposing counsel's office was not a refusal to confer, but a reasonable and good-faith effort to avoid an unproductive and potentially problematic situation. I remain willing to confer in any manner directed by the Court that ensures accountability, safety, and a meaningful opportunity to resolve the issues in dispute.

## CONCLUSION

33. I remain willing to confer in good faith by videoconference or telephone if directed by the Court, provided that a reliable record can be created through prompt written memorialization (for example, by a same-day written summary email of what was discussed and each side's position, with an opportunity for the other side to correct any inaccuracies).

34. The denial of my motion on conferral grounds prejudices my ability to obtain a timely review of whether the stay should remain in place, because the denial prevents consideration of the motion on the merits and requires additional procedural steps before any merits ruling can occur.

35. I respectfully submit that lifting the stay (or, at a minimum, modifying it for preservation discovery) is necessary to prevent ongoing prejudice and irreparable evidentiary loss.

36. The ongoing delay and procedural obstruction in this matter (by an officer of the court no less) cause real prejudice and undermine the fundamental perception that I am being treated fairly in this Court. The legitimacy of any judicial process depends on the parties' confidence that the rules are being applied evenhandedly and in good faith. When one side is permitted to avoid meaningful engagement while simultaneously invoking procedural technicalities to block adjudication, it creates the appearance—and practical reality—of

unfairness. Like the great President Donald J. Trump, if I reasonably conclude that I am not being treated fairly within the current framework, I will be compelled to pursue alternative avenues, perhaps drastic but lawful, to protect my rights and obtain a resolution. *See, e.g.,* **Exhibit G**. However, those and other outcomes are avoidable. The choice belongs to Mr. Noshirvan and his concerted-action counsel, the ethically-challenged Mr. Chiappetta. They hold no cards. I respectfully submit that the Court should intervene now to ensure that Local Rule 3.01(g) is applied in a manner that is fair, practical, and consistent with the full record, so that this case may proceed on the merits rather than be derailed by dishonesty and procedural gamesmanship.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 13, 2026, at Naples, Florida.

Richard Luthmann
aka Richard A. Luthmann, Jr.