IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

-------------------------------------------------------

**RICHARD LUTHMANN,**

                Plaintiff,

    v.

**DANESH NOSHIRVAN,**

                Defendant.

-------------------------------------------------------

Case No. 2:25-cv-337-KCD-NPM

**PLAINTIFF'S NOTICE OF
SUPPLEMENTAL AUTHORITY**

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Richard A. Luthmann, Jr., pursuant to Local Rule 3.01(j), files this Notice of Supplemental Authority.

The Court's attention is respectfully directed to the following supplemental authority issued after the filing of Plaintiff's pending motion(s):

*Joseph Anthony Camp v. Danesh Noshirvan*, Tribunal Superior del Distrito Judicial de Bogotá, Sala Cuarta de Decisión Civil, Radicación No. 11001310300320260029301 (July 2, 2026). The original decision is attached as **Exhibit A**. A certified English translation is attached as **Exhibit B**.

This authority supplements Plaintiff's discussion concerning Defendant's characterization of statements published through the Instagram account @thatdaneshguy and the Substack publication ThatDaneshGuy, and the distinction between constitutionally protected opinion and unsupported factual accusations of criminal conduct.

The following portions of the Colombian appellate decision are particularly pertinent:

1

"The accusations of 'Child Stalker,' 'registered sex offender,' 'white supremacist who targets women and children with sexual assault for a fee,' and 'Real Rapist' are not opinions; they are factual statements of a criminal nature presented before a massive audience, without any judicial decision supporting them."

The appellate court further ordered:

Meta Platforms Inc. and Substack shall remove the identified publications and any other content imputing criminal conduct to Joseph Anthony Camp without support in a judicial decision, and Danesh Noshirvan shall refrain from publishing future content imputing criminal conduct to Joseph Anthony Camp without judicial support.

This supplemental authority also notes the participation of Plaintiff Richard A. Luthmann, Jr., as an interested third party who alleged similar conduct directed toward him by Defendant.

Dated: Pigeon Forge, Tennessee
        July 20, 2026

Respectfully submitted,

Richard Luthmann
Plaintiff, Pro Se
4199 Los Altos Court
Naples, FL 34109
(239) 631-5957
richard.luthmann@protonmail.com

2

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I served a true and correct copy of the enclosed upon Defendant Danesh Noshirvan and his counsel of record by filing the same with the Clerk of Court of the Middle District of Florida, Fort Myers Division, by mailing the same to the Fort Myers federal courthouse is 2110 First Street, Fort Myers, FL 33901, and then Clerk of the Court then by legal requirement uploaded the same to the Court's CM/ECF system, thus accomplishing proper delivery of the enclosed papers.

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 20, 2026

Richard Luthmann
Plaintiff, Pro Se

3



## TRIBUNAL SUPERIOR DEL DISTRITO JUDICIAL DE BOGOTÁ
### SALA CUARTA DE DECISIÓN CIVIL

### FLOR MARGOTH GONZÁLEZ FLÓREZ
Magistrada Ponente

EXHIBIT

A

Radicación No. 11001310300320260029301

Discutido y Aprobado en Sala de Decisión del veinticuatro (24) de junio y 2 (02) de julio de dos mil veintiséis (2026). Actas No. 24 y 25.

**Bogotá D.C., dos (02) de julio de dos mil veintiséis (2026).**

Resuelve la Sala la impugnación formulada por Joseph Anthony Camp contra el fallo de primera instancia dictado por el Juzgado Tercero Civil del Circuito de Bogotá el 11 de junio de 2026, dentro de la acción de tutela promovida por el impugnante en contra de Danesh Noshirvan, con miras a lograr la protección de sus derechos fundamentales al buen nombre, honra, protección de datos personales, intimidad y dignidad humana.

### I. ANTECEDENTES

**1. Pretensiones**[1]: Ordenar al accionado: i) eliminar de manera definitiva las publicaciones difundidas a través de Instagram (@thatdaneshguy) y Substack (ThatDanesh) que contengan expresiones presuntamente injuriosas, calumniosas o difamatorias en contra del accionante, ii) publicar una rectificación en condiciones equivalentes a las de los contenidos cuestionados, iii) abstenerse de realizar nuevas manifestaciones de similar naturaleza y iv) suprimir cualquier dato personal relacionado con su ubicación, situación legal, correo electrónico u otra información privada.

campaña sistemática de difamación, injuria, calumnia y hostigamiento digital desplegada por Danesh Noshirvan a través de la cuenta de Instagram @thatdaneshguy y del perfil ThatDanesh en Substack. Sostuvo que el accionado lo presenta públicamente como *"Child stalker"*, *"registered sex offender"*, *"white supremacist"*, *"Real Rapist"* y una persona que ataca a mujeres y menores con fines sexuales, además de difundir expresiones orientadas a desacreditarlo, ridiculizarlo y asociarlo con conductas delictivas de extrema gravedad.

El contenido ha alcanzado una amplia difusión en redes sociales, generando repercusiones negativas sobre su honra, buen nombre, intimidad, entorno personal y actividad profesional. Danesh Noshirvan, remitió comunicaciones a autoridades colombianas atribuyéndole delitos como amenazas, hostigamiento, constreñimiento ilegal, acceso abusivo a sistemas informáticos y pornografía con menores de edad, actuación que calificó como una forma de persecución y estigmatización.

También señaló la divulgación no autorizada de información relacionada con su ubicación, correo electrónico y situación migratoria, hecho que, a su juicio, incrementó los riesgos para su seguridad. La gravedad de esos acontecimientos lo llevó a solicitar el reconocimiento de la condición de refugiado ante el Estado Colombiano, además de formular denuncia penal ante la Fiscalía General de la Nación y acudir a los mecanismos de reporte de las plataformas digitales, sin lograr el retiro del material cuestionado.

Finalmente, sostuvo que las publicaciones permanecen disponibles al público, prolongando el deterioro de su reputación y la vulneración de sus derechos fundamentales.

La acción fue conocida en primera instancia por el Juzgado Tercero Civil del Circuito de Bogotá. Su admisión data del 28 de mayo de 2026[3], decisión en la cual ordenó la notificación del convocado, y la vinculación de Meta Platforms, Inc. Instagram, Substack Inc., la Policía Nacional de Colombia, la Fiscalía 588 Local de Bogotá, el Ministerio de Relaciones Exteriores - Cancillería de Colombia, la Unidad Administrativa Especial de Migración Colombia y a la Embajada de Estados Unidos en Colombia, para que se pronuncien respecto de los hechos del escrito inicial.

**Danesh Noshirvan**[4] sostuvo que sus publicaciones se enmarcan en el ejercicio de la libertad de expresión y versan sobre asuntos de interés público relacionados con una persona objeto de controversias, reportajes y debates en distintos escenarios. Los contenidos cuestionados corresponden a opiniones, críticas, sátiras, hipérboles retóricas o referencias a información difundida por terceros, sin presentarlas como hechos acreditados por conocimiento personal.

Las medidas solicitadas implican restricciones incompatibles con la libertad de expresión, al pretender la eliminación de contenido, la prohibición de futuras manifestaciones y la imposición de retractaciones. Señaló igualmente la existencia de otros mecanismos de defensa utilizados por el promotor, entre ellos denuncias penales y reportes ante plataformas digitales, circunstancia que, a su juicio, excluye la procedencia del amparo. Descartó cualquier propósito de causar un perjuicio, aseguró actuar con fundamento en información de acceso público y manifestó su disposición a aportar las fuentes utilizadas; en consecuencia, pidió desestimar las pretensiones. Adicionalmente, afirmó ser objeto de hostigamiento por parte de Joseph Anthony Camp mediante el envío reiterado de correos electrónicos, para lo cual allegó capturas de pantalla y documentación de respaldo.

en la tutela y sostuvo que Daniesh Nosharvan ha utilizado redes sociales para difundir acusaciones falsas, promover persecución y afectar la reputación de diversas personas, entre ellas periodistas, profesionales y particulares.

Indicó ser señalado públicamente como *"pedophile"*, *"child predator"* y *"child stalker"*, imputaciones rechazadas por carecer de sustento. A su juicio, la libertad de expresión no ampara atribuciones delictivas falsas, *"doxxing"* divulgación de información privada ni campañas de acoso digital. En esas condiciones, solicitó tener en cuenta la existencia de un presunto patrón de conducta, reconocer su intervención dentro del trámite y adoptar medidas orientadas a prevenir nuevas afectaciones contra las personas señaladas por el accionado.

**Facebook Colombia S.A.S.**[6] sostuvo que carece de legitimación en la causa por pasiva, puesto que su objeto social se limita a servicios de publicidad y mercadeo, sin capacidad legal para administrar el servicio de Instagram. Esa función corresponde a Meta Platforms, Inc., sociedad constituida bajo las leyes del Estado de Delaware, con domicilio en 1 Meta Way, Menlo Park, CA 94025, EE. UU., cuya condición de administradora del servicio para usuarios colombianos se desprende de las Condiciones de Uso disponibles en help.instagram.com/581066165581870: *"El Servicio de Instagram es uno de los Productos de Meta que Meta Platforms, Inc. te proporciona. Por lo tanto, estas Condiciones de uso constituyen un acuerdo entre tú y dicha empresa"*.

Alegó igualmente el incumplimiento del principio de subsidiariedad, al no haberse agotado la solicitud de retiro ante el publicador, la reclamación ante la plataforma ni la demostración de relevancia constitucional del asunto. Destacó que el promotor reconoció en su escrito haber acudido a otras autoridades, con lo cual existe un mecanismo ordinario en curso. Señaló también la

alguna atribuible a su representada, en tanto ningún hecho narrado en la tutela involucra conducta de FB Colombia.

La **Unidad Administrativa Especial Migración Colombia – UAEMC⁷** advirtió que sus funciones se limitan al control migratorio, la vigilancia de extranjeros y demás asuntos relacionados con la política migratoria del Estado, materias ajenas a la controversia planteada.

Tras verificar la situación migratoria de las personas mencionadas en la demanda, estableció que Joseph Anthony Camp permanece regularmente en el país mediante salvoconducto vigente para resolver su solicitud de refugio, en tanto Danesh Noshirvan no registra ingreso al territorio nacional. Bajo ese entendido, sostuvo carecer de participación en los hechos objeto del amparo y de capacidad para satisfacer las pretensiones formuladas.

La **Dirección de Investigación Criminal e INTERPOL⁸** pidió su desvinculación del trámite al considerar inexistente legitimación en la causa por pasiva. Expuso que, por conducto del Centro Cibernético Policial, presta apoyo técnico e investigativo en asuntos relacionados con el ciberespacio y ejerce labores de policía judicial bajo la coordinación de la Fiscalía General de la Nación.

Manifestó que no tiene atribuciones para ordenar la eliminación, suspensión o bloqueo de cuentas en redes sociales, páginas web o material difundido en internet, determinaciones reservadas a los administradores de los respectivos servicios digitales conforme a sus políticas de uso. Indicó, además, que el CAI Virtual se limita a brindar orientación a los ciudadanos y a trasladar las solicitudes recibidas a los responsables de cada plataforma.

Con base en lo anterior, sostuvo que las reclamaciones formuladas por el accionante son ajenas a su ámbito de actuación y

La **Fiscalía Cuatrocientos Cinco Delegado ante Juzgados Penales Municipales de Bogotá**[9] informó tener a su cargo la noticia criminal No. 110016000050202653891, por presunta calumnia presentada por Joseph Anthony Camp contra Danesh Noshirvan. El asunto fue tramitado inicialmente ante la Unidad de Conciliación Preprocesal, donde se convocó a audiencia sin lograr la comparecencia del querellado, respecto de quien no se dispone de información suficiente para establecer su paradero.

Señaló que el expediente fue recibido el 15 de mayo de 2026 y se encuentra en estudio para evaluar los elementos recaudados y adoptar las determinaciones pertinentes; dada la naturaleza querellable y conciliable de la conducta denunciada.

Sostuvo la inexistencia de afectación atribuible al ente acusador, puesto que el asunto avanza conforme a su estado y a las cargas de trabajo de la dependencia, y solicitó negar el amparo respecto de esa autoridad.

El **Centro Cibernético de la Policía Nacional**[10] precisó que su función consiste en brindar orientación y atención frente a incidentes cibernéticos, mas no en ordenar la eliminación de sitios web o cuentas en plataformas digitales. Señaló poder únicamente gestionar y remitir solicitudes a los administradores, quienes deciden sobre el retiro, suspensión o bloqueo del contenido conforme a sus políticas internas.

El **Ministerio de Relaciones Exteriores – Cancillería**[11] expuso que los hechos relatados son ajenos a las labores de esa cartera, orientadas a la política exterior, las relaciones diplomáticas y consulares, así como a la coordinación de asuntos migratorios y de nacionalidad. Indicó que la controversia versa sobre una presunta afectación de derechos fundamentales derivada de publicaciones

en los acontecimientos descritos y señaló la inexistencia de vínculo entre las reclamaciones formuladas y las actividades desarrolladas por esa cartera.

**Meta Platforms, Inc. Instagram** y **Substack, Inc.**[12] debidamente notificados guardaron silencio.

### 4. Fallo acusado de primera instancia.

En sentencia del 11 de junio de 2026[13], la *a-Quo* negó el amparo constitucional, al concluir que no se satisfizo el requisito de subsidiariedad, pues debía ejercer el derecho de rectificación directamente frente a Danesh Noshirvan antes de acudir a esta vía, sin que obrara en el expediente prueba de esa gestión.

La procedencia excepcional del amparo en materia de honra y buen nombre exige acreditar esa solicitud previa ante el autor de la información controvertida, presupuesto que el despacho no encontró demostrado. Por esas razones, negó las pretensiones y desvinculó a las entidades e intervinientes del trámite.

### 5. Impugnación.

El accionante apeló el veredicto[14]. Sostuvo que el juzgado desconoció el material probatorio que acreditaba el envío de peticiones directas de retractación, retiro de contenido y cese de publicaciones dirigidas a Danesh Noshirvan, requerimientos desatendidos e incluso respondidos de forma despectiva, circunstancia que, a su juicio, satisfacía el presupuesto previo exigido por la jurisprudencia constitucional.

La decisión omitió valorar pruebas y manifestaciones mediante las cuales el propio accionado reconoció haber recibido esas

publicaciones en redes sociales, pues los presupuestos para examinar de fondo la controversia se encontraban satisfechos.

El fallo dejó sin análisis las afectaciones a la dignidad humana, la intimidad, la protección de datos personales, la integridad psíquica y la seguridad personal, así como la solicitud de medidas provisionales. Destacó que la difusión cuestionada continúa vigente y genera un perjuicio que calificó como irremediable.

## II. CONSIDERACIONES

La Sala es competente para conocer del asunto de acuerdo a lo normado en el canon 37 del Decreto 2591 de 1991 en concordancia con los Decretos 1069 de 2015 y 333 de 2021.

De cara a la legitimación en la causa por activa habrá de decirse que se encuentra acreditada, en tanto Joseph Anthony Camp es un ciudadano estadounidense con permanencia regular en Colombia según el informe rendido por la Unidad Administrativa Especial Migración Colombia, quien actúa en nombre propio como titular de los derechos presuntamente vulnerados[15].

La legitimación en la causa por pasiva recae sobre Danesh Noshirvan, ciudadano que no registra ingreso en el territorio nacional[16], en su condición de autor y controlador de las cuentas @thatdaneshguy y ThatDanesh a través de las cuales se difundió el contenido cuestionado.

Meta Platforms, Inc., administradora de los servicios de Facebook e Instagram, y Substack, Inc., entidades con domicilio principal en los Estados Unidos de América[17], vinculadas y notificadas en debida forma sin que intervinieran en el proceso[18], cumplen el rol de

---

[15] Archivo No. 011ContestaciónMigraciónColombia.pdf, pág. 9.
[16] Archivo No. 011ContestaciónMigraciónColombia, pág. 9.

*el proceso de transmisión y difusión de un contenido[,] mas no toman*
*decisiones sobre la difusión, es decir, dan acceso, alojamiento,*
*transmisión e indexación a contenidos, productos y servicios, que se*
*originan en terceros, escenario donde facilitan la libertad de expresión;*
*y (ii) [de carácter] activo[,] en la medida en que pueden adoptar un*
*modelo de negocios basado en datos"*[19].

La competencia del Tribunal para conocer del presente asunto e
impartir mandatos a entidades radicadas en el exterior halla sustento
en la jurisprudencia constitucional más reciente. La Corte
Constitucional ha precisado que el ordenamiento colombiano adopta
un modelo de *"país-de-destino" moderado*[20], conforme al cual los
jueces nacionales pueden asumir conocimiento de controversias
vinculadas al entorno digital cuando los hechos ocurridos en el
ciberespacio producen, generan consecuencias ciertas y directas en el
territorio colombiano.

Bajo esa premisa, ha reconocido que *"las dos grandes reglas sobre*
*competencia territorial se refieren al lugar donde ocurre la amenaza o*
*vulneración del derecho, o al lugar donde esta omisión o violación tiene*
*efectos"* y aunque *"en el entorno digital no siempre es evidente cuál fue*
*el lugar donde se vulneraron o amenazaron los derechos*
*fundamentales"*, ello no priva al juez constitucional de su competencia
cuando obren *"suficientes elementos para considerar que la conducta*
*de Meta produjo efectos principalmente en Colombia"*[21].

En el *sub examine*, el material circuló en Colombia y desplegó aquí
sus consecuencias sobre los derechos fundamentales del promotor, lo
que satisface el vínculo territorial requerido. A ello se suma que el
propio accionado compareció al proceso mediante escrito de
contestación, quedando sujeto a las normas nacionales.

Joseph Anthony Camp satisfizo el requisito especial de procedibilidad consagrado en el numeral 7 del artículo 42 del Decreto 2591 de 1991, consistente en la solicitud previa de rectificación dirigida directamente al emisor de la información cuestionada. De superarse ese umbral, se abordará, **en segundo término**, el examen de fondo, destinado a determinar si las publicaciones atribuidas a Danesh Noshirvan vulneraron los derechos fundamentales invocados. En ese orden, las temáticas a resolver son las siguientes: **i)** El requisito especial de procedibilidad: la solicitud previa de rectificación, **ii)** los derechos fundamentales en tensión: la libertad de expresión frente a la honra, el buen nombre, la intimidad, la protección de datos personales y la dignidad humana y **iii)** el caso concreto, naturaleza de las expresiones difundidas por Danesh Noshirvan y su incidencia sobre los derechos fundamentales del accionante.

**i) El requisito especial de procedibilidad: la solicitud previa de rectificación.**

Para desatar el asunto debe precisarse que *"la solicitud previa de rectificación como requisito de procedibilidad para el ejercicio de la acción de tutela es exigible cuando la información que se predica inexacta o errónea es divulgada a través de los medios de comunicación o de informes periodísticos publicados en redes sociales por personas que actúan en calidad de periodistas, o quienes sin ser comunicadores de profesión se dedican habitualmente a emitir información"*[22].

La Corte Constitucional ha calificado ese instrumento como un procedimiento *"autocompositivo que el ordenamiento jurídico ha dispuesto para servir como mecanismo de salvaguarda tanto de los derechos a la libertad de expresión e información, pues la objeción frente a la información se presenta directamente al medio de comunicación, quien podrá y deberá hacer las verificaciones y argumentaciones en torno a la verdad y alcance del contenido para justificar su renuencia o acceder de manera voluntaria a la rectificación,*

*sino que podrá tramitarla de manera directa y expedita ante el medio de comunicación"*. En consecuencia, *"solo si los medios se niegan injustificadamente a rectificar o lo hacen incumpliendo los mínimos exigibles para la rectificación, el amparo constitucional resulta ser procedente"[23]*.

La Sentencia SU-420 de 2019, indicó que en conflictos entre particulares derivados de publicaciones en redes sociales, el amparo procede cuando el afectado ha agotado concurrentemente: *i)* la solicitud de retiro o enmienda ante el particular que hizo la publicación; *ii)* la reclamación ante la plataforma donde se encuentra alojada la publicación, siempre que sus reglas de comunidad habiliten esa posibilidad; y *iii)* la constatación de la relevancia constitucional del asunto[24].

Frente a ellos, **i)** Joseph Anthony Camp, remitió a Danesh Noshirvan una solicitud formal de retractación, retiro del material lesivo y cese de las divulgaciones difamatorias el 20 de abril de 2026, dirigida al correo electrónico thatdaneshguy@gmail.com[25], ratificada en su contestación[26], el 24 de abril[27] y el 27 de abril de 2026[28], reiteró la exigencia de eliminación definitiva de las divulgaciones, publicación de una rectificación y supresión de sus datos personales; **ii)** reportó los contenidos cuestionados a través de los canales dispuestos por Instagram y Substack[29] y **iii)** las imputaciones de conductas difundidas ante una audiencia de seiscientos quince mil seguidores[30] configuran un asunto de inequívoca relevancia constitucional.

---

[23] C.C. Sentencia T-688 de 2015, M.P.Myriam Ávila Roldán, consideración 2.6.2.
[24] Corte Constitucional. Sentencia SU-420 de 2019. M.P. José Fernando Reyes Cuartas.
[25] Archivo No.003EscritoTutelaAnexos.pdf.
https://drive.google.com/drive/folders/1nfY4U9OsoIG3dvJo7i_9NolLhoI_rRoX?us
p=sharing, Gmail - Formal request for retraction, removal of content and cessation of defamatory publications against Mr. JOSEPH ANTHONY CAMP
[26] Archivo No. 007ContestaciónDaneshNoshirvan.pdf, pag. 1.
[27] Archivo No.003EscritoTutelaAnexos.pdf. Danesh Noshirvan Evidence - Google Drive. Gmail - retraction demand (part 2)
[28] Archivo No.003EscritoTutelaAnexos.pdf. Danesh Noshirvan Evidence - Google Drive. Gmail - Formal request for retraction, removal of content and cessation of defamatory publications against Mr. JOSEPH ANTHONY CAMP.
[29] Archivo No.003EscritoTutelaAnexos.pdf. Reporte Instagram 3 de marzo de 2026. Reporte

*inexactas o erróneas. En este caso se deberá anexar la transcripción de la información o la copia de la publicación y de la rectificación solicitada que no fue publicada en condiciones que aseguren la eficacia de la misma"*. En el presente asunto, el accionante aportó las grabaciones, *screenshots* de las publicaciones difundidas en Instagram y Substack en idioma ingles[31], con reproducción del texto original en las notas al pie de esta providencia y traducción libre a cargo del despacho sustanciador, contenido que permanece accesible para verificación directa en las respectivas plataformas digitales[32].

En consecuencia, el requisito anotado se encuentra acreditado, la acción supera el umbral de procedibilidad para el examen de fondo.

### ii) Los derechos fundamentales en tensión: la libertad de expresión frente a la honra, el buen nombre, la intimidad, la protección de datos personales y la dignidad humana

El artículo 20 de la Constitución Política, reconoce la garantía de toda persona para expresar y difundir libremente su pensamiento y opiniones, informar y recibir información veraz e imparcial, y la de fundar medios masivos de comunicación, los cuales son libres y tienen responsabilidad social. La jurisprudencia constitucional ha precisado que ese derecho se compone por: *(i) la libertad de expresión stricto sensu; (ii) la libertad de información, con sus componentes de libertad de búsqueda, acceso, difusión y recepción de información veraz e imparcial; (iii) la libertad de prensa; (iv) el derecho a la rectificación en condiciones de equidad; y (v) las prohibiciones de censura*[33].

En ese marco, el derecho fundamental al buen nombre goza de una amplia protección derivada de la Constitución Política de Colombia, el artículo 15 reconoce que *"todas las personas tienen derecho a la intimidad personal y familiar y a su buen nombre"* y consagra expresamente y de forma categórica que el Estado *"debe*

*tienen los demás y que se configura como derecho frente al detrimento que pueda sufrir como producto de* **expresiones ofensivas** *o* **injuriosas** *o* **informaciones falsas o tendenciosas**"[34] (se destaca). Por su parte, el derecho a la honra está consagrado en el canon 21 superior y, si bien se ha asimilado y equiparado a la garantía de buen nombre, la Corte Constitucional lo ha definido *"como la estimación o deferencia con la que, en razón a su dignidad humana, cada persona debe ser tenida por los demás miembros de la colectividad que le conocen y le tratan"* [35].

Frente al material publicado en redes sociales, la jurisprudencia constitucional ha destacado que *"la intención dañina, desproporcionada o insultante no va a depender de la valoración subjetiva que de la manifestación realice el afectado, sino de un análisis objetivo y neutral que de la misma se haga y que arroje como resultado la vulneración del núcleo esencial de los derechos al buen nombre y a la honra. En consecuencia, lo publicado en redes sociales está amparado por la libertad de expresión, pero también está sujeto a los límites por lo que algunas publicaciones no se encuentran bajo la protección señalada en el artículo 20 de la Carta, ni por los instrumentos internacionales que la consagran. Así, se activa un límite a la libertad de expresión cuando lo divulgado no se identifica con un fin constitucional legítimo, ni siquiera contribuye a un debate en específico, sino simplemente conlleva una intención dañina o insultante respecto del hecho que se quiere comunicar"*[36].

La Corte Constitucional, recogiendo lo manifestado por el Tribunal Constitucional Español ha mencionado que *"el derecho al honor opera como un límite insoslayable a la libre expresión, prohibido como está que alguien se refiera a una persona de manera insultante o injuriosa, o atentando injustificadamente contra su reputación, demeritándola ante la opinión ajena. <u>Por ello la libertad de expresión no cobija las "expresiones formalmente injuriosas e innecesarias para el</u>*

Las redes sociales *"aunque son de gestión privada, funcionan como espacios abiertos al público en las que circulan expresiones y actividades de relevancia social y económica"* de manera que *"esa doble naturaleza impone la necesidad de establecer límites que aseguren tanto la autonomía empresarial como la vigencia de los derechos fundamentales"*[38]. En ese marco, el oficio de influenciador digital, la actividad de quien *"comparte contenido regularmente con una comunidad digital"* constituye *"una expresión de la vocación, capacidades y deseos de quienes lo ejercen"* y, en cuanto tal, goza de amparo constitucional *"siempre que no desconozca los límites propios del Estado social de derecho y los derechos fundamentales"*[39].

En el presente asunto, Danesh Noshirvan en calidad de creador de contenido, difundió a través de su cuenta de Instagram @thatdaneshguy, con seiscientos quince mil seguidores y de su perfil ThatDanesh en Substack[40], plataforma de publicación digital con tres mil doscientos suscriptores, un conjunto de divulgaciones que la Sala describe a continuación.

***En primer lugar***, en su cuenta de Instagram, lo denominó *"acosador de menores"*, lo calificó como *"aparentemente un delincuente sexual registrado según medios de comunicación de Belice"*, lo describió como *"un supremacista blanco que ataca a mujeres y niños con agresión sexual a cambio de dinero"* y lo acusó públicamente de ser un *"violador"*[41]. También se documentó la existencia del Episodio 8 del podcast *"Lágrimas de un violador - acechador Joey Camp"*[42].

---

[37] Corte Constitucional, Sentencia T-050 de 2016 M.P. Gabriel Eduardo Mendoza Martelo. Tomado de la Sentencia T-550 de 2012, que a su vez citó la Sentencia 49 del 26 de febrero de 2001 de la Sala Segunda del Tribunal Constitucional Español.

[38] Corte Constitucional, Sentencia T-256 de 2025. M.P. Natalia Ángel Cabo.

[39] Ibidem.

[40] El despacho sustanciador realizó búsqueda en Instagram y Substack con el dominio @thatdaneshguy el 23 de junio de 2026.

[41] Archivo No. 003EscritoTutelaAnexos.pdf, pág. 11 a 13. Capturas de pantalla de publicaciones de Instagram. Textos originales: *"Child stalker Joey Camp"*; «*apparently a registered sex offender according to Belizean media*»; «*a white supremacist who targets women and children with sexual*

audiencia a *"compartir su podcast en Bogotá para que toda la ciudad sepa quién es y para que los niños de Colombia puedan estar a salvo"*[43].

**En tercer lugar**, la divulgación no autorizada de datos personales a través de distintas plataformas digitales: su ubicación geográfica en Colombia, su correo electrónico, su situación legal y su condición migratoria, información difundida sin su consentimiento con la finalidad de exponerlo públicamente y facilitar actos de hostigamiento por parte de terceros[44].

Ninguna de las imputaciones de carácter delictivo referidas encuentra respaldo en decisión judicial aportada al plenario. El propio accionado reconoció, en su contestación, que los elementos cuestionados corresponden a *"referencias a acusaciones, reportajes o publicaciones realizadas por terceros"*[45], admisión que evidencia la ausencia de verificación judicial previa de la información difundida y descarta cualquier ejercicio diligente del derecho a informar.

**iii) El caso concreto: Naturaleza de las expresiones difundidas y su incidencia sobre los derechos fundamentales del accionante.**

Para determinar si las expresiones descritas se enmarcan en el ejercicio legítimo de la libertad de expresión, el Tribunal acude a la distinción estructural que la jurisprudencia constitucional ha trazado entre opiniones, expresiones subjetivas no susceptibles de prueba de verdad, ampliamente protegidas y afirmaciones fácticas, imputaciones de conductas o condiciones verificables en la realidad, sujetas al deber de veracidad. Existe además una tercera categoría que el ordenamiento no ampara bajo ninguna forma de libertad de expresión: las expresiones formalmente injuriosas o las imputaciones delictivas sin sustento probatorio, frente a las cuales el remedio constitucional no es la rectificación sino la cesación y eliminación del contenido, pues

---

43 Archivo No. 019ImpugnaciónTutela.pdf, cuarto alcance, pág. 65. Texto original: *«Share my*

La opinión *"es un juicio valorativo acerca de algo o alguien, y su materialización necesariamente implica el pensamiento o la elaboración de ideas a partir de una serie de estímulos externos"*[46]. La libertad de opinión *"recae en la posibilidad que tiene cualquier persona de divulgar por cualquier medio sus opiniones y a no ser importunado a causa de estas"* y ha sido definida como *"la posibilidad de comunicar a otros el propio pensamiento, por lo cual puede decirse que este derecho coincide en cuanto a su objeto con la libertad de expresión"*. Bajo esa premisa, la Corte Constitucional ha señalado que esta garantía *"busca proteger aquellas formas de comunicación en las que predomina la expresión de la subjetividad del emisor, es decir, sus valoraciones, sentimientos y apreciaciones personales sobre determinados hechos, situaciones o personas"*, reconociendo que las manifestaciones hacen parte integral del núcleo esencial de la libertad de expresión en un Estado democrático"[47].

Bajo ese marco, las imputaciones de *"Child Stalker"*, *"registered sex offender"*, *"white supremacist who targets women and children with sexual assault for a fee"* y *"Real Rapist"* no constituyen opiniones, son afirmaciones fácticas de connotación delictiva presentadas ante una audiencia masiva, sin que obre en el plenario decisión judicial alguna que las respalde. La capacidad difusiva agrava la lesión.

En esas circunstancias, el Tribunal concluye que las publicaciones objeto de controversia excedieron los límites constitucionales de la libertad de expresión y comportaron una afectación ilegítima de los derechos fundamentales al buen nombre, la honra y la dignidad humana de Joseph Anthony Camp. Se precisa que las opiniones y críticas del accionado sobre el accionante permanecen en el ámbito de protección constitucional; lo que determina el amparo es exclusivamente la endilgación de conductas delictivas concretas sin respaldo en decisión judicial alguna.

El accionado no registra ingreso al territorio nacional[48]. Esa circunstancia no priva al juez constitucional de competencia ni excluye la posibilidad de impartir órdenes de cesación, conforme al principio de territorialidad aplicado al ciberespacio, *"cuando la amenaza o vulneración de los derechos fundamentales sucede en el ciberespacio, el juez de tutela tendrá competencia para pronunciarse si dicha amenaza o vulneración produce efectos relevantes en Colombia"*[49]. El contenido cuestionado circuló en este país y aquí desplegó sus consecuencias sobre los derechos del accionante; a ello se suma que el propio accionado compareció y contestó la acción, sujetándose con ello a la jurisdicción nacional.

Las órdenes de protección recaen principalmente sobre Meta Platforms Inc. en calidad de administradora de la red social Instagram y Substack Inc., plataformas en las que se aloja el material lesivo, en tanto los intermediarios digitales, una vez puestos en conocimiento de una vulneración de derechos fundamentales, adquieren una posición de garante que los habilita como sujetos pasivos de órdenes constitucionales de retiro. En reciente jurisprudencia de la Sala Civil, Agraria y Rural de la Corte Suprema de Justicia reiteró que *"[C]uando se examina la moderación de contenidos en internet, las plataformas digitales no solo pueden, <u>sino que deben restringir</u> la circulación de mensajes que configuren discursos prohibidos o no amparados —como la incitación al odio, violencia o comisión de delitos—, y la remoción de tales publicaciones no constituye una censura indebida, sino una medida necesaria para garantizar un entorno digital seguro y acorde con los parámetros nacionales e internacionales en materia de libertad de expresión, pues la permanencia del mensaje en internet perpetúa y amplifica la vulneración"*[50].

y la dignidad humana de Joseph Anthony Camp, conforme a lo expuesto.

## III. DECISIÓN

En mérito de lo expuesto, la **SALA CUARTA DE DECISIÓN CIVIL DEL TRIBUNAL SUPERIOR DEL DISTRITO JUDICIAL DE BOGOTÁ**, administrando justicia en nombre de la República de Colombia y por autoridad de la ley,

### RESUELVE

**PRIMERO: REVOCAR** la sentencia de tutela proferida el 11 de junio de 2026 por el Juzgado Tercero Civil del Circuito de Bogotá, por las razones expuestas.

**SEGUNDO:** En su lugar, **AMPARAR** los derechos fundamentales a la honra, el buen nombre y la dignidad humana de **Joseph Anthony Camp**, de conformidad con lo expuesto en la parte motiva de esta providencia.

**TERCERO: ORDENAR** a Meta Platforms Inc. en su calidad de administradora de la red social Instagram y Substack que en el término de cuarenta y ocho (48) horas siguientes a la notificación de esta sentencia retiren, de la cuenta @thatdaneshguy - https://www.instagram.com/thatdaneshguy y del perfil ThatDanesh https://substack.com/@thatdaneshguy, las publicaciones que contengan las expresiones *"Child Stalker"*, *"registered sex offender according to Belizean media"*, *"white supremacist who targets women and children with sexual assault for a fee"* y *"Real Rapist"*, referidas al accionante Joseph Anthony Camp, así como cualquier otro contenido que le impute la comisión de conductas delictivas sin respaldo en decisión judicial.

**QUINTO: REMITIR** una copia de la sentencia al Juzgado de origen, para todos los fines pertinentes.

**SEXTO: NOTIFICAR** esta decisión a todos los interesados, por el medio más expedito y eficaz.

**SÉPTIMO: ENVIAR** lo actuado ante la Corte Constitucional para su eventual revisión.

**NOTIFÍQUESE Y CÚMPLASE.**

**FLOR MARGOTH GONZÁLEZ FLÓREZ**
**Magistrada**

**JOSE ALFONSO ISAZA DÁVILA**
**Magistrado**

**MARTHA ISABEL GARCÍA SERRANO**
**Magistrada**

Firmado Por:

Flor Margoth Gonzalez Florez
Magistrada
Sala Civil
Tribunal Superior De Bogotá, D.C. - Bogotá D.C.,

Jose Alfonso Isaza Davila
Magistrado Tribunal O Consejo Seccional
Sala 018 Civil
Tribunal Superior De Bogotá, D.C. - Bogotá D.C.,

Martha Isabel Garcia Serrano
Magistrada
Sala 021 Civil
Tribunal Superior De Bogotá, D.C. - Bogotá D.C.,

Este documento fue generado con firma electrónica y cuenta con plena validez jurídica, conforme a lo dispuesto en la Ley 527/99 y el decreto reglamentario 2364/12

Código de verificación:

## SUPERIOR COURT OF THE JUDICIAL DISTRICT OF BOGOTA
## FOURTH CIVIL DECISION CHAMBER

### FLOR MARGOTH GONZÁLEZ FLÓREZ
Presiding Magistrate

Filing No. 11001310300320260029301

Discussed and Approved in Decision Room on the twenty-fourth (24) of June and 2 (02) of July of two thousand twenty-six (2026). Minutes No. 24 and 25.

**Bogotá DC, July 2, 2026.**

The Court resolves the challenge filed by Joseph Anthony Camp appeals the first instance ruling issued by the Court Third Civil Court of the Bogotá Circuit on June 11, 2026, within the legal action brought by the appellant against Danesh Noshirvan, with a view to achieving the protection of their rights fundamental to good name, honor, data protection personal matters, privacy and human dignity.

## I. BACKGROUND

**1. Claims1:** Order the defendant to: i) eliminate in a definitively the posts shared through Instagram (@thatdaneshguy) and Substack (ThatDanesh) that contain allegedly offensive, slanderous or defamatory expressions in against the plaintiff, ii) publish a rectification under conditions equivalent to those of the content in question, iii) refrain from to carry out new demonstrations of a similar nature and iv) delete any personal data related to their location, legal status, email or other private information.

systematic campaign of defamation, slander, libel and digital harassment deployed by Danesh Noshirvan through the Instagram account @thatdaneshguy and the ThatDanesh profile on Substack. He argued that the defendant publicly presents him as *"Child stalker"*, *"registered sex offender"*, *"white supremacist"*, *"Real "Rapist"* and a person who attacks women and minors for purposes sexual, in addition to spreading expressions aimed at discrediting him, ridicule him and associate him with extremely serious criminal conduct.

The content has achieved widespread dissemination on social media, generating negative repercussions on their honor, good name, Privacy, personal environment, and professional activity. Danesh Noshirvan sent communications to Colombian authorities attributing to him      crimes such as threats,                harassment, unlawful coercion, abusive access to computer systems and child pornography, an act he described as a form of persecution and stigmatization.

He also pointed to the unauthorized disclosure of information related to your location, email, and situation migration, a fact which, in his opinion, increased the risks for his security. The seriousness of these events led him to request the recognition of refugee status before the State Colombian, in addition to filing a criminal complaint with the Attorney General's Office and resorting to the reporting mechanisms of the digital platforms, without managing to have the questioned material removed.

Finally, he maintained that the publications remain. available to the public, prolonging the deterioration of their reputation and the violation of their fundamental rights.

The action was initially heard by the Court

Third Civil Court of the Bogotá Circuit. Its admission dates from May 28. of 20263, a decision in which he ordered the notification of the summoned party, and the linking of Meta Platforms, Inc., Instagram, Substack Inc., the Colombian National Police, the 588th Local Prosecutor's Office of Bogotá, the Ministry of Foreign Affairs - Chancellery of Colombia, the Special Administrative Unit of Migration Colombia already the United States Embassy in Colombia, to issue a statement regarding the facts of the initial document.

**Danesh Noshirvan4** maintained that his publications are framed in the exercise of freedom of expression and deal with matters of public interest related to a person who is the subject of disputes, Reports and debates in various settings. The content The items in question correspond to opinions, criticisms, satires, and hyperboles. rhetoric or references to information disseminated by third parties, without to present them as facts proven by personal knowledge.

The requested measures involve incompatible restrictions with freedom of expression, by attempting to eliminate content, the prohibition of future demonstrations and the imposition of retractions. He also pointed out the existence of other mechanisms defenses used by the promoter, including criminal complaints and Reports to digital platforms, a circumstance which, in his opinion, precludes the admissibility of the injunction. He denied any intention to cause harm, asserting that he acted based on information publicly accessible and expressed his willingness to provide the sources used; consequently, he asked that the claims be dismissed. Additionally, he claimed to be the target of harassment by Joseph Anthony Camp by repeatedly sending emails electronics, for which he provided screenshots and documentation backup.

In the guardianship and argued that Danesh Noshirvan has used networks social media to spread false accusations, promote persecution and to affect the reputation of various people, including journalists, professionals and individuals.

He indicated that he was publicly labeled a *"pedophile", "child "predator"* and *"child stalker",* charges rejected for lack of support. In his opinion, freedom of expression does not protect powers false criminal charges, *"doxxing",* disclosure of private information, or digital harassment campaigns. Under those conditions, he requested to have in It takes into account the existence of an alleged pattern of behavior, recognizing its intervention within the procedure and adopt measures aimed at prevent further harm to the people identified by the actuated.

**Facebook Colombia SAS6** argued that it lacks standing to be sued, since its corporate purpose is limited to services advertising and marketing, without legal capacity to manage the Instagram service. That function belongs to Meta Platforms, Inc. a company incorporated under the laws of the State of Delaware, with domicile at 1 Meta Way, Menlo Park, CA 94025, USA, whose condition of service administrator for Colombian users This is derived from the Terms of Use available at help.instagram.com/581066165581870: *"The Instagram Service is one of the Meta Products that Meta Platforms, Inc. provides to you. Therefore, these Terms of Use constitute an agreement between you and said company."*

He also alleged a breach of the principle of subsidiarity, since the withdrawal request has not been exhausted before the publisher, the claim to the platform, nor the demonstration of The constitutional relevance of the matter. He emphasized that the promoter He acknowledged in his statement that he had gone to other authorities, therefore There is an ordinary mechanism in place. He also noted the

any attributable to her client, as no fact narrated

The guardianship involves the conduct of FB Colombia.

The **Special Administrative Unit Migration Colombia –
UAEMC7** warned that its functions are limited to immigration control,
The surveillance of foreigners and other matters related to the State's
immigration policy are issues unrelated to the controversy.
raised.

After verifying the immigration status of the people
mentioned in the lawsuit, established that Joseph Anthony Camp
remains regularly in the country by means of a valid safe-conduct pass
to resolve his asylum claim, while Danesh Noshirvan does not
registers entry into the national territory. Under that understanding, he maintained
lack of participation in the events subject to the protection and
capacity to satisfy the claims made.

The **Criminal Investigation Directorate and INTERPOL8** requested his
disassociation from the procedure due to the lack of standing in the
passive cause. He stated that, through the Cyber Center
Police, provides technical and investigative support in related matters
with cyberspace and performs judicial police duties under the
coordination of the Attorney General's Office.

He stated that he does not have the authority to order the deletion,
suspension, or blocking of accounts on social networks, websites, or
material disseminated on the internet, determinations reserved to the
administrators of the respective digital services according to their
usage policies. He also indicated that the Virtual CAI is limited to providing
guidance to citizens and forwarding the applications received to
the people in charge of each platform.

Based on the above, he argued that the claims
The claims made by the plaintiff are outside his scope of action and

The **Prosecutor's Office Four Hundred and Five Delegate to the Courts Municipal Prisons of Bogotá9** reported that they were in charge of the news Criminal case No. 110016000050202653891, for alleged slander filed by Joseph Anthony Camp against Danesh Noshirvan. The matter was initially processed before the Conciliation Unit Pre-trial, where a hearing was convened but no one appeared of the defendant, regarding whom no information is available enough to establish his whereabouts.

He noted that the file was received on May 15, 2026 and is under study to evaluate the collected elements and adopt the relevant determinations; given the nature of the complaint and reconcilable of the reported conduct.

He maintained that there was no harm attributable to the prosecuting body, since the matter is progressing according to its current state and the burdens of work of the agency, and requested that the injunction be denied with respect to that authority.

The **National Police Cyber Center10** specified that its The function consists of providing guidance and support in the event of incidents. cybersecurity, but not ordering the removal of websites or accounts on digital platforms. He indicated that he could only manage and forward requests to the administrators, who decide on the withdrawal. suspension or blocking of content in accordance with their internal policies.

The **Ministry of Foreign Affairs – Chancellery11** explained that the events described are unrelated to the work of that department, focused on foreign policy, diplomatic relations and consular affairs, as well as the coordination of migration and immigration matters nationality. He indicated that the controversy concerns an alleged infringement of fundamental rights arising from publications

in the events described and pointed out the lack of a link between the claims made and the activities carried out by that wallet.

**Meta Platforms, Inc. Instagram** and **Substack, Inc.**[12]

Those duly notified remained silent.

### 4. Accused ruling of first instance.

In a ruling dated June 11, 2026[13], the *a-Quo* denied the protection constitutional, concluding that the requirement was not met subsidiarity, since it had to exercise the right of rectification directly in front of Danesh Noshirvan before resorting to this route, without any evidence of that action being in the file.

The exceptional origin of the amparo in matters of honor and A good name requires proof of that prior request to the author of the controversial information, budget that the firm did not find proven. For these reasons, he denied the claims and dismissed the entities and participants in the process.

### 5. Appeal.

The plaintiff appealed the verdict.[14] He argued that the court disregarded the evidence that proved the sending of petitions. direct orders for retraction, content removal, and cessation of publications addressed to Danesh Noshirvan, ignored requests and even answered in a derogatory manner, a circumstance which, in his opinion, It satisfied the prior budget required by jurisprudence constitutional.

The decision failed to assess evidence and statements through which the defendant himself acknowledged having received

social media posts, as budgets for examining

Despite the controversy, they were satisfied.

The ruling failed to analyze the impact on human dignity.

privacy, protection of personal data, psychological integrity

and personal safety, as well as the request for measures

provisional. He emphasized that the disputed dissemination remains in effect and

It causes harm that he described as irreparable.

## II. CONSIDERATIONS

The Court is competent to hear the matter according to the

regulated in canon 37 of Decree 2591 of 1991 in accordance

with Decrees 1069 of 2015 and 333 of 2021.

Regarding standing to sue, it must be stated

which is accredited, while Joseph Anthony Camp is a

US citizen with legal residency in Colombia

according to the report submitted by the Special Administrative Unit

Migration Colombia, acting on its own behalf as the holder of the

rights allegedly violated[15].

The passive legitimation in the case falls on Danesh

Noshirvan, a citizen who has no record of entering the national territory[16], in his capacity as author

and controller of the accounts @thatdaneshguy and ThatDanesh through which the was

disseminated

content questioned.

Meta Platforms, Inc., administrator of Facebook services

and Instagram, and Substack, Inc., entities with their principal place of business in the

United States of America[17], linked and duly notified

in a way that does not involve them in the process[18], they fulfill the role of

---

15 File No. 011ContestaciónMigraciónColombia.pdf, page 9.
16 File No. 011ReplyMigrationColombia, p. 9.

*the process of transmission and dissemination of content, but they do not take decisions about dissemination, that is, they provide access, accommodation, transmission and indexing of content, products and services, which are originate in third parties, a scenario where they facilitate freedom of expression; and (ii) [of an] active nature[,] insofar as they can adopt a data-driven business model"* 19.

The Court's jurisdiction to hear the present case and Issuing mandates to entities based abroad finds support in the most recent constitutional jurisprudence. The Court The Constitutional Court has specified that the Colombian legal system adopts a *moderate "country-of-destination"* model20 , according to which the national judges can assume jurisdiction over disputes linked to the digital environment when the events occurred in the cyberspace produces, generates certain and direct consequences in the Colombian territory.

Under that premise, he acknowledged that *"the two big rules on territorial jurisdiction refers to the place where the threat occurs or violation of the right, or to the place where this omission or violation has effects"* and although *"in the digital environment it is not always evident what was the place where the rights were violated or threatened fundamental"*, this does not deprive the constitutional judge of his competence when there are *"sufficient elements to consider that the conduct Meta produced effects mainly in Colombia"* 21.

In the *case under examination,* the material circulated in Colombia and was deployed here its consequences on the fundamental rights of the promoter, which satisfies the required territorial link. In addition, the The defendant himself appeared in the process by means of a written document response, remaining subject to national regulations.

_____

Joseph Anthony Camp satisfied the special procedural requirement enshrined in numeral 7 of article 42 of Decree 2591 of 1991, consisting of the prior request for rectification addressed directly to the sender of the questioned information. If that threshold is exceeded, It will address, **secondly,** the substantive examination, intended to determine whether the publications attributed to Danesh Noshirvan They violated the fundamental rights invoked. In that order, the The issues to be resolved are the following: **i)** The special requirement of procedural requirements: the prior request for rectification, **ii)** the rights fundamental issues in tension: freedom of expression versus honor, good name, privacy, protection of personal data and human dignity and **iii)** the specific case, nature of the expressions disseminated by Danesh Noshirvan and its impact on rights fundamentals of the plaintiff.

### i) The special procedural requirement: the prior application of rectification.

To resolve the matter, it must be clarified that *"the prior request of rectification as a procedural requirement for the exercise of the A protective action is required when the information that is alleged Inaccurate or erroneous information is disseminated through the media or from journalistic reports published on social media by people who act as journalists, or those who, without being professional communicators, are habitually engaged in broadcasting information"22.*

The Constitutional Court has classified that instrument as a "self-composed procedure *that the legal system has designed to serve as a safeguard mechanism for both rights to freedom of expression and information, since objection The information is presented directly to the media. communication, who may and should carry out the verifications and arguments regarding the truth and scope of the content for justify their reluctance or voluntarily agree to the rectification,*

*but you will be able to process it directly and expeditiously through the media of communication."* Consequently, *"only if the media refuse unjustifiably fail to rectify or do so while failing to meet the minimum requirements required for rectification, the constitutional protection turns out to be "previous"*23.

Ruling SU-420 of 2019 indicated that in conflicts between individuals arising from publications on social media, the protection This applies when the affected party has concurrently exhausted: *i)* the request for withdrawal or amendment to the individual who made the publication; *ii)* the complaint to the platform where it is located the publication is hosted, provided that their community rules enable it that possibility; and *iii)* the finding of constitutional relevance of matter 24.

In contrast, **i)** Joseph Anthony Camp referred to Danesh Noshirvan a formal request for retraction, withdrawal of the material harmful and cessation of defamatory disclosures on April 20, 2026, addressed to the email address thatdaneshguy@gmail.com25, ratified In his reply, 26 on April 24,27 and April 27, 2026,28 he reiterated the demand for the definitive elimination of the disclosures, publication of a rectification and deletion of their personal data; **ii)** reported the content in question through the channels provided by Instagram and Substack29 and **iii)** the imputations of conduct broadcast to an audience of six hundred and fifteen thousand followers30 They constitute a matter of unequivocal constitutional relevance.

---

23 CC Sentence T-688 of 2015, MPMyriam Ávila Roldán, consideration 2.6.2.
24 Constitutional Court. Judgment SU-420 of 2019. MP José Fernando Reyes Cuartas.
25 File No. 003 Written Guardianship
Annexes.pdf. https://drive.google.com/drive/folders/1nfY4U9OsolG3dvJo7i_9NolLhol_rRoX?us
p=sharing, Gmail - Formal request for retraction, removal of content and cessation of defamatory publications against Mr. JOSEPH ANTHONY CAMP
26 File No. 007ContestDaneshNoshirvan.pdf, page 1.
27 File No.003WrittenTutelaAnexos.pdf. Danesh Noshirvan Evidence - Google Drive. Gmail - retraction demand (part 2)
28 File No.003WrittenTutelaAnexos.pdf. Danesh Noshirvan Evidence - Google Drive. Gmail - Formal request for retraction, removal of content and cessation of defamatory publications against Mr. JOSEPH ANTHONY CAMP.

29 File No. 003EscritoTutelaAnexos.pdf. Instagram Report March 3, 2026. Substack Report March 3, 2026. https://drive.google.com/

*inaccurate or erroneous. In this case, the transcript must be attached.*

*the information or a copy of the publication and the requested correction*

*that was not published under conditions that ensure the effectiveness of the*

*same.*" In the present case, the plaintiff provided the recordings,

*screenshots* of the posts shared on Instagram and Substack

in English31, with reproduction of the original text in the footnotes of this

provision and free translation by the office

substantiator, content that remains accessible for verification

direct on the respective digital platforms32.

Therefore, the stated requirement has been met.
The action exceeds the threshold for admissibility for substantive examination.

**ii) Fundamental rights in tension: freedom of expression versus honor, good name, privacy, protection of personal data and human dignity**

Article 20 of the Political Constitution recognizes the guarantee of
every person to freely express and disseminate their thoughts and
opinions, to inform and receive truthful and impartial information, and that of
to establish mass media outlets, which are free and have
social responsibility. Constitutional jurisprudence has specified
that this right consists of: *(i) freedom of expression stricto*
*sensu; (ii) freedom of information, with its components of freedom*
*(iii) freedom of the press; (iv) the right to rectification under equitable conditions;*
*and (v) prohibitions on censorship33.*

In that context, the fundamental right to a good name enjoys
broad protection derived from the Political Constitution of
In Colombia, Article 15 recognizes that *"all persons have*
*right to personal and family privacy and to their good name"* and
expressly and categorically states that the State *"must*

_____

*They have the others and that it is configured as a right against detriment*

*that may be suffered as a result of **offensive expressions** or*

***defamatory** or **false or biased information***" 34 (emphasis added).

For its part, the right to honor is enshrined in canon 21

superior and, although it has been assimilated and equated to the guarantee of good

The Constitutional Court has defined the name *as "the estimation or*

*deference with which, by reason of their human dignity, each person*

*must be considered by the other members of the community that it*

*They know him and treat him well."* 35.

Regarding the material published on social media, the jurisprudence

The Constitutional Court has emphasized that *"the harmful intent,*

*Whether it is disproportionate or insulting will not depend on the assessment*

*subjective analysis of the affected person's statement, but rather an analysis*

*objective and neutral that is made of it and that yields as a result*

*the violation of the core of the rights to a good name already*

*honor. Consequently, what is published on social media is*

*protected by freedom of expression, but also subject to the*

*limits, so some publications are not included in the*

*protection indicated in Article 20 of the Charter, nor by the instruments*

*international agreements that enshrine it. Thus, a limit to freedom is activated.*

*of expression when what is disclosed is not identified with a purpose*

*legitimate constitutionality, it doesn't even contribute to a specific debate,*

*but simply carries a harmful or insulting intent with respect*

*of the fact that one wants to communicate"* 36.

The Constitutional Court, taking into account what was stated by the

The Spanish Constitutional Court has stated that *"the right to*

*Honor operates as an unavoidable limit to free expression, forbidden*

*How is it acceptable for someone to refer to a person in an insulting way?*

*defamatory, or unjustifiably damaging to their reputation,*

*diminishing its value in the eyes of others. Therefore, freedom of expression is not*

*It covers "formally offensive and unnecessary expressions for the*

Social networks, *"although privately managed, function as spaces open to the public where expressions circulate and activities of social and economic relevance"* so that *"this dual nature imposes the need to establish limits that ensure both business autonomy and the validity of the fundamental rights"* 38. In that context, the profession of influencer digital, the activity of someone who *"regularly shares content with a digital community"* constitutes *"an expression of the vocation, capabilities and desires of those who exercise it"* and, as such, enjoys constitutional protection *"provided that it does not disregard its own limits of the social rule of law and fundamental rights"* 39.

In the present matter, Danesh Noshirvan as creator of content, he disseminated through his Instagram account @thatdaneshguy, with six hundred and fifteen thousand followers and his profile ThatDanesh on Substack40, a digital publishing platform with three twelve hundred subscribers, a set of disclosures that the Court describe below.

**First,** on his Instagram account, he called it *"child predator"*, he described him as *"apparently a criminal "Reported sexual assault according to Belizean media,"* described him as *"a white supremacist who attacks women and children with sexual assault in exchange for money"* and publicly accused him of being a *"rapist"* 41. The existence of Episode 8 of podcast *"Tears of a rapist - stalker Joey Camp"42.*

---

37 Constitutional Court, Judgment T-050 of 2016 MP Gabriel Eduardo Mendoza Martelo. Taken from Judgment T-550 of 2012, which in turn cited Judgment 49 of February 26, 2001 of the Second Chamber of the Spanish Constitutional Court.
38 Constitutional Court, Judgment T-256 of 2025. MP Natalia Ángel Cabo.
39 Ibidem.
40 The investigating office conducted a search on Instagram and Substack with the domain @thatdaneshguy on June 23, 2026.
41 File No. 003WrittenTutelaAnexos.pdf, page. 11 to 13. Screenshots of Instagram posts. Original texts: *"Child stalker Joey Camp"; "apparently a registered sex offender according to Belizean media"; "a white supremacist who targets women and children with sexual assault for a fee"; "Real Rapist"..*

*audience to share their podcast in Bogota so that the whole city "Know who he is and so that the children of Colombia can be safe."* 43.

**Third,** the unauthorized disclosure of personal data through various digital platforms: their geographic location in Colombia, your email address, your legal status and your immigration status, information disseminated without your consent with the with the purpose of publicly exposing him and facilitating acts of harassment by third parties44.

None of the criminal charges referred to It finds support in a judicial decision presented to the plenary session. The very The defendant acknowledged, in his reply, that the elements The questions raised correspond to *"references to accusations, reports or publications made by third parties"* 45, an admission that demonstrates the absence of prior judicial verification of the information disseminated and rules out any diligent exercise of the right to inform.

**iii) The specific case: Nature of the disseminated expressions and its impact on the fundamental rights of the plaintiff.**

To determine whether the described expressions fall within the legitimate exercise of freedom of expression, the Court resorts to the structural distinction that constitutional jurisprudence has drawn between opinions, subjective expressions not susceptible to proof of truth, widely protected, and factual statements, imputations of verifiable behaviors or conditions in reality, subject to duty of truthfulness.      There is also a third category that the The legal system does not protect any form of freedom of expression: formally offensive expressions or criminal accusations without evidentiary support, against which the constitutional remedy It is not rectification but the cessation and elimination of the content, because

43 File No. 019ImpugnaciónTutela.pdf, fourth scope, page, 65. Original text: *«Share my podcast in*

An opinion *"is a value judgment about something or someone, and its Materialization necessarily implies thought or elaboration of ideas based on a series of external stimuli"* 46. Freedom of opinion *"lies in the possibility that any person has to divulge their opinions by any means and not be bothered because of them"* and has been defined as *"the possibility of communicating to others the own thought, therefore it can be said that this right coincides Regarding its object with freedom of expression."* Under that premise, The Constitutional Court has indicated that this guarantee *"seeks to protect those forms of communication in which the expression of the subjectivity of the sender, that is, their values, feelings and personal opinions about certain facts, situations or people,"* recognizing that demonstrations are an integral part of the essential core of freedom of expression in a State democratic"47.

Within that framework, the accusations of *"Child Stalker"*, *"registered sex offender"*, *"white supremacist who targets women and children with "Sexual assault for a fee"* and *"Real Rapist"* are not opinions, they are factual statements of a criminal nature presented before a massive audience, without any judicial decision being recorded in the plenary session that supports them. Diffuse capacity aggravates the injury.

Under those circumstances, the Court concludes that the The publications in question exceeded the limits constitutional rights to freedom of expression and entailed a unlawful infringement of the fundamental rights to a good name, The honor and human dignity of Joseph Anthony Camp. It is necessary that the opinions and criticisms of the defendant about the plaintiff remain within the scope of constitutional protection; what The protection sought is solely the attribution of conduct specific criminal acts without any judicial backing.

origins and their recipients.Case 2:25-cv-00833-KCD-NPM   Document 103   Filed 07/22/26   Page 39 of 41 PageID 2325

The defendant has no record of entering the national territory[48]. That This circumstance does not deprive the constitutional judge of competence nor excludes the possibility of issuing cease and desist orders, in accordance with principle of territoriality applied to cyberspace, *"when the threat or violation of fundamental rights occurs in the*

*cyberspace, the judge of protection will have jurisdiction to rule on whether This threat or violation produces relevant effects on*

*Colombia" [49].* The content in question circulated in this country and here this had consequences for the plaintiff's rights; therefore

In addition, the defendant himself appeared and responded to the action, thereby subjecting themselves to national jurisdiction.

The protection orders primarily concern Meta Platforms Inc. as administrator of the Instagram social network and Substack Inc., platforms on which the harmful material is hosted, in both the digital intermediaries, once made aware of a violation of fundamental rights, they acquire a position of guarantor that enables them as passive subjects of orders Constitutional retirement rights. In recent jurisprudence from the Civil Chamber, The Agrarian and Rural Chamber of the Supreme Court of Justice reiterated that *"[W]hen The moderation of online content and platforms is being examined. Digital platforms not only can, but must restrict the circulation of messages that constitute prohibited or unprotected speech—such as incitement to hatred, violence, or the commission of crimes—and the removal of Such publications do not constitute undue censorship, but rather a a necessary measure to guarantee a safe and compliant digital environment with national and international parameters regarding freedom of expression, since the permanence of the message on the internet perpetuates and amplifies the violation"[50].*

_____

and the human dignity of Joseph Anthony Camp, in accordance with exposed.

## III. DECISION

In light of the foregoing, the **FOURTH DECISION CHAMBER CIVIL COURT OF THE SUPERIOR COURT OF THE JUDICIAL DISTRICT OF BOGOTA,** administering justice in the name of the Republic of Colombia and by authority of law,

### RESOLVE

**FIRST: TO REVOKE** the protection order issued on the 11th June 2026 by the Third Civil Court of the Circuit of Bogotá, by the reasons stated.

**SECOND:** Instead, **PROTECT** fundamental rights to the honor, good name and human dignity of **Joseph Anthony Camp,** in accordance with the reasons set forth in the grounds of this providence.

**THIRD: ORDER** Meta Platforms Inc. in its capacity as administrator of the social networks Instagram and Substack that in the Within forty-eight (48) hours following notification of this sentence, remove from the account @thatdaneshguy - https://www.instagram.com/thatdaneshguy and from the ThatDanesh profile https://substack.com/@thatdaneshguy, the publications that contain the expressions *"Child Stalker", "registered sex offender according to Belizean media", "white supremacist who targets women and children with sexual assault for a fee"* and *"Real Rapist",* referring to the plaintiff Joseph Anthony Camp, as well as any other content that accuses him of committing criminal acts without supporting evidence in judicial decision.

**FIFTH: SEND** a copy of the judgment to the Court of origin, for all relevant purposes.

**SIXTH: NOTIFY** all interested parties of this decision, by the quickest and most effective means.

**SEVENTH: SEND** the proceedings to the Constitutional Court for its eventual review.

**NOTIFY AND COMPLY.**

**FLOR MARGOTH GONZÁLEZ FLÓREZ**
**Magistrate**

**JOSE ALFONSO ISAZA DAVILA**
**Magistrate**

**MARTHA ISABEL GARCÍA SERRANO**
**Magistrate**

Signed By:

Flor Margoth Gonzalez Florez,
Magistrate,
Civil
Chamber, Superior Court of Bogotá, DC - Bogotá DC

Jose Alfonso Isaza Davila
Magistrate, Court, or Sectional Council
Civil Room 018
Superior Court of Bogotá, DC - Bogotá DC,

Martha Isabel Garcia Serrano
Magistrate
Room 021 Civil
Superior Court of Bogotá, DC - Bogotá DC,

This document was generated with an electronic signature and has full legal validity, in accordance with the provisions of Law 527/99 and regulatory decree 2364/12

Verification code: