AUG 12 2026 PM1:59
FILED - USDC - FLMD - FTM

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD LUTHMANN,

Plaintiff,

Case No. 2:25-cv-00337-KCD-NPM

v.

DANESH NOSHIRVAN,

Defendant.

\-------------------------------------------------------/

**DECLARATION OF RICHARD A. LUTHMANN, JR. IN SUPPORT OF PLAINTIFF'S MOTION**

I, Richard Luthmann, declare as follows:

1. I am the Plaintiff in this action and proceed pro se. I make this declaration from personal knowledge and could testify competently to these facts.

2. I am also known as Richard A. Luthmann, Jr. There are other persons named Richard Luthmann around the world, and in particular, residing in the State of Florida, so I make this statement to avoid confusion.

3. On September 17, 2025, I joined Defendant in requesting a temporary stay to pursue settlement. No settlement agreement was reached. To my knowledge, no further settlement conference is presently scheduled.

4. The Court's September 18, 2025 order stated that the stay would be lifted if settlement impassed. (Doc. 88.) Settlement did impasse. The stay has nevertheless remained in place for approximately eleven months, without a date certain for its termination.

5. On April 3, 2026, I moved to lift the stay. The Court denied that motion without prejudice on April 9, 2026, for failure to complete the substantive conference required by Local Rule 3.01(g). (Docs. 98–99.)

6. On July 22, 2026, I filed the Notice of Supplemental Authority docketed as Doc. 103. **Exhibit A** is a true and correct filed-stamped copy of that notice, the Spanish-language Colombian Judgment, and the certified English translation. The judgment identifies the issuing tribunal, filing number, panel, and electronic signatures. I do not claim personal knowledge of the tribunal's underlying factfinding beyond what the judgment states.

7. **Exhibit B** is a true and correct copy of the impugnación compilation in my possession. At pages 38–39, it reproduces Defendant's May 29, 2026, email to the Bogotá Third Civil Circuit Court. Defendant addressed the merits, denied violating Camp's rights, defended the challenged statements as opinion, satire, rhetoric, or third-party reporting, offered further context, attached five exhibits, and requested denial of the action. His submission neither states that he appeared specially nor reserves a jurisdictional objection; rather, it requests affirmative relief on the merits.

8. On August 7, 2026, I participated in a substantive telephone conference with Nicholas A. Chiappetta under Local Rule 3.01(g).

9. During the conference, Mr. Chiappetta opposed judicial notice or persuasive consideration of the Colombian materials. He stated that he did not believe Defendant had participated in any proceeding outside the United States and rejected the proposition that a foreign tribunal had jurisdiction over Defendant.

10. Mr. Chiappetta also opposed lifting the stay. He cited his trial schedule and the anticipated course of Case No. 2:23-cv-01218. He acknowledged that this case ultimately would have to be reopened but preferred that it remain stayed for the time being.

11. Mr. Chiappetta stated that he would be on trial from August 24 through August 28, 2026 and requested additional response time. I agreed that Defendant may respond to the present motion by September 10, 2026. I remain willing to accommodate reasonable scheduling needs without leaving the entire case indefinitely stayed.

12. This action remains at the threshold-motion and pleading stages. Defendant has not answered; the pleadings are not closed; discovery has not begun; and no operative schedule is moving the case toward resolution. The claims concern online publications, social media accounts, electronic communications, platform records, and alleged ongoing injuries. Continued delay threatens preservation of electronic evidence, third-party records, and witness recollections, while lifting the stay will not require immediate trial preparation.

13. On August 10, 2026, a major earthquake struck western Colombia. In light of the active rescue-and-recovery emergency, I have deferred imposing immediate additional certification demands on Colombian governmental personnel. I intend to supplement the record with further government-issued certification when it becomes reasonably obtainable after the acute emergency.

14. I request that the Court accept the attached judgment, certified translation, impugnación materials, and Defendant's own Colombian merits submission as sufficient for the limited purposes described in the motion, without prejudice to later supplementation, and lift the stay so this case can proceed through threshold matters, responsive pleading, evidence preservation, discovery, and case management.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. See 28 U.S.C. § 1746(2).

Executed on August 11, 2026, in Naples, Florida.

Respectfully submitted,

RICHARD LUTHMANN
a/k/a RICHARD A. LUTHMANN, JR.
Plaintiff, Pro Se
4199 Los Altos Court
Naples, Florida 34109
Telephone: (239) 631-5957
Email: richard.luthmann@protonmail.com

EXHIBIT
A

FILED - USDC - FLMD - FTM
JUL 22 2026 PM3:29

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

---

RICHARD LUTHMANN,

Plaintiff,

v.

DANESH NOSHIRVAN,

Defendant.

---

Case No. 2:25-cv-337-KCD-NPM

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

# PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Richard A. Luthmann, Jr., pursuant to Local Rule 3.01(j), files this Notice of Supplemental Authority.

The Court's attention is respectfully directed to the following supplemental authority issued after the filing of Plaintiff's pending motion(s):

*Joseph Anthony Camp v. Danesh Noshirvan*, Tribunal Superior del Distrito Judicial de Bogotá, Sala Cuarta de Decisión Civil, Radicación No. 11001310300320260029301 (July 2, 2026). The original decision is attached as **Exhibit A**. A certified English translation is attached as **Exhibit B**.

This authority supplements Plaintiff's discussion concerning Defendant's characterization of statements published through the Instagram account @thatdaneshguy and the Substack publication ThatDaneshGuy, and the distinction between constitutionally protected opinion and unsupported factual accusations of criminal conduct.

The following portions of the Colombian appellate decision are particularly pertinent:

> "The accusations of 'Child Stalker,' 'registered sex offender,' 'white supremacist who targets women and children with sexual assault for a fee,' and 'Real Rapist' are not opinions; they are factual statements of a criminal nature presented before a massive audience, without any judicial decision supporting them."

The appellate court further ordered:

> Meta Platforms Inc. and Substack shall remove the identified publications and any other content imputing criminal conduct to Joseph Anthony Camp without support in a judicial decision, and Danesh Noshirvan shall refrain from publishing future content imputing criminal conduct to Joseph Anthony Camp without judicial support.

This supplemental authority also notes the participation of Plaintiff Richard A. Luthmann, Jr., as an interested third party who alleged similar conduct directed toward him by Defendant.

Dated: Pigeon Forge, Tennessee
July 20, 2026

Respectfully submitted,

Richard Luthmann
Plaintiff, Pro Se
4199 Los Altos Court
Naples, FL 34109
(239) 631-5957
richard.luthmann@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I served a true and correct copy of the enclosed upon Defendant Danesh Noshirvan and his counsel of record by filing the same with the Clerk of Court of the Middle District of Florida, Fort Myers Division, by mailing the same to the Fort Myers federal courthouse is 2110 First Street, Fort Myers, FL 33901, and then Clerk of the Court then by legal requirement uploaded the same to the Court's CM/ECF system, thus accomplishing proper delivery of the enclosed papers.

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 20, 2026

Richard Luthmann
Plaintiff, Pro Se

Case 2:25-cv-00337-KCD-NPM Document 103 Filed 07/22/25 Page 4 of 41 PageID 2290

**TRIBUNAL SUPERIOR DEL DISTRITO JUDICIAL DE BOGOTÁ**
**SALA CUARTA DE DECISIÓN CIVIL**

EXHIBIT
A

**FLOR MARGOTH GONZÁLEZ FLÓREZ**
Magistrada Ponente

Radicación No. 11001310300320260029301

Discutido y Aprobado en Sala de Decisión del veinticuatro (24) de junio y 2 (02) de julio de dos mil veintiséis (2026). Actas No. 24 y 25.

**Bogotá D.C., dos (02) de julio de dos mil veintiséis (2026).**

Resuelve la Sala la impugnación formulada por Joseph Anthony Camp contra el fallo de primera instancia dictado por el Juzgado Tercero Civil del Circuito de Bogotá el 11 de junio de 2026, dentro de la acción de tutela promovida por el impugnante en contra de Danesh Noshirvan, con miras a lograr la protección de sus derechos fundamentales al buen nombre, honra, protección de datos personales, intimidad y dignidad humana.

## I. ANTECEDENTES

**1. Pretensiones**[1]: Ordenar al accionado: i) eliminar de manera definitiva las publicaciones difundidas a través de Instagram (*@thatdaneshguy*) y Substack (*ThatDanesh*) *que contengan* expresiones presuntamente injuriosas, calumniosas o difamatorias en contra del accionante, ii) publicar una rectificación en condiciones equivalentes a las de los contenidos cuestionados, iii) abstenerse de realizar nuevas manifestaciones de similar naturaleza y iv) suprimir cualquier dato personal relacionado con su ubicación, situación legal, correo electrónico u otra información privada.

campaña sistemática de difamación, injuria, calumnia y hostigamiento digital desplegada por Danesh Noshirvan a través de la cuenta de Instagram @thatdaneshguy y del perfil ThatDanesh en Substack. Sostuvo que el accionado lo presenta públicamente como *"Child stalker"*, *"registered sex offender"*, *"white supremacist"*, *"Real Rapist"* y una persona que ataca a mujeres y menores con fines sexuales, además de difundir expresiones orientadas a desacreditarlo, ridiculizarlo y asociarlo con conductas delictivas de extrema gravedad.

El contenido ha alcanzado una amplia difusión en redes sociales, generando repercusiones negativas sobre su honra, buen nombre, intimidad, entorno personal y actividad profesional. Danesh Noshirvan, remitió comunicaciones a autoridades colombianas atribuyéndole delitos como amenazas, hostigamiento, constreñimiento ilegal, acceso abusivo a sistemas informáticos y pornografía con menores de edad, actuación que calificó como una forma de persecución y estigmatización.

También señaló la divulgación no autorizada de información relacionada con su ubicación, correo electrónico y situación migratoria, hecho que, a su juicio, incrementó los riesgos para su seguridad. La gravedad de esos acontecimientos lo llevó a solicitar el reconocimiento de la condición de refugiado ante el Estado Colombiano, además de formular denuncia penal ante la Fiscalía General de la Nación y acudir a los mecanismos de reporte de las plataformas digitales, sin lograr el retiro del material cuestionado.

Finalmente, sostuvo que las publicaciones permanecen disponibles al público, prolongando el deterioro de su reputación y la vulneración de sus derechos fundamentales.

La acción fue conocida en primera instancia por el Juzgado Tercero Civil del Circuito de Bogotá. Su admisión data del 28 de mayo de 2026[3], decisión en la cual ordenó la notificación del convocado, y la vinculación de Meta Platforms, Inc. Instagram, Substack Inc., la Policía Nacional de Colombia, la Fiscalía 588 Local de Bogotá, el Ministerio de Relaciones Exteriores - Cancillería de Colombia, la Unidad Administrativa Especial de Migración Colombia y a la Embajada de Estados Unidos en Colombia, para que se pronuncien respecto de los hechos del escrito inicial.

**Danesh Noshirvan**[4] sostuvo que sus publicaciones se enmarcan en el ejercicio de la libertad de expresión y versan sobre asuntos de interés público relacionados con una persona objeto de controversias, reportajes y debates en distintos escenarios. Los contenidos cuestionados corresponden a opiniones, críticas, sátiras, hipérboles retóricas o referencias a información difundida por terceros, sin presentarlas como hechos acreditados por conocimiento personal.

Las medidas solicitadas implican restricciones incompatibles con la libertad de expresión, al pretender la eliminación de contenido, la prohibición de futuras manifestaciones y la imposición de retractaciones. Señaló igualmente la existencia de otros mecanismos de defensa utilizados por el promotor, entre ellos denuncias penales y reportes ante plataformas digitales, circunstancia que, a su juicio, excluye la procedencia del amparo. Descartó cualquier propósito de causar un perjuicio, aseguró actuar con fundamento en información de acceso público y manifestó su disposición a aportar las fuentes utilizadas; en consecuencia, pidió desestimar las pretensiones. Adicionalmente, afirmó ser objeto de hostigamiento por parte de Joseph Anthony Camp mediante el envío reiterado de correos electrónicos, para lo cual allegó capturas de pantalla y documentación de respaldo.

en la tutela y sostuvo que Danesh Noshirvan ha utilizado redes sociales para difundir acusaciones falsas, promover persecución y afectar la reputación de diversas personas, entre ellas periodistas, profesionales y particulares.

Indicó ser señalado públicamente como *"pedophile"*, *"child predator"* y *"child stalker"*, imputaciones rechazadas por carecer de sustento. A su juicio, la libertad de expresión no ampara atribuciones delictivas falsas, "*doxxing*" divulgación de información privada ni campañas de acoso digital. En esas condiciones, solicitó tener en cuenta la existencia de un presunto patrón de conducta, reconocer su intervención dentro del trámite y adoptar medidas orientadas a prevenir nuevas afectaciones contra las personas señaladas por el accionado.

**Facebook Colombia S.A.S.**[6] sostuvo que carece de legitimación en la causa por pasiva, puesto que su objeto social se limita a servicios de publicidad y mercadeo, sin capacidad legal para administrar el servicio de Instagram. Esa función corresponde a Meta Platforms, Inc., sociedad constituida bajo las leyes del Estado de Delaware, con domicilio en 1 Meta Way, Menlo Park, CA 94025, EE. UU., cuya condición de administradora del servicio para usuarios colombianos se desprende de las Condiciones de Uso disponibles en help.instagram.com/581066165581870: *"El Servicio de Instagram es uno de los Productos de Meta que Meta Platforms, Inc. te proporciona. Por lo tanto, estas Condiciones de uso constituyen un acuerdo entre tú y dicha empresa"*.

Alegó igualmente el incumplimiento del principio de subsidiariedad, al no haberse agotado la solicitud de retiro ante el publicador, la reclamación ante la plataforma ni la demostración de relevancia constitucional del asunto. Destacó que el promotor reconoció en su escrito haber acudido a otras autoridades, con lo cual existe un mecanismo ordinario en curso. Señaló también la

alguna atribuible a su representada, en tanto ningún hecho narrado en la tutela involucra conducta de FB Colombia.

La **Unidad Administrativa Especial Migración Colombia – UAEMC**[7] *advirtió que sus funciones se limitan al control migratorio*, la vigilancia de extranjeros y demás asuntos relacionados con la política migratoria del Estado, materias ajenas a la controversia planteada.

Tras verificar la situación migratoria de las personas mencionadas en la demanda, estableció que Joseph Anthony Camp permanece regularmente en el país mediante salvoconducto vigente para resolver su solicitud de refugio, en tanto Danesh Noshirvan no registra ingreso al territorio nacional. Bajo ese entendido, sostuvo carecer de participación en los hechos objeto del amparo y de capacidad para satisfacer las pretensiones formuladas.

La **Dirección de Investigación Criminal e INTERPOL**[8] pidió su desvinculación del trámite al considerar inexistente legitimación en la causa por pasiva. Expuso que, por conducto del Centro Cibernético Policial, presta apoyo técnico e investigativo en asuntos relacionados con el ciberespacio y ejerce labores de policía judicial bajo la coordinación de la Fiscalía General de la Nación.

Manifestó que no tiene atribuciones para ordenar la eliminación, suspensión o bloqueo de cuentas en redes sociales, páginas web o material difundido en internet, determinaciones reservadas a los administradores de los respectivos servicios digitales conforme a sus políticas de uso. Indicó, además, que el CAI Virtual se limita a brindar orientación a los ciudadanos y a trasladar las solicitudes recibidas a los responsables de cada plataforma.

Con base en lo anterior, sostuvo que las reclamaciones formuladas por el accionante son ajenas a su ámbito de actuación y

La **Fiscalía Cuatrocientos Cinco Delegado ante Juzgados Penales Municipales de Bogotá**[9] informó tener a su cargo la noticia criminal No. 110016000050202653891, por presunta calumnia presentada por Joseph Anthony Camp contra Danesh Noshirvan. El asunto fue tramitado inicialmente ante la Unidad de Conciliación Preprocesal, donde se convocó a audiencia sin lograr la comparecencia del querellado, respecto de quien no se dispone de información suficiente para establecer su paradero.

Señaló que el expediente fue recibido el 15 de mayo de 2026 y se encuentra en estudio para evaluar los elementos recaudados y adoptar las determinaciones pertinentes; dada la naturaleza querellable y conciliable de la conducta denunciada.

Sostuvo la inexistencia de afectación atribuible al ente acusador, puesto que el asunto avanza conforme a su estado y a las cargas de trabajo de la dependencia, y solicitó negar el amparo respecto de esa autoridad.

El **Centro Cibernético de la Policía Nacional**[10] precisó que su función consiste en brindar orientación y atención frente a incidentes cibernéticos, mas no en ordenar la eliminación de sitios web o cuentas en plataformas digitales. Señaló poder únicamente gestionar y remitir solicitudes a los administradores, quienes deciden sobre el retiro, suspensión o bloqueo del contenido conforme a sus políticas internas.

El **Ministerio de Relaciones Exteriores – Cancillería**[11] expuso que los hechos relatados son ajenos a las labores de esa cartera, orientadas a la política exterior, las relaciones diplomáticas y consulares, así como a la coordinación de asuntos migratorios y de nacionalidad. Indicó que la controversia versa sobre una presunta afectación de derechos fundamentales derivada de publicaciones

en los acontecimientos descritos y señaló la inexistencia de vínculo entre las reclamaciones formuladas y las actividades desarrolladas por esa cartera.

**Meta Platforms, Inc. Instagram** y **Substack, Inc.**[12] debidamente notificados guardaron silencio.

**4. Fallo acusado de primera instancia.**

En sentencia del 11 de junio de 2026[13], la *a-Quo* negó el amparo constitucional, al concluir que no se satisfizo el requisito de subsidiariedad, pues debía ejercer el derecho de rectificación directamente frente a Danesh Noshirvan antes de acudir a esta vía, sin que obrara en el expediente prueba de esa gestión.

La procedencia excepcional del amparo en materia de honra y buen nombre exige acreditar esa solicitud previa ante el autor de la información controvertida, presupuesto que el despacho no encontró demostrado. Por esas razones, negó las pretensiones y desvinculó a las entidades e intervinientes del trámite.

**5. Impugnación.**

El accionante apeló el veredicto[14]. Sostuvo que el juzgado desconoció el material probatorio que acreditaba el envío de peticiones directas de retractación, retiro de contenido y cese de publicaciones dirigidas a Danesh Noshirvan, requerimientos desatendidos e incluso respondidos de forma despectiva, circunstancia que, a su juicio, satisfacía el presupuesto previo exigido por la jurisprudencia constitucional.

La decisión omitió valorar pruebas y manifestaciones mediante las cuales el propio accionado reconoció haber recibido esas

publicaciones en redes sociales, pues los presupuestos para examinar de fondo la controversia se encontraban satisfechos.

El fallo dejó sin análisis las afectaciones a la dignidad humana, la *intimidad*, la *protección de datos personales*, la *integridad psíquica* y la seguridad personal, así como la solicitud de medidas provisionales. Destacó que la difusión cuestionada continúa vigente y genera un perjuicio que calificó como irremediable.

## II. CONSIDERACIONES

La Sala es competente para conocer del asunto de acuerdo a lo normado en el canon 37 del Decreto 2591 de 1991 en concordancia con los Decretos 1069 de 2015 y 333 de 2021.

De cara a la legitimación en la causa por activa habrá de decirse que se encuentra acreditada, en tanto Joseph Anthony Camp es un ciudadano estadounidense con permanencia regular en Colombia según el informe rendido por la Unidad Administrativa Especial Migración Colombia, quien actúa en nombre propio como titular de los derechos presuntamente vulnerados[15].

La legitimación en la causa por pasiva recae sobre Danesh Noshirvan, ciudadano que no registra ingreso en el territorio nacional[16], en su condición de autor y controlador de las cuentas @thatdaneshguy y ThatDanesh a través de las cuales se difundió el contenido cuestionado.

Meta Platforms, Inc., administradora de los servicios de Facebook e Instagram, y Substack, Inc., entidades con domicilio principal en los Estados Unidos de América[17], vinculadas y notificadas en debida forma sin que intervinieran en el proceso[18], cumplen el rol de



[15] Archivo No. 011ContestaciónMigraciónColombia.pdf, pág. 9.
[16] Archivo No. 011ContestaciónMigraciónColombia, pág. 9.

*el proceso de transmisión y difusión de un contenido[,] más no toman decisiones sobre la difusión, es decir, dan acceso, alojamiento, transmisión e indexación a contenidos, productos y servicios, que se originan en terceros, escenario donde facilitan la libertad de expresión; y (ii) [de carácter] activo[,] en la medida en que pueden adoptar un modelo de negocios basado en datos"*[19].

La competencia del Tribunal para conocer del presente asunto e impartir mandatos a entidades radicadas en el exterior halla sustento en la jurisprudencia constitucional más reciente. La Corte Constitucional ha precisado que el ordenamiento colombiano adopta un modelo de "*país-de-destino*" *moderado*[20], conforme al cual los jueces nacionales pueden asumir conocimiento de controversias vinculadas al entorno digital cuando los hechos ocurridos en el ciberespacio producen, generan consecuencias ciertas y directas en el territorio colombiano.

Bajo esa premisa, ha reconocido que *"las dos grandes reglas sobre competencia territorial se refieren al lugar donde ocurre la amenaza o vulneración del derecho, o al lugar donde esta omisión o violación tiene efectos"* y aunque *"en el entorno digital no siempre es evidente cuál fue el lugar donde se vulneraron o amenazaron los derechos fundamentales"*, ello no priva al juez constitucional de su competencia cuando obren *"suficientes elementos para considerar que la conducta de Meta produjo efectos principalmente en Colombia"*[21].

En el *sub examine*, el material circuló en Colombia y desplegó aquí sus consecuencias sobre los derechos fundamentales del promotor, lo que satisface el vínculo territorial requerido. A ello se suma que el propio accionado compareció al proceso mediante escrito de contestación, quedando sujeto a las normas nacionales.

Joseph Anthony Camp satisfizo el requisito especial de procedibilidad consagrado en el numeral 7 del artículo 42 del Decreto 2591 de 1991, consistente en la solicitud previa de rectificación dirigida directamente al emisor de la información cuestionada. De superarse ese umbral, se abordará, ***en segundo término***, el examen de fondo, destinado a determinar si las publicaciones atribuidas a Danesh Noshirvan vulneraron los derechos fundamentales invocados. En ese orden, las temáticas a resolver son las siguientes: ***i)*** El requisito especial de procedibilidad: la solicitud previa de rectificación, ***ii)*** los derechos fundamentales en tensión: la libertad de expresión frente a la honra, el buen nombre, la intimidad, la protección de datos personales y la dignidad humana y ***iii)*** el caso concreto, naturaleza de las expresiones difundidas por Danesh Noshirvan y su incidencia sobre los derechos fundamentales del accionante.

***i) El requisito especial de procedibilidad: la solicitud previa de rectificación.***

Para desatar el asunto debe precisarse que "*la solicitud previa de rectificación como requisito de procedibilidad para el ejercicio de la acción de tutela es exigible cuando la información que se predica inexacta o errónea es divulgada a través de los medios de comunicación o de informes periodísticos publicados en redes sociales por personas que actúan en calidad de periodistas, o quienes sin ser comunicadores de profesión se dedican habitualmente a emitir información*"[22].

La Corte Constitucional ha calificado ese instrumento como un procedimiento "*autocompositivo que el ordenamiento jurídico ha dispuesto para servir como mecanismo de salvaguarda tanto de los derechos a la libertad de expresión e información, pues la objeción frente a la información se presenta directamente al medio de comunicación, quien podrá y deberá hacer las verificaciones y argumentaciones en torno a la verdad y alcance del contenido para justificar su renuencia o acceder de manera voluntaria a la rectificación,*

*sino que podrá tramitarla de manera directa y expedita ante el medio de comunicación*". En consecuencia, "*solo si los medios se niegan injustificadamente a rectificar o lo hacen incumpliendo los mínimos exigibles para la rectificación, el amparo constitucional resulta ser procedente*"[23].

La Sentencia SU-420 de 2019, indicó que en conflictos entre particulares derivados de publicaciones en redes sociales, el amparo procede cuando el afectado ha agotado concurrentemente: ***i)*** la solicitud de retiro o enmienda ante el particular que hizo la publicación; ***ii)*** la reclamación ante la plataforma donde se encuentra alojada la publicación, siempre que sus reglas de comunidad habiliten esa posibilidad; y ***iii)*** la constatación de la relevancia constitucional del asunto[24].

Frente a ellos, **i)** Joseph Anthony Camp, remitió a Danesh Noshirvan una solicitud formal de retractación, retiro del material lesivo y cese de las divulgaciones difamatorias el 20 de abril de 2026, dirigida al correo electrónico thatdaneshguy@gmail.com[25], ratificada en su contestación[26], el 24 de abril[27] y el 27 de abril de 2026[28], reiteró la exigencia de eliminación definitiva de las divulgaciones, publicación de una rectificación y supresión de sus datos personales; **ii)** reportó los contenidos cuestionados a través de los canales dispuestos por Instagram y Substack[29] y **iii)** las imputaciones de conductas difundidas ante una audiencia de seiscientos quince mil seguidores[30] configuran un asunto de inequívoca relevancia constitucional.

---

[23] C.C. Sentencia T-688 de 2015, M.P.Myriam Ávila Roldán, consideración 2.6.2.
[24] Corte Constitucional. Sentencia SU-420 de 2019. M.P. José Fernando Reyes Cuartas.
[25] Archivo No.003EscritoTutelaAnexos.pdf. https://drive.google.com/drive/folders/1nfY4U9OsoIG3dvJo7i_9NolLhoI_rRoX?usp=sharing, Gmail - Formal request for retraction, removal of content and cessation of defamatory publications against Mr. JOSEPH ANTHONY CAMP
[26] Archivo No. 007ContestaciónDaneshNoshirvan.pdf, pag. 1.
[27] Archivo No.003EscritoTutelaAnexos.pdf. Danesh Noshirvan Evidence - Google Drive. Gmail - retraction demand (part 2)
[28] Archivo No.003EscritoTutelaAnexos.pdf. Danesh Noshirvan Evidence - Google Drive. Gmail - Formal request for retraction, removal of content and cessation of defamatory publications against Mr. JOSEPH ANTHONY CAMP.
[29] Archivo No.003EscritoTutelaAnexos.pdf. Reporte Instagram 3 de marzo de 2026. Reporte

*inexactas o erróneas. En este caso se deberá anexar la transcripción de la información o la copia de la publicación y de la rectificación solicitada que no fue publicada en condiciones que aseguren la eficacia de la misma".* En el presente asunto, el accionante aportó las grabaciones, *screenshots* de las publicaciones difundidas en Instagram y Substack en idioma ingles[31], con reproducción del texto original en las notas al pie de esta providencia y traducción libre a cargo del despacho sustanciador, contenido que permanece accesible para verificación directa en las respectivas plataformas digitales[32].

En consecuencia, el requisito anotado se encuentra acreditado, la acción supera el umbral de procedibilidad para el examen de fondo.

***ii) Los derechos fundamentales en tensión: la libertad de expresión frente a la honra, el buen nombre, la intimidad, la protección de datos personales y la dignidad humana***

El artículo 20 de la Constitución Política, reconoce la garantía de toda persona para expresar y difundir libremente su pensamiento y opiniones, informar y recibir información veraz e imparcial, y la de fundar medios masivos de comunicación, los cuales son libres y tienen responsabilidad social. La jurisprudencia constitucional ha precisado que ese derecho se compone por: *(i) la libertad de expresión stricto sensu; (ii) la libertad de información, con sus componentes de libertad de búsqueda, acceso, difusión y recepción de información veraz e imparcial; (iii) la libertad de prensa; (iv) el derecho a la rectificación en condiciones de equidad; y (v) las prohibiciones de censura*[33].

En ese marco, el derecho fundamental al buen nombre goza de una amplia protección derivada de la Constitución Política de Colombia, el artículo 15 reconoce que "*todas las personas tienen derecho a la intimidad personal y familiar y a su buen nombre*" y consagra expresamente y de forma categórica que el Estado "*debe*



---

*tienen los demás y que se configura como derecho frente al detrimento que pueda sufrir como producto de* ***expresiones ofensivas*** *o* ***injuriosas*** *o* ***informaciones falsas o tendenciosas***"[34] (se destaca). Por su parte, el derecho a la honra está consagrado en el canon 21 superior y, si bien se ha asimilado y equiparado a la garantía de buen nombre, la Corte Constitucional lo ha definido "*como la estimación o deferencia con la que, en razón a su dignidad humana, cada persona debe ser tenida por los demás miembros de la colectividad que le conocen y le tratan*"[35].

Frente al material publicado en redes sociales, la jurisprudencia constitucional ha destacado que "*la intención dañina, desproporcionada o insultante no va a depender de la valoración subjetiva que de la manifestación realice el afectado, sino de un análisis objetivo y neutral que de la misma se haga y que arroje como resultado la vulneración del núcleo esencial de los derechos al buen nombre y a la honra. En consecuencia, lo publicado en redes sociales está amparado por la libertad de expresión, pero también está sujeto a los límites por lo que algunas publicaciones no se encuentran bajo la protección señalada en el artículo 20 de la Carta, ni por los instrumentos internacionales que la consagran. Así, se activa un límite a la libertad de expresión cuando lo divulgado no se identifica con un fin constitucional legítimo, ni siquiera contribuye a un debate en específico, sino simplemente conlleva una intención dañina o insultante respecto del hecho que se quiere comunicar*"[36].

La Corte Constitucional, recogiendo lo manifestado por el Tribunal Constitucional Español ha mencionado que "*el derecho al honor opera como un límite insoslayable a la libre expresión, prohibido como está que alguien se refiera a una persona de manera insultante o injuriosa, o atentando injustificadamente contra su reputación, demeritándola ante la opinión ajena. Por ello la libertad de expresión no cobija las "expresiones formalmente injuriosas e innecesarias para el*

*ofendido*" (se destaca)[37].

Las redes sociales *"aunque son de gestión privada, funcionan como espacios abiertos al público en las que circulan expresiones y actividades de relevancia social y económica"* de manera que "*esa doble naturaleza impone la necesidad de establecer límites que aseguren tanto la autonomía empresarial como la vigencia de los derechos fundamentales*"[38]. En ese marco, el oficio de influenciador digital, la actividad de quien "*comparte contenido regularmente con una comunidad digital*" constituye "*una expresión de la vocación, capacidades y deseos de quienes lo ejercen*" y, en cuanto tal, goza de amparo constitucional *"siempre que no desconozca los límites propios del Estado social de derecho y los derechos fundamentales"*[39].

En el presente asunto, Danesh Noshirvan en calidad de creador de contenido, difundió a través de su cuenta de Instagram @thatdaneshguy, con seiscientos quince mil seguidores y de su perfil ThatDanesh en Substack[40], plataforma de publicación digital con tres mil doscientos suscriptores, un conjunto de divulgaciones que la Sala describe a continuación.

***En primer lugar***, en su cuenta de Instagram, lo denominó *"acosador de menores"*, lo calificó como "*aparentemente un delincuente sexual registrado según medios de comunicación de Belice*", lo describió como "*un supremacista blanco que ataca a mujeres y niños con agresión sexual a cambio de dinero*" y lo acusó públicamente de ser un "*violador*"[41]. También se documentó la existencia del Episodio 8 del podcast "*Lágrimas de un violador - acechador Joey Camp*"[42].

---

[37] Corte Constitucional, Sentencia T-050 de 2016 M.P. Gabriel Eduardo Mendoza Martelo. Tomado de la Sentencia T-550 de 2012, que a su vez citó la Sentencia 49 del 26 de febrero de 2001 de la Sala Segunda del Tribunal Constitucional Español.
[38] Corte Constitucional, Sentencia T-256 de 2025. M.P. Natalia Ángel Cabo.
[39] Ibidem.
[40] *El despacho sustanciador realizó búsqueda en Instagram y Substack con el dominio* @thatdaneshguy el 23 de junio de 2026.
[41] Archivo No. 003EscritoTutelaAnexos.pdf, pág. 11 a 13. Capturas de pantalla de publicaciones de Instagram. Textos originales: *"Child stalker Joey Camp»; «apparently a registered sex offender according to Belizean media»; «a white supremacist who targets women and children with sexual*

audiencia a *"compartir su podcast en Bogotá para que toda la ciudad sepa quién es y para que los niños de Colombia puedan estar a salvo"*[43].

***En tercer lugar***, la divulgación no autorizada de datos personales a través de distintas plataformas digitales: su ubicación geográfica en Colombia, su correo electrónico, su situación legal y su condición migratoria, información difundida sin su consentimiento con la finalidad de exponerlo públicamente y facilitar actos de hostigamiento por parte de terceros[44].

Ninguna de las imputaciones de carácter delictivo referidas encuentra respaldo en decisión judicial aportada al plenario. El propio accionado reconoció, en su contestación, que los elementos cuestionados corresponden a *"referencias a acusaciones, reportajes o publicaciones realizadas por terceros"*[45], admisión que evidencia la ausencia de verificación judicial previa de la información difundida y descarta cualquier ejercicio diligente del derecho a informar.

**iii) El caso concreto: Naturaleza de las expresiones difundidas y su incidencia sobre los derechos fundamentales del accionante.**

Para determinar si las expresiones descritas se enmarcan en el ejercicio legitimo de la libertad de expresión, el Tribunal acude a la distinción estructural que la jurisprudencia constitucional ha trazado entre opiniones, expresiones subjetivas no susceptibles de prueba de verdad, ampliamente protegidas y afirmaciones fácticas, imputaciones de conductas o condiciones verificables en la realidad, sujetas al deber de veracidad. Existe además una tercera categoría que el ordenamiento no ampara bajo ninguna forma de libertad de expresión: las expresiones formalmente injuriosas o las imputaciones delictivas sin sustento probatorio, frente a las cuales el remedio constitucional no es la rectificación sino la cesación y eliminación del contenido, pues



[43] Archivo No. 019ImpugnaciónTutela.pdf, cuarto alcance, pág. 65. Texto original: «*Share my*

La opinión *"es un juicio valorativo acerca de algo o alguien, y su materialización necesariamente implica el pensamiento o la elaboración de ideas a partir de una serie de estímulos externos"*[46]. La libertad de opinión *"recae en la posibilidad que tiene cualquier persona de divulgar por cualquier medio sus opiniones y a no ser importunado a causa de estas"* y ha sido definida como *"la posibilidad de comunicar a otros el propio pensamiento, por lo cual puede decirse que este derecho coincide en cuanto a su objeto con la libertad de expresión"*. Bajo esa premisa, la Corte Constitucional ha señalado que esta garantía *"busca proteger aquellas formas de comunicación en las que predomina la expresión de la subjetividad del emisor, es decir, sus valoraciones, sentimientos y apreciaciones personales sobre determinados hechos, situaciones o personas"*, reconociendo que las manifestaciones hacen parte integral del núcleo esencial de la libertad de expresión en un Estado democrático"[47].

Bajo ese marco, las imputaciones de *"Child Stalker"*, *"registered sex offender"*, *"white supremacist who targets women and children with sexual assault for a fee"* y *"Real Rapist"* no constituyen opiniones, son afirmaciones fácticas de connotación delictiva presentadas ante una audiencia masiva, sin que obre en el plenario decisión judicial alguna que las respalde. La capacidad difusiva agrava la lesión.

En esas circunstancias, el Tribunal concluye que las publicaciones objeto de controversia excedieron los límites constitucionales de la libertad de expresión y comportaron una afectación ilegítima de los derechos fundamentales al buen nombre, la honra y la dignidad humana de Joseph Anthony Camp. Se precisa que las opiniones y críticas del accionado sobre el accionante permanecen en el ámbito de protección constitucional; lo que determina el amparo es exclusivamente la endilgación de conductas delictivas concretas sin respaldo en decisión judicial alguna.

procedentes y sus destinatarios.

El accionado no registra ingreso al territorio nacional[48]. Esa circunstancia no priva al juez constitucional de competencia ni excluye la posibilidad de impartir órdenes de cesación, conforme al principio de territorialidad aplicado al ciberespacio, *"cuando la amenaza o vulneración de los derechos fundamentales sucede en el ciberespacio, el juez de tutela tendrá competencia para pronunciarse si dicha amenaza o vulneración produce efectos relevantes en Colombia"*[49]. El contenido cuestionado circuló en este país y aquí desplegó sus consecuencias sobre los derechos del accionante; a ello se suma que el propio accionado compareció y contestó la acción, sujetándose con ello a la jurisdicción nacional.

Las órdenes de protección recaen principalmente sobre Meta Platforms Inc. en calidad de administradora de la red social Instagram y Substack Inc., plataformas en las que se aloja el material lesivo, en tanto los intermediarios digitales, una vez puestos en conocimiento de una vulneración de derechos fundamentales, adquieren una posición de garante que los habilita como sujetos pasivos de órdenes constitucionales de retiro. En reciente jurisprudencia de la Sala Civil, Agraria y Rural de la Corte Suprema de Justicia reiteró que *"[C]uando se examina la moderación de contenidos en internet, las plataformas digitales no solo pueden, <u>sino que deben restringir</u> la circulación de mensajes que configuren discursos prohibidos o no amparados —como la incitación al odio, violencia o comisión de delitos—, y la remoción de tales publicaciones no constituye una censura indebida, sino una medida necesaria para garantizar un entorno digital seguro y acorde con los parámetros nacionales e internacionales en materia de libertad de expresión, pues la permanencia del mensaje en internet perpetúa y amplifica la vulneración"*[50].



---

y la dignidad humana de Joseph Anthony Camp, conforme a lo expuesto.

## III. DECISIÓN

En mérito de lo expuesto, la **SALA CUARTA DE DECISIÓN CIVIL DEL TRIBUNAL SUPERIOR DEL DISTRITO JUDICIAL DE BOGOTÁ**, administrando justicia en nombre de la República de Colombia y por autoridad de la ley,

## RESUELVE

**PRIMERO: REVOCAR** la sentencia de tutela proferida el 11 de junio de 2026 por el Juzgado Tercero Civil del Circuito de Bogotá, por las razones expuestas.

**SEGUNDO:** En su lugar, **AMPARAR** los derechos fundamentales a la honra, el buen nombre y la dignidad humana de **Joseph Anthony Camp**, de conformidad con lo expuesto en la parte motiva de esta providencia.

**TERCERO: ORDENAR** a Meta Platforms Inc. en su calidad de administradora de la red social Instagram y Substack que en el término de cuarenta y ocho (48) horas siguientes a la notificación de esta sentencia retiren, de la cuenta @thatdaneshguy - https://www.instagram.com/thatdaneshguy y del perfil ThatDanesh https://substack.com/@thatdaneshguy, las publicaciones que contengan las expresiones *"Child Stalker"*, *"registered sex offender according to Belizean media"*, *"white supremacist who targets women and children with sexual assault for a fee"* y *"Real Rapist"*, referidas al accionante Joseph Anthony Camp, así como cualquier otro contenido que le impute la comisión de conductas delictivas sin respaldo en decisión judicial.

**QUINTO: REMITIR** una copia de la sentencia al Juzgado de origen, para todos los fines pertinentes.

**SEXTO: NOTIFICAR** esta decisión a todos los interesados, por el medio más expedito y eficaz.

**SÉPTIMO: ENVIAR** lo actuado ante la Corte Constitucional para su eventual revisión.

**NOTIFÍQUESE Y CÚMPLASE.**

**FLOR MARGOTH GONZÁLEZ FLÓREZ**
**Magistrada**

**JOSE ALFONSO ISAZA DÁVILA**
**Magistrado**

**MARTHA ISABEL GARCÍA SERRANO**
**Magistrada**

Firmado Por:

Flor Margoth Gonzalez Florez
Magistrada
Sala Civil
Tribunal Superior De Bogotá, D.C. - Bogotá D.C.,

*Jose Alfonso Isaza Davila*
Magistrado Tribunal O Consejo Seccional
Sala 018 Civil
Tribunal Superior De Bogotá, D.C. - Bogotá D.C.,

Martha Isabel Garcia Serrano
Magistrada
Sala 021 Civil
Tribunal Superior De Bogotá, D.C. - Bogotá D.C.,

Este documento fue generado con firma electrónica y cuenta con plena validez jurídica, conforme a lo dispuesto en la Ley 527/99 y el decreto reglamentario 2364/12
Código de verificación:

**SUPERIOR COURT OF THE JUDICIAL DISTRICT OF BOGOTA**
**FOURTH CIVIL DECISION CHAMBER**

**FLOR MARGOTH GONZÁLEZ FLÓREZ**
Presiding Magistrate

Filing No. 11001310300320260029301

Discussed and Approved in Decision Room on the twenty-fourth (24) of June and 2 (02) of July of two thousand twenty-six (2026). Minutes No. 24 and 25.

**Bogotá DC, July 2, 2026.**

The Court resolves the challenge filed by Joseph Anthony Camp appeals the first instance ruling issued by the Court Third Civil Court of the Bogotá Circuit on June 11, 2026, within the legal action brought by the appellant against Danesh Noshirvan, with a view to achieving the protection of their rights fundamental to good name, honor, data protection personal matters, privacy and human dignity.

## I. BACKGROUND

**1. Claims1:** Order the defendant to: i) eliminate in a definitively the posts shared through Instagram (@thatdaneshguy) and Substack (ThatDanesh) that contain allegedly offensive, slanderous or defamatory expressions in against the plaintiff, ii) publish a rectification under conditions equivalent to those of the content in question, iii) refrain from to carry out new demonstrations of a similar nature and iv) delete any personal data related to their location, legal status, email or other private information.

systematic campaign of defamation, slander, libel and digital harassment deployed by Danesh Noshirvan through the Instagram account @thatdaneshguy and the ThatDanesh profile on Substack. He argued that the defendant publicly presents him as *"Child stalker", "registered sex offender", "white supremacist", "Real "Rapist"* and a person who attacks women and minors for purposes sexual, in addition to spreading expressions aimed at discrediting him, ridicule him and associate him with extremely serious criminal conduct.

The content has achieved widespread dissemination on social media, generating negative repercussions on their honor, good name, Privacy, personal environment, and professional activity. Danesh Noshirvan sent communications to Colombian authorities attributing to him crimes such as threats, harassment, unlawful coercion, abusive access to computer systems and child pornography, an act he described as a form of persecution and stigmatization.

He also pointed to the unauthorized disclosure of information related to your location, email, and situation migration, a fact which, in his opinion, increased the risks for his security. The seriousness of these events led him to request the recognition of refugee status before the State Colombian, in addition to filing a criminal complaint with the Attorney General's Office and resorting to the reporting mechanisms of the digital platforms, without managing to have the questioned material removed.

Finally, he maintained that the publications remain. available to the public, prolonging the deterioration of their reputation and the violation of their fundamental rights.

The action was initially heard by the Court Third Civil Court of the Bogotá Circuit. Its admission dates from May 28. of 20263, a decision in which he ordered the notification of the summoned party, and the linking of Meta Platforms, Inc., Instagram, Substack Inc., the Colombian National Police, the 588th Local Prosecutor's Office of Bogotá, the Ministry of Foreign Affairs - Chancellery of Colombia, the Special Administrative Unit of Migration Colombia already the United States Embassy in Colombia, to issue a statement regarding the facts of the initial document.

**Danesh Noshirvan4** maintained that his publications are framed in the exercise of freedom of expression and deal with matters of public interest related to a person who is the subject of disputes, Reports and debates in various settings. The content The items in question correspond to opinions, criticisms, satires, and hyperboles. rhetoric or references to information disseminated by third parties, without to present them as facts proven by personal knowledge.

The requested measures involve incompatible restrictions with freedom of expression, by attempting to eliminate content, the prohibition of future demonstrations and the imposition of retractions. He also pointed out the existence of other mechanisms defenses used by the promoter, including criminal complaints and Reports to digital platforms, a circumstance which, in his opinion, precludes the admissibility of the injunction. He denied any intention to cause harm, asserting that he acted based on information publicly accessible and expressed his willingness to provide the sources used; consequently, he asked that the claims be dismissed. Additionally, he claimed to be the target of harassment by Joseph Anthony Camp by repeatedly sending emails electronics, for which he provided screenshots and documentation backup.

in the guardianship and argued that Danesh Noshirvan has used networks social media to spread false accusations, promote persecution and to affect the reputation of various people, including journalists, professionals and individuals.

He indicated that he was publicly labeled a *"pedophile"*, *"child "predator"* and *"child stalker"*, charges rejected for lack of support. In his opinion, freedom of expression does not protect powers false criminal charges, *"doxxing"*, disclosure of private information, or digital harassment campaigns. Under those conditions, he requested to have in It takes into account the existence of an alleged pattern of behavior, recognizing its intervention within the procedure and adopt measures aimed at prevent further harm to the people identified by the actuated.

**Facebook Colombia SAS6** argued that it lacks standing to be sued, since its corporate purpose is limited to services advertising and marketing, without legal capacity to manage the Instagram service. That function belongs to Meta Platforms, Inc. a company incorporated under the laws of the State of Delaware, with domicile at 1 Meta Way, Menlo Park, CA 94025, USA, whose condition of service administrator for Colombian users This is derived from the Terms of Use available at help.instagram.com/581066165581870: *"The Instagram Service is one of the Meta Products that Meta Platforms, Inc. provides to you. Therefore, these Terms of Use constitute an agreement between you and said company."*

He also alleged a breach of the principle of subsidiarity, since the withdrawal request has not been exhausted before the publisher, the claim to the platform, nor the demonstration of The constitutional relevance of the matter. He emphasized that the promoter He acknowledged in his statement that he had gone to other authorities, therefore



There is an ordinary mechanism in place. He also noted the

any attributable to her client, as no fact narrated
The guardianship involves the conduct of FB Colombia.

The **Special Administrative Unit Migration Colombia – UAEMC7** warned that its functions are limited to immigration control, The surveillance of foreigners and other matters related to the State's immigration policy are issues unrelated to the controversy. raised.

After verifying the immigration status of the people mentioned in the lawsuit, established that Joseph Anthony Camp remains regularly in the country by means of a valid safe-conduct pass to resolve his asylum claim, while Danesh Noshirvan does not registers entry into the national territory. Under that understanding, he maintained lack of participation in the events subject to the protection and capacity to satisfy the claims made.

The **Criminal Investigation Directorate and INTERPOL8** requested his disassociation from the procedure due to the lack of standing in the passive cause. He stated that, through the Cyber Center Police, provides technical and investigative support in related matters with cyberspace and performs judicial police duties under the coordination of the Attorney General's Office.

He stated that he does not have the authority to order the deletion, suspension, or blocking of accounts on social networks, websites, or material disseminated on the internet, determinations reserved to the administrators of the respective digital services according to their usage policies. He also indicated that the Virtual CAI is limited to providing guidance to citizens and forwarding the applications received to the people in charge of each platform.

Based on the above, he argued that the claims
The claims made by the plaintiff are outside his scope of action and

The **Prosecutor's Office Four Hundred and Five Delegate to the Courts Municipal Prisons of Bogotá9** reported that they were in charge of the news Criminal case No. 110016000050202653891, for alleged slander filed by Joseph Anthony Camp against Danesh Noshirvan. The matter was initially processed before the Conciliation Unit Pre-trial, where a hearing was convened but no one appeared of the defendant, regarding whom no information is available enough to establish his whereabouts.

He noted that the file was received on May 15, 2026 and is under study to evaluate the collected elements and adopt the relevant determinations; given the nature of the complaint and reconcilable of the reported conduct.

He maintained that there was no harm attributable to the prosecuting body, since the matter is progressing according to its current state and the burdens of work of the agency, and requested that the injunction be denied with respect to that authority.

The **National Police Cyber Center10** specified that its The function consists of providing guidance and support in the event of incidents. cybersecurity, but not ordering the removal of websites or accounts on digital platforms. He indicated that he could only manage and forward requests to the administrators, who decide on the withdrawal. suspension or blocking of content in accordance with their internal policies.

The **Ministry of Foreign Affairs – Chancellery11** explained that the events described are unrelated to the work of that department, focused on foreign policy, diplomatic relations and consular affairs, as well as the coordination of migration and immigration matters nationality. He indicated that the controversy concerns an alleged infringement of fundamental rights arising from publications

in the events described and pointed out the lack of a link between the claims made and the activities carried out by that wallet.

**Meta Platforms, Inc. Instagram** and **Substack, Inc.**[12]

Those duly notified remained silent.

**4. Accused ruling of first instance.**

In a ruling dated June 11, 2026[13], the *a-Quo* denied the protection constitutional, concluding that the requirement was not met subsidiarity, since it had to exercise the right of rectification directly in front of Danesh Noshirvan before resorting to this route, without any evidence of that action being in the file.

The exceptional origin of the amparo in matters of honor and A good name requires proof of that prior request to the author of the controversial information, budget that the firm did not find proven. For these reasons, he denied the claims and dismissed the entities and participants in the process.

**5. Appeal.**

The plaintiff appealed the verdict.[14] He argued that the court disregarded the evidence that proved the sending of petitions.

direct orders for retraction, content removal, and cessation of publications addressed to Danesh Noshirvan, ignored requests and even answered in a derogatory manner, a circumstance which, in his opinion, It satisfied the prior budget required by jurisprudence constitutional.

The decision failed to assess evidence and statements through which the defendant himself acknowledged having received

social media posts, as budgets for examining
Despite the controversy, they were satisfied.

The ruling failed to analyze the impact on human dignity. privacy, protection of personal data, psychological integrity and personal safety, as well as the request for measures provisional. He emphasized that the disputed dissemination remains in effect and it causes harm that he described as irreparable.

## II. CONSIDERATIONS

The Court is competent to hear the matter according to the regulated in canon 37 of Decree 2591 of 1991 in accordance with Decrees 1069 of 2015 and 333 of 2021.

Regarding standing to sue, it must be stated which is accredited, while Joseph Anthony Camp is a US citizen with legal residency in Colombia according to the report submitted by the Special Administrative Unit Migration Colombia, acting on its own behalf as the holder of the rights allegedly violated15.

The passive legitimation in the case falls on Danesh Noshirvan, a citizen who has no record of entering the national territory16, in his capacity as author and controller of the accounts @thatdaneshguy and ThatDanesh through which the was disseminated
content questioned.

Meta Platforms, Inc., administrator of Facebook services and Instagram, and Substack, Inc., entities with their principal place of business in the United States of America17, linked and duly notified in a way that does not involve them in the process18, they fulfill the role of



15 File No. 011ContestaciónMigraciónColombia.pdf, page 9.
16 File No. 011ReplyMigrationColombia, p. 9.

*the process of transmission and dissemination of content[,], but they do not take decisions about dissemination, that is, they provide access, accommodation, transmission and indexing of content, products and services, which are originate in third parties, a scenario where they facilitate freedom of expression; and (ii) [of an] active nature[,] insofar as they can adopt a data-driven business model"* 19.

The Court's jurisdiction to hear the present case and Issuing mandates to entities based abroad finds support in the most recent constitutional jurisprudence. The Court The Constitutional Court has specified that the Colombian legal system adopts a *moderate "country-of-destination"* model20 , according to which the national judges can assume jurisdiction over disputes linked to the digital environment when the events occurred in the cyberspace produces, generates certain and direct consequences in the Colombian territory.

Under that premise, he acknowledged that *"the two big rules on territorial jurisdiction refers to the place where the threat occurs or violation of the right, or to the place where this omission or violation has effects"* and although *"in the digital environment it is not always evident what was the place where the rights were violated or threatened fundamental"*, this does not deprive the constitutional judge of his competence when there are *"sufficient elements to consider that the conduct Meta produced effects mainly in Colombia" 21.*

In the *case under examination*, the material circulated in Colombia and was deployed here its consequences on the fundamental rights of the promoter, which satisfies the required territorial link. In addition, the The defendant himself appeared in the process by means of a written document response, remaining subject to national regulations.



---

Joseph Anthony Camp satisfied the special procedural requirement enshrined in numeral 7 of article 42 of Decree 2591 of 1991, consisting of the prior request for rectification addressed directly to the sender of the questioned information. If that threshold is exceeded, It will address, ***secondly,*** *the substantive examination, intended to determine* whether the publications attributed to Danesh Noshirvan They violated the fundamental rights invoked. In that order, the The issues to be resolved are the following: ***i)*** The special requirement of procedural requirements: the prior request for rectification, ***ii)*** the rights fundamental issues in tension: freedom of expression versus honor, good name, privacy, protection of personal data and human dignity and ***iii)*** the specific case, nature of the expressions disseminated by Danesh Noshirvan and its impact on rights fundamentals of the plaintiff.

***i) The special procedural requirement: the prior application of rectification.***

To resolve the matter, it must be clarified that *"the prior request of rectification as a procedural requirement for the exercise of the A protective action is required when the information that is alleged Inaccurate or erroneous information is disseminated through the media or from journalistic reports published on social media by people who act as journalists, or those who, without being professional communicators, are habitually engaged in broadcasting information"*22.

The Constitutional Court has classified that instrument as a "self-composed procedure *that the legal system has designed to serve as a safeguard mechanism for both rights to freedom of expression and information, since objection The information is presented directly to the media. communication, who may and should carry out the verifications and arguments regarding the truth and scope of the content for justify their reluctance or voluntarily agree to the rectification,*

*but you will be able to process it directly and expeditiously through the media of communication."* Consequently, *"only if the media refuse unjustifiably fail to rectify or do so while failing to meet the minimum requirements required for rectification, the constitutional protection turns out to be "previous"*23.

Ruling SU-420 of 2019 indicated that in conflicts between individuals arising from publications on social media, the protection This applies when the affected party has concurrently exhausted: ***i)*** the request for withdrawal or amendment to the individual who made the publication; ***ii)*** the complaint to the platform where it is located the publication is hosted, provided that their community rules enable it that possibility; and ***iii)*** the finding of constitutional relevance of matter 24.

In contrast, **i)** Joseph Anthony Camp referred to Danesh Noshirvan a formal request for retraction, withdrawal of the material harmful and cessation of defamatory disclosures on April 20, 2026, addressed to the email address thatdaneshguy@gmail.com25, ratified In his reply, 26 on April 24,27 and April 27, 2026,28 he reiterated the demand for the definitive elimination of the disclosures, publication of a rectification and deletion of their personal data; **ii)** reported the content in question through the channels provided by Instagram and Substack29 and **iii)** the imputations of conduct broadcast to an audience of six hundred and fifteen thousand followers30 They constitute a matter of unequivocal constitutional relevance.

---

23 CC Sentence T-688 of 2015, MPMyriam Ávila Roldán, consideration 2.6.2.
24 Constitutional Court. Judgment SU-420 of 2019. MP José Fernando Reyes Cuartas.
25 File No. 003 Written Guardianship Annexes.pdf. https://drive.google.com/drive/folders/1nfY4U9OsoIG3dvJo7i_9NolLhol_rRoX?usp=sharing, Gmail - Formal request for retraction, removal of content and cessation of defamatory publications against Mr. JOSEPH ANTHONY CAMP
26 File No. 007ContestDaneshNoshirvan.pdf, page 1.
27 File No.003WrittenTutelaAnexos.pdf. Danesh Noshirvan Evidence - Google Drive. Gmail - retraction demand (part 2)
28 File No.003WrittenTutelaAnexos.pdf. Danesh Noshirvan Evidence - Google Drive. Gmail - Formal request for retraction, removal of content and cessation of defamatory publications against Mr. JOSEPH ANTHONY CAMP.



29 File No. 003EscritoTutelaAnexos.pdf. Instagram Report March 3, 2026. Substack Report March 3, 2026. https://drive.google.com/

*inaccurate or erroneous. In this case, the transcript must be attached: the information or a copy of the publication and the requested correction that was not published under conditions that ensure the effectiveness of the same."* In the present case, the plaintiff provided the recordings, *screenshots* of the posts shared on Instagram and Substack in English31, with reproduction of the original text in the footnotes of this provision and free translation by the office substantiator, content that remains accessible for verification direct on the respective digital platforms32.

Therefore, the stated requirement has been met. The action exceeds the threshold for admissibility for substantive examination.

***ii) Fundamental rights in tension: freedom of expression versus honor, good name, privacy, protection of personal data and human dignity***

Article 20 of the Political Constitution recognizes the guarantee of every person to freely express and disseminate their thoughts and opinions, to inform and receive truthful and impartial information, and that of to establish mass media outlets, which are free and have social responsibility. Constitutional jurisprudence has specified that this right consists of: *(i) freedom of expression stricto sensu; (ii) freedom of information, with its components of freedom (iii) freedom of the press; (iv) the right to rectification under equitable conditions; and (v) prohibitions on censorship33.*

In that context, the fundamental right to a good name enjoys broad protection derived from the Political Constitution of In Colombia, Article 15 recognizes that *"all persons have right to personal and family privacy and to their good name"* and expressly and categorically states that the State *"must*



______________________

*They have the others and that it is configured as a right against detriment that may be suffered as a result of* ***offensive expressions*** *or* ***defamatory*** *or* ***false or biased information"*** 34 (emphasis added). For its part, the right to honor is enshrined in canon 21 *superior and, although it has been assimilated and equated to the guarantee of good* The Constitutional Court has defined the name *as "the estimation or deference with which, by reason of their human dignity, each person must be considered by the other members of the community that it They know him and treat him well."* 35.

Regarding the material published on social media, the jurisprudence The Constitutional Court has emphasized that *"the harmful intent, Whether it is disproportionate or insulting will not depend on the assessment subjective analysis of the affected person's statement, but rather an analysis objective and neutral that is made of it and that yields as a result the violation of the core of the rights to a good name already honor. Consequently, what is published on social media is protected by freedom of expression, but also subject to the limits, so some publications are not included in the protection indicated in Article 20 of the Charter, nor by the instruments international agreements that enshrine it. Thus, a limit to freedom is activated. of expression when what is disclosed is not identified with a purpose legitimate constitutionality, it doesn't even contribute to a specific debate, but simply carries a harmful or insulting intent with respect of the fact that one wants to communicate"* 36.

The Constitutional Court, taking into account what was stated by the The Spanish Constitutional Court has stated that *"the right to Honor operates as an unavoidable limit to free expression, forbidden How is it acceptable for someone to refer to a person in an insulting way? defamatory, or unjustifiably damaging to their reputation, diminishing its value in the eyes of others. T*<u>*herefore, freedom of expression is not It covers "formally offensive and unnecessary expressions for the*</u>

*offended"* (highlighted)37.

Social networks, *"although privately managed, function as spaces open to the public where expressions circulate and activities of social and economic relevance"* so that *"this dual nature imposes the need to establish limits that ensure both business autonomy and the validity of the fundamental rights"* 38. In that context, the profession of influencer digital, the activity of someone who *"regularly shares content with a digital community"* constitutes *"an expression of the vocation, capabilities and desires of those who exercise it"* and, as such, enjoys constitutional protection *"provided that it does not disregard its own limits of the social rule of law and fundamental rights" 39.*

In the present matter, Danesh Noshirvan as creator of content, he disseminated through his Instagram account @thatdaneshguy, with six hundred and fifteen thousand followers and his profile ThatDanesh on Substack40, a digital publishing platform with three twelve hundred subscribers, a set of disclosures that the Court describe below.

***First,*** on his Instagram account, he called it *"child predator"*, he described him as *"apparently a criminal "Reported sexual assault according to Belizean media,"* described him as *"a white supremacist who attacks women and children with sexual assault in exchange for money"* and publicly accused him of being a *"rapist"* 41. The existence of Episode 8 of podcast *"Tears of a rapist - stalker Joey Camp"*42.

---

37 Constitutional Court, Judgment T-050 of 2016 MP Gabriel Eduardo Mendoza Martelo. Taken from Judgment T-550 of 2012, which in turn cited Judgment 49 of February 26, 2001 of the Second Chamber of the Spanish Constitutional Court.

38 Constitutional Court, Judgment T-256 of 2025. MP Natalia Ángel Cabo.

39 Ibidem.

40 *The investigating office conducted a search on Instagram and Substack with the domain @thatdaneshguy on June 23, 2026.*

41 File No. 003WrittenTutelaAnexos.pdf, page. 11 to 13. Screenshots of Instagram posts. Original texts: *"Child stalker Joey Camp"; "apparently a registered sex offender according to Belizean media"; "a white supremacist who targets women and children with sexual assault for a fee"; "Real Rapist"..*

audience to "share their podcast in Bogotá so that the whole city "Know who he is and so that the children of Colombia can be safe." 43.

*Third,* the unauthorized disclosure of personal data through various digital platforms: their geographic location in Colombia, your email address, your legal status and your immigration status, information disseminated without your consent with the with the purpose of publicly exposing him and facilitating acts of harassment by third parties44.

None of the criminal charges referred to It finds support in a judicial decision presented to the plenary session. The very The defendant acknowledged, in his reply, that the elements The questions raised correspond to *"references to accusations, reports or publications made by third parties"* 45, an admission that demonstrates the absence of prior judicial verification of the information disseminated and rules out any diligent exercise of the right to inform.

**iii) The specific case: Nature of the disseminated expressions and its impact on the fundamental rights of the plaintiff.**

To determine whether the described expressions fall within the legitimate exercise of freedom of expression, the Court resorts to the structural distinction that constitutional jurisprudence has drawn between opinions, subjective expressions not susceptible to proof of truth, widely protected, and factual statements, imputations of verifiable behaviors or conditions in reality, subject to duty of truthfulness. There is also a third category that the The legal system does not protect any form of freedom of expression: formally offensive expressions or criminal accusations without evidentiary support, against which the constitutional remedy *It is not rectification but the cessation and elimination of the content, because*



43 File No. 019ImpugnaciónTutela.pdf. fourth scope. page. 65. Original text: «*Share my podcast in*

An opinion *"is a value judgment about something or someone, and its Materialization necessarily implies thought or elaboration of ideas based on a series of external stimuli"* 46. Freedom of opinion *"lies in the possibility that any person has to divulge their opinions by any means and not be bothered because of them"* and has been defined as *"the possibility of communicating to others the own thought, therefore it can be said that this right coincides Regarding its object with freedom of expression."* Under that premise, The Constitutional Court has indicated that this guarantee *"seeks to protect those forms of communication in which the expression of the subjectivity of the sender, that is, their values, feelings and personal opinions about certain facts, situations or people,"* recognizing that demonstrations are an integral part of the essential core of freedom of expression in a State democratic"47.

Within that framework, the accusations of *"Child Stalker"*, *"registered sex offender"*, *"white supremacist who targets women and children with "Sexual assault for a fee"* and *"Real Rapist"* are not opinions, they are factual statements of a criminal nature presented before a massive audience, without any judicial decision being recorded in the plenary session that supports them. Diffuse capacity aggravates the injury.

Under those circumstances, the Court concludes that the The publications in question exceeded the limits constitutional rights to freedom of expression and entailed a unlawful infringement of the fundamental rights to a good name, The honor and human dignity of Joseph Anthony Camp. It is necessary that the opinions and criticisms of the defendant about the plaintiff remain within the scope of constitutional protection; what The protection sought is solely the attribution of conduct specific criminal acts without any judicial backing.

origins and their recipients.

The defendant has no record of entering the national territory48. That This circumstance does not deprive the constitutional judge of competence nor excludes the possibility of issuing cease and desist orders, in accordance with principle of territoriality applied to cyberspace, *"when the threat or violation of fundamental rights occurs in the cyberspace, the judge of protection will have jurisdiction to rule on whether This threat or violation produces relevant effects on Colombia" 49.* The content in question circulated in this country and here this had consequences for the plaintiff's rights; therefore In addition, the defendant himself appeared and responded to the action, thereby subjecting themselves to national jurisdiction.

The protection orders primarily concern Meta Platforms Inc. as administrator of the Instagram social network and Substack Inc., platforms on which the harmful material is hosted, in both the digital intermediaries, once made aware of a violation of fundamental rights, they acquire a position of guarantor that enables them as passive subjects of orders Constitutional retirement rights. In recent jurisprudence from the Civil Chamber, The Agrarian and Rural Chamber of the Supreme Court of Justice reiterated that *"[W]hen The moderation of online content and platforms is being examined. Digital platforms not only can, <u>but must restrict the circulatio</u>n of messages that constitute prohibited or unprotected speech—such as incitement to hatred, violence, or the commission of crimes—and the removal of Such publications do not constitute undue censorship, but rather a a necessary measure to guarantee a safe and compliant digital environment with national and international parameters regarding freedom of expression, since the permanence of the message on the internet perpetuates and amplifies the violation"50.*

and the human dignity of Joseph Anthony Camp, in accordance with exposed.

**III. DECISION**

In light of the foregoing, the **FOURTH DECISION CHAMBER CIVIL COURT OF THE SUPERIOR COURT OF THE JUDICIAL DISTRICT OF BOGOTA,** administering justice in the name of the Republic of Colombia and by authority of law,

**RESOLVE**

**FIRST: TO REVOKE** the protection order issued on the 11th June 2026 by the Third Civil Court of the Circuit of Bogotá, by the reasons stated.

**SECOND:** Instead, **PROTECT** fundamental rights to the honor, good name and human dignity of **Joseph Anthony Camp,** in accordance with the reasons set forth in the grounds of this providence.

**THIRD: ORDER** Meta Platforms Inc. in its capacity as administrator of the social networks Instagram and Substack that in the Within forty-eight (48) hours following notification of this sentence, remove from the account @thatdaneshguy - https://www.instagram.com/thatdaneshguy and from the ThatDanesh profile https://substack.com/@thatdaneshguy, the publications that contain the expressions *"Child Stalker", "registered sex offender according to Belizean media", "white supremacist who targets women and children with sexual assault for a fee"* and *"Real Rapist"*, referring to the plaintiff Joseph Anthony Camp, as well as any other content that accuses him of committing criminal acts without supporting evidence in judicial decision.

**FIFTH: SEND** a copy of the judgment to the Court of origin, for all relevant purposes.

**SIXTH: NOTIFY** all interested parties of this decision, by the quickest and most effective means.

**SEVENTH: SEND** the proceedings to the Constitutional Court for its eventual review.

**NOTIFY AND COMPLY.**

**FLOR MARGOTH GONZÁLEZ FLÓREZ**
**Magistrate**

**JOSE ALFONSO ISAZA DAVILA**
**Magistrate**

**MARTHA ISABEL GARCÍA SERRANO**
**Magistrate**

**Signed By:**

**Flor Margoth Gonzalez Florez,**
**Magistrate,**
**Civil**
**Chamber, Superior Court of Bogotá, DC - Bogotá DC**

**Jose Alfonso Isaza Davila**
**Magistrate, Court, or Sectional Council**
**Civil Room 018**
**Superior Court of Bogotá, DC - Bogotá DC,**

**Martha Isabel Garcia Serrano**
**Magistrate**
**Room 021 Civil**
**Superior Court of Bogotá, DC - Bogotá DC,**

This document was generated with an electronic signature and has full legal validity, in accordance with the provisions of Law 527/99 and regulatory decree 2364/12

Verification code:
[illegible]

The UPS Store Smart Label

Tracking #

1Z0Y41F5037816 1619

RICHARD LUTHMANN
(239) 778-6524
4199 LOS ALTOS CT
NAPLES FL 34109

1 LBS 1 OF 1
SHP WT: 1 LBS
DATE: 20 JUL 2026

SHIP TO:
CLERK OF COURT
US FEDERAL COURT
2110 1ST ST

FORT MYERS FL 33901-3000

FL 339 0-01

UPS GROUND

TRACKING #: 1Z 0Y4 1F5 03 7816 1619

BILLING: P/P

MMK3K7004BH94 ISH 13.00C ZZP 450 20.5U 05/2026

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.
KR1225

IL 22 2026 PM3:30
) - USDC - FLMD - FTM

US FEDERAL COURT
2110 1ST ST
FORT MYERS FL 33901

P: BROWN S: BLACK I: 41C

307-6900

1Z0Y41F5037816 1619

SAT08485 XLE 01-1 Jul 22 08:32:15 2026
US 3380 UDC 25.9 SATOLR

EXHIBIT
B

Bogotá, D.C., 16 de junio de 2026.

Respetada señora, juez.
LILIANA CORREDOR MARTÍNEZ
**JUZGADO TERCERO (3) CIVIL DE CIRCUITO DE BOGOTÁ, D.C.**

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-31-03-003-2026-00293-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | IMPUGNACIÓN FALLO DE PRIMERA INSTANCIA |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. **A81664904** de los Estados Unidos de América, por medio del presente escrito procedo a **IMPUGNAR** la sentencia de primera instancia proferida por su despacho el once (11) de junio de 2026, en los siguientes términos:

## I. PROVIDENCIA RECURRIDA

El despacho, mediante sentencia, notificada mediante oficio remitido por correo electrónico el once (11) de junio de 2026, denegó la protección de los derechos fundamentales invocados al considerar, en síntesis, que el accionante no acreditó el cumplimiento del requisito de subsidiariedad fijado por la Corte Constitucional, esto es, la solicitud previa de retractación dirigida directa y personalmente al emisor de las publicaciones. En palabras del fallo recurrido:

> *«En ese orden de ideas, si bien el señor **Joseph Anthony Camp** manifestó haber iniciado una denuncia en contra del influencer conocido en redes sociales como "@thatdaneshguy" y "Danesh", y que con anterioridad solicitó a las plataformas **Meta Platforms, Inc. - Instagram-** y **Substack, Inc.**, no se aportó prueba concreta que, en el ejercicio de los derechos civiles colombianos haya elevado la respectiva solicitud de rectificación directamente en contra del accionado **Danesh Noshirvan**, "**Thatdaneshguy**".*
>
> *Ante este escenario, resulta infértil el amparo invocado, sin perjuicio de que el actor pueda acudir a lo dispuesto en líneas precedentes [...].»*

Esa conclusión, con todo respeto, el fallo recurrido desatiende la naturaleza, gravedad y sistematicidad de la vulneración, desconoce el material probatorio obrante en el plenario, y desborda el alcance que la propia Corte Constitucional ha dado a la regla de subsidiariedad en este tipo de controversias, por más que está más que probado dentro del expediente que dicho requerimiento **SÍ** se realizó y fue incluso objeto de burlas y comentarios sarcásticos por parte del accionado, quien de manera directa publicó *«I'm not reading all that shit. Stop contacting me»* (Traducción: «No voy a leer toda esa *mierda*. Deje de contactarme».)

## II. OPORTUNIDAD DEL RECURSO

El artículo 31 del Decreto 2591 de 1991 prevé que, «*Dentro de los tres días siguientes a su notificación el fallo podrá ser impugnado por el Defensor del Pueblo, el solicitante, la autoridad pública o el representante del órgano correspondiente, sin perjuicio de su cumplimiento inmediato* [...]».

En ese sentido, dado que la notificación de la sentencia se realizó por vía de correo electrónico de once (11) de junio de 2026, y que el artículo 8 de la Ley 2213 de 2022 prevé que «*La notificación personal se entenderá realizada una vez transcurridos dos días hábiles siguientes al envío del mensaje y los términos empezarán a contarse cuando el iniciador recepcione acuse de recibo o se pueda por otro medio constatar el acceso del destinatario al mensaje*», el plazo para incoar el presente recurso fenece el diecisiete (17) de junio siguiente.

Por tanto, estando dentro del término previsto en la ley, se procede a presentar el siguiente escrito de impugnación en contra del fallo de primera instancia.

## III. FUNDAMENTOS DEL RECURSO

1. ***La providencia recurrida desconoce flagrantemente la prueba obrante en el expediente sobre el envío reiterado de comunicaciones formales de cese, desistimiento y solicitud de retractación dirigidas directamente al accionado.***

El núcleo del razonamiento de la sentencia recurrida descansa sobre una afirmación que es contraria a los hechos de la tutela: que el accionante no habría elevado solicitud directa de rectificación al accionado. Esta conclusión se profiere en abierto desconocimiento del material probatorio obrante en el expediente, que documenta de manera exhaustiva el envío reiterado de comunicaciones formales al accionado a su correo electrónico thatdaneshguy@gmail.com, dirigidas precisamente a cumplir el requisito que el a quo echa de menos.

En particular, y sin pretensión de exhaustividad, obra en el expediente, y ha sido aportado tanto en el trámite inicial como en sus sucesivos alcances, prueba documental de:

- **Solicitud formal de retractación, eliminación y cese remitida al accionado el 20 de abril de 2026** por conducto del apoderado, dirigida al correo thatdaneshguy@gmail.com, con sustento expreso en los artículos 20 de la Constitución Política y en la Sentencia SU-

420 de 2019, otorgándole plazo de cinco (5) días para retractarse, eliminar el contenido lesivo y cesar las publicaciones difamatorias.

- **Requerimiento formal de *cease and desist* remitido directamente por el accionante el 27 de abril de 2026,** al mismo correo, en el que se le solicitó expresamente la eliminación de contenido, la rectificación, la abstención y la preservación de evidencia. La respuesta textual del accionado a este requerimiento, enviada ese mismo día desde su correo verificado, fue: «*I'm not reading all that shit. Stop contacting me*».

- **Reportes formulados ante las plataformas Instagram y Substack desde el año 2022,** sin que se haya logrado retiro alguno del contenido, conforme también consta probado y fue admitido en los hechos de la propia sentencia recurrida (página 2).

- **Notificación judicial de la acción de tutela y de cada uno de los memoriales y alcances sucesivos,** todos los cuales contenían pretensión expresa de retiro del contenido y de rectificación pública.

Sostener, a la luz de esta documentación abundante y reiterada, que el accionante «no acreditó» haber elevado solicitud directa de rectificación, es desconocer materialmente lo que el propio expediente acredita. La conclusión del a quo no resiste el contraste con el plenario.

2. ***La providencia recurrida omite valorar la admisión expresa, pública y voluntaria del accionado sobre el desconocimiento deliberado de las solicitudes formuladas: «I wouldn't give a fuck».***

Más allá del envío material de las comunicaciones, el expediente acredita un hecho de aún mayor contundencia jurídica: el accionado, en publicación de su cuenta verificada de Instagram (@thatdaneshguy), etiquetada como «Bogota, Colombia», declaró textualmente ante su audiencia masiva:

> *«Due to his excessive lies, I never read his email to me and assumed it was a lie anyway. If it was a real cease and desist 1. I would have no way of knowing. 2. I wouldn't give a fuck because he has been stalking my family for 4 years.»*

(Traducción libre: «Debido a sus excesivas mentiras, nunca leí su correo y asumí que era una mentira de todas maneras. Si era un cese y desistimiento real 1. No tendría forma de saberlo. 2. No me importaría una mierda porque él ha estado acosando a mi familia durante 4 años».)

Esta admisión, que en todo caso obra en el expediente y fue puesta de presente a la juez en los memoriales presentados en el trámite, acredita simultáneamente dos cosas: (i) que las solicitudes de retractación **SÍ** fueron enviadas (de lo contrario el accionado no se referiría a ellas como un cease and desist), y (ii) que el accionado, por decisión propia, deliberada y públicamente expresada, optó por no atenderlas en absoluto. La sentencia recurrida no valora este elemento probatorio, pese a ser determinante para la resolución del asunto.

Recuérdese que la propia Sentencia T-004 de 2022 que el *a quo* invoca como fundamento de su decisión, establece literalmente: «*Así, solo en caso de que hecha la correcta solicitud de rectificación esta se hubiere negado, hecho de forma inequitativa o simplemente no fuera atendida, será procedente el análisis de fondo sobre la violación de los derechos a la honra y el buen nombre en sede de tutela.*»

La hipótesis que la propia Corte Constitucional contempla es precisamente la del caso bajo examen: las solicitudes fueron enviadas, el accionado declaró que no las atendería («I wouldn't give a fuck»), y, en efecto, no las atendió. El requisito está totalmente satisfecho: por la prueba documental del envío y por la admisión pública del accionado de su decisión de no atenderlas.

3. ***La providencia recurrida aplica selectivamente la Sentencia T-004 de 2022, omitiendo precisamente la hipótesis aplicable al caso bajo examen.***

La Sentencia T-004 de 2022, citada como sustento de la decisión recurrida, contempla expresamente tres hipótesis en las cuales, una vez hecha la solicitud de rectificación, se habilita el análisis de fondo del amparo: (i) que la solicitud sea negada; (ii) que la rectificación se haga de forma inequitativa; o (iii) «*simplemente no fuera atendida*». El *a quo* transcribió este pasaje en su sentencia, pero al momento de aplicarlo desconoció enteramente la tercera hipótesis, que es justamente la que se configura en el sub examine.

Las solicitudes de retractación remitidas al accionado el 20 de abril y el 27 de abril de 2026 no fueron atendidas. Esto no es un alegato: es un hecho reconocido por el propio accionado en su respuesta a la acción de tutela donde manifestó textualmente que «*nunca he respondido a sus mensajes*». La propia respuesta del accionado, valorada por la juez, contiene la confesión de la no atención de las solicitudes. Sin embargo, la providencia recurrida concluyó, en clara contradicción con esta evidencia, que el requisito de subsidiariedad no estaba satisfecho.

La aplicación coherente de la T-004 de 2022 lleva, necesariamente, a la conclusión opuesta a la adoptada por el a quo: hecha la solicitud y no atendida, procede el análisis de fondo sobre la vulneración de los derechos fundamentales invocados.

4. ***La providencia recurrida omite el precedente especializado de la Sentencia SU-420 de 2019, aplicable a conflictos entre personas naturales en redes sociales, cuyos tres requisitos se encuentran agotados.***

La Sentencia SU-420 de 2019 estableció reglas específicas para el análisis de procedibilidad de la tutela en conflictos entre personas naturales derivados de publicaciones en redes sociales, exigiendo el agotamiento concurrente de tres requisitos: (i) solicitud previa de retiro o enmienda al emisor; (ii) reclamación ante la plataforma; y (iii) constatación de la relevancia constitucional del asunto. Este precedente, que es específicamente aplicable al presente caso, fue puesto reiteradamente de presente a la juez en los escritos presentados.

Los tres requisitos se encuentran ampliamente acreditados:

i. **Solicitud previa:** comunicaciones de 20 de abril y 27 de abril de 2026 al correo thatdaneshguy@gmail.com, además de las notificaciones procesales sucesivas.
ii. **Reclamación ante plataformas:** reportes ante Instagram y Substack desde 2022, todos ignorados.
iii. **Relevancia constitucional:** imputaciones de delitos sexuales contra menores, amenazas a la familia, incitación geolocalizada en Bogotá, divulgación de datos personales, TEPT clínicamente diagnosticado. Difícilmente puede concebirse un cuadro más intenso de relevancia constitucional.

Adicionalmente, la propia SU-420 de 2019 ordena el análisis contextual del caso bajo los parámetros de quién comunica, respecto de quién se comunica y cómo se comunica. La providencia recurrida no realiza este análisis: se detiene en la primera regla, malinterpretada, y omite el examen integral.

5. ***La providencia recurrida acoge acríticamente las defensas formuladas por el accionado, pese a que su falsedad o inconsistencia fue plenamente acreditada en el expediente y desarrollada en memorial específico presentado el 1° de junio de 2026.***

La sentencia recurrida reproduce, sin análisis crítico, las defensas formuladas por el accionado en su respuesta del 29 de mayo de 2026, en particular: (i) que su contenido constituye «*expresión protegida*»; (ii) que utilizó calificadores como «*aparentemente*» o «*según*»; (iii) que el accionante acudió a otros mecanismos legales; (iv) que no actuó con malicia. Esta reproducción se hace sin tomar en consideración el memorial de pronunciamiento sobre la respuesta del accionado, presentado el 1° de junio de 2026, en el cual cada una de estas defensas fue rebatida con apoyo en el material probatorio:

a) Sobre la defensa del uso de calificadores: el expediente acredita que las imputaciones del accionado se formulan, en abrumadora mayoría, sin calificadores y como afirmaciones directas de hecho: «*Stalker Joey Camp*», «*rapist and pedo Joseph Anthony Camp*», «*He targets children*», «*he strangled and raped his victim*». Estos no son matices ni hipótesis, sino imputaciones factuales directas y reiteradas.

b) Sobre la defensa de la «*ausencia de malicia*»: la admisión textual del propio accionado («I wouldn't give a fuck») y el patrón documentado de cuatro años de campaña sostenida, con marca propia, numeración de episodios, dominio web monetizado, desmienten cualquier alegación de buena fe.

c) Sobre la defensa de subsidiariedad: los reportes a plataformas fueron ignorados sistemáticamente por cuatro años; la vía penal está activada pero su lentitud estructural (cinco meses desde la denuncia, apenas en fase inicial) es incompatible con la urgencia de un daño que continúa sistemático, diario e ininterrumpido, según consta acreditado mediante constancia oficial de la Fiscalía 588 Local de Bogotá del 11 de mayo de 2026.

La sentencia recurrida no se pronuncia sobre ninguno de estos elementos, pese a haber sido extensamente desarrollados en el memorial de 1° de junio de 2026 y haber tenido a disposición de la juez la documentación que los soporta.

6. ***La providencia recurrida circunscribe indebidamente el análisis a la rectificación por afectación a la honra y al buen nombre, omitiendo el examen de los demás derechos fundamentales invocados.***

La sentencia recurrida enfoca su análisis exclusivamente en la procedencia del amparo por afectación a la honra y al buen nombre, bajo la lente del artículo 42.7 del Decreto 2591 de 1991, y omite por completo el análisis de la vulneración alegada respecto de otros derechos fundamentales invocados en la acción de tutela:

- **Integridad psíquica:** el accionante padece Trastorno de Estrés Postraumático (TEPT) formalmente diagnosticado conforme al DSM-5-TR, directamente atribuible a la conducta del accionado, conforme certificación del profesional tratante David Essel, M.S., O.M., obrante en el expediente.
- **Seguridad personal:** el accionado, en publicaciones geoetiquetadas como «*Bogota, Colombia*», ha instado a su audiencia masiva a difundir el contenido en la ciudad de residencia del accionante, ha proferido amenazas directas contra su familia («*I'm going to come find your family. Take your kids*»), y sus seguidores han etiquetado a Migración Colombia y a la Policía Nacional con la consigna «*pedo en bogota*». Esto configura riesgo concreto sobre la integridad física del accionante en Bogotá.
- **Intimidad y protección de datos personales (art. 15 C.P., Ley 1581 de 2012):** el accionado ha divulgado sin autorización ubicación geográfica del accionante, su situación legal, correo electrónico y otros datos sensibles.
- **Dignidad humana (art. 1 C.P.):** en su tercera dimensión, el derecho a vivir sin humillaciones, reconocido en la Sentencia T-881 de 2002.

El requisito formal de solicitud previa de rectificación, aun en la interpretación restrictiva del *a quo*, se predica específicamente del derecho a la rectificación frente a información inexacta. No es razonable extender ese requisito mecánicamente para impedir el análisis de fondo sobre la vulneración de derechos fundamentales distintos, como la integridad personal, la seguridad personal, la intimidad y la dignidad humana, cuya protección, conforme a su naturaleza, no depende de actuaciones de rectificación sino de cesación inmediata de la conducta lesiva.

7. ***La providencia recurrida omite valorar la corroboración estatal independiente del carácter sistemático, diario e ininterrumpido de la conducta vulneradora, contenida en la constancia oficial de la Fiscalía 588 Local de Bogotá de 11 de mayo de 2026.***

Obra en el expediente la constancia oficial expedida por la Fiscalía 588 Local de Bogotá — Unidad de Conciliación Preprocesal Usaquén, dentro del NUNC 110016000050202653891, firmada electrónicamente por el servidor público FABIO EMEL LOZANO BLANCO (código 0cf244a079), en la que se consigna textualmente:

*«EL QUERELLANTE MANIFIESTA A ESTE DESPACHO QUE DEBIDO A QUE CON POSTERIORIDAD A ESTA DENUNCIA SE VIENEN PRESENTANDO MANIFESTACIONES POR PARTE DEL QUERELLADO DE AMENAZAS, ACOSO, INSTIGACIÓN A TERCEROS A DELINQUIR DE MANERA SISTEMÁTICA, DIARIA E ININTERRUMPIDA LA INJURIA Y LA CALUMNIA EN CONTRA DE LA PRESUNTA VÍCTIMA, NO EXISTE ÁNIMO CONCILIATORIO Y DESEA CONTINUAR CON LA ACCIÓN PENAL.»*

Esta constancia, expedida por un órgano del Estado colombiano, corrobora el carácter sistemático, diario e ininterrumpido de la vulneración. Adicionalmente, deja constancia oficial de que el accionado, debidamente notificado para diligencia de conciliación pre-procesal, **no compareció y no justificó su inasistencia**, lo que constituye prueba independiente y de fuente estatal de que cualquier vía de autocomposición con el accionado es materialmente inalcanzable. La sentencia recurrida no valora este elemento probatorio.

8. ***La providencia recurrida omite todo pronunciamiento sobre las medidas provisionales urgentes expresamente solicitadas conforme al artículo 7 del Decreto 2591 de 1991.***

En los escritos sucesivos presentados ante el Despacho, el accionante solicitó expresamente la adopción de medidas provisionales urgentes conforme al artículo 7 del Decreto 2591 de 1991, dada la naturaleza actual, continuada, dolosa y geolocalizada de la vulneración, y el riesgo concreto sobre la integridad personal del accionante en la ciudad de Bogotá. La providencia recurrida no se pronuncia en absoluto sobre esta solicitud, ni para concederla, ni para negarla motivadamente. Esta omisión, en sí misma, configura un vicio sustancial de la sentencia.

9. ***La providencia recurrida sacrifica el derecho sustancial al rigorismo formal, contraviniendo el artículo 228 de la Constitución Política.***

El artículo 228 de la Constitución Política consagra el principio según el cual «*en las actuaciones de la administración de justicia prevalecerá el derecho sustancial*». Este mandato cobra especial relieve en sede de tutela, mecanismo cuya esencia es la protección inmediata, efectiva y preferente de los derechos fundamentales.

La Corte Constitucional ha enseñado, de manera reiterada y pacífica, que las reglas de procedibilidad fijadas jurisprudencialmente no pueden aplicarse de manera mecánica, automática ni ritualista cuando ello conduce a la denegación de justicia frente a vulneraciones manifiestas y continuadas. La providencia recurrida, al exigir como condición de procedibilidad la realización formal de un acto cuyo efecto material está plenamente acreditado (las solicitudes fueron enviadas; la propia parte accionada declaró que «*no le importaría*» atenderlas), sacrifica la dimensión sustantiva del amparo a una ritualidad procesal sin contenido. Esta interpretación es incompatible con la función constitucional de la tutela.

## IV. PERJUICIO IRREMEDIABLE

Mientras este recurso se interpone, el accionado continúa produciendo nuevo contenido difamatorio contra el accionante. La campaña ha alcanzado un nivel de profesionalización

industrial: con marca propia («The Danesh Podcast»), numeración de episodios («Episode 8 – Stalker Joey Camp», «Tears of a Rapist»), dominio web monetizado («daneshfoundyou.com»), distribución en YouTube, Instagram, Threads y Substack, y replicación viral por terceros residentes en Colombia.

Cada hora que transcurre sin orden judicial de cesación, se produce: (i) nuevo contenido lesivo en redes sociales con audiencia masiva geolocalizada en Bogotá; (ii) nuevas reacciones, comentarios, reposteos y etiquetamientos de autoridades colombianas; (iii) agravamiento del cuadro clínico de TEPT del accionante; (iv) profundización del riesgo concreto sobre su integridad personal en su ciudad de residencia; y (v) consolidación de un daño reputacional cuya reparación integral será materialmente imposible.

La inminencia del daño, la gravedad de las imputaciones, la urgencia de la protección y la impostergabilidad de la intervención judicial configuran, en grado superlativo, los cuatro elementos del perjuicio irremediable que la jurisprudencia constitucional exige. La acción de tutela es el único mecanismo procesal capaz de operar con la celeridad que la vulneración demanda. Su denegación, por un requisito ritual que materialmente está cumplido, equivale a privar al accionante de toda protección judicial efectiva

## V. PETICIÓN

En consideración a los argumentos previamente expuestos, se solicita respetuosamente al Tribunal Superior de Bogotá – Sala Civil, en su condición de juez de segunda instancia, que se sirva:

**PRIMERO: REVOCAR** integramente la sentencia de primera instancia proferida el 11 de junio de 2026 por el Juzgado Tercero Civil del Circuito de Bogotá, dentro del expediente de radicación 11001-31-03-003-2026-00293-00, en cuanto negó por improcedente el amparo constitucional invocado.
**SEGUNDO: DECLARAR** satisfecho el requisito de solicitud previa de rectificación al accionado, conforme a lo dispuesto en los artículos 20 de la Constitución Política y 42.7 del Decreto 2591 de 1991, en concordancia con la Sentencia T-004 de 2022 de la Corte Constitucional, en virtud de (i) las comunicaciones formales remitidas al accionado los días 20 y 27 de abril de 2026; (ii) la admisión expresa del propio accionado de su decisión deliberada de no atenderlas; y (iii) la reiterada falta de atención efectiva de las múltiples solicitudes formuladas.

**TERCERO: TUTELAR** los derechos fundamentales a la honra, al buen nombre, a la dignidad humana, a la intimidad personal, a la integridad psíquica, a la seguridad personal y a la protección de datos personales del señor JOSEPH ANTHONY CAMP, vulnerados por el señor DANESH NOSHIRVAN.

**CUARTO: ORDENAR** al señor DANESH NOSHIRVAN que, en el término improrrogable de cuarenta y ocho (48) horas contadas a partir de la notificación de la sentencia de segunda instancia, proceda a eliminar de manera definitiva todas las publicaciones que contengan afirmaciones calumniosas, injuriosas o difamatorias contra el accionante, publicadas en sus

cuentas de Instagram (@thatdaneshguy), Substack (perfil «Danesh»), Threads (@thatdaneshguy) y canal de YouTube (@ThatDaneshGuy), así como en cualquier otra plataforma bajo su control, incluido el dominio web daneshfoundyou.com.

**QUINTO: ORDENAR** al accionado que, en el mismo término, publique una rectificación pública en las mismas cuentas y plataformas en condiciones de equidad con las publicaciones originales, reconociendo la falta de fundamento probatorio de las afirmaciones realizadas, rectificación que deberá permanecer visible por un término no inferior a treinta (30) días calendario.

**SEXTO: ORDENAR** al accionado abstenerse en lo sucesivo de publicar, difundir o compartir cualquier contenido que contenga afirmaciones calumniosas, injuriosas, difamatorias o amenazantes contra el accionante, así como eliminar y abstenerse de divulgar sus datos personales.

**SÉPTIMO:** de manera subsidiaria, en caso de incumplimiento por parte del accionado, **ORDENAR** a las plataformas META PLATFORMS, INC. (Instagram y Threads), SUBSTACK, INC., y a YouTube/Google LLC, la eliminación del contenido difamatorio identificado en las cuentas del accionado.

**OCTAVO: ADOPTAR MEDIDAS PROVISIONALES URGENTES** conforme al artículo 7 del Decreto 2591 de 1991, dada la naturaleza actual, continuada, dolosa y geolocalizada de la vulneración, y el riesgo concreto que se cierne sobre la integridad personal del accionante en la ciudad de Bogotá, ordenando al accionado la suspensión inmediata de toda nueva publicación lesiva mientras se resuelve el fondo del recurso.

## VI. ANEXOS

Se adjuntan en el siguiente enlace:
https://drive.google.com/drive/folders/1e7RitKBVYJmUj6grlW9-WW47IqiwZsyT?usp=sharing

1. Solicitud de retracción de 20 de abril de 2026.
2. Respuesta de 27 de abril de 2026 de Danesh.
3. Consideraciones sobre acción de tutela
4. Alcance acción de tutela de 27 de abril de 2026
5. Alcance acción de tutela de 28 de abril de 2026
6. Alcance acción de tutela de 8 de mayo de 2026
7. Pone en conocimiento del despacho de 19 de mayo de 2026.

Todos documentos allegados al despacho de origen previo a la declaratoria de nulidad, por tanto deben obrar en el expediente digital de la acción de tutela.

## VII. NOTIFICACIONES Y CANAL DE COMUNICACIÓN

**ACCIONANTE:**

**JOSEPH ANTHONY CAMP**, recibiré notificaciones en los siguientes correos electrónicos: legal@mglegal.global y alejandro.isaza@mglegal.global o en la dirección física en la ciudad de Bogotá D.C., Calle 108 No. 15 – 41, Oficina 202, Edificio Villa Ángela.

**ACCIONADO:**

**DANESH NOSHIRVAN**, conocido como «*Thatdaneshguy*», ciudadano estadounidense, identificado con el correo electrónico thatdaneshguy@gmail.com. Cuenta verificada de Instagram: @thatdaneshguy. Perfil de Substack: «*Danesh*».

Atenta y cordialmente,

______________________________

**JOSEPH ANTHONY CAMP**
Pasaporte No. A81664904 de Estados Unidos de América
Accionante

# ANEXOS

Gmail **Joseph Camp <campjosepha@gmail.com>**

## Formal request for retraction, removal of content and cessation of defamatory publications against Mr. JOSEPH ANTHONY CAMP

1 message

**Joseph Camp** <campjosepha@gmail.com> Mon, Apr 20, 2026 at 4:48 PM
To: thatdaneshguy@gmail.com, Nick Chiappetta <nick@chiappettalegal.com>

Please find attached the **Formal Request for Retraction, Removal of Content and Cessation of Defamatory Publications**, Bogotá, D.C..

This formal communication is made under the terms of Judgment SU-420 of 2019 of the Colombian Constitutional Court and other applicable jurisprudence. It demands the immediate and permanent removal of all defamatory content, the publication of a retraction, the cessation of any further defamatory or threatening publications, and the deletion of my personal data from your Instagram (@thatdaneshguy), Substack ("Danesh"), Threads (@thatdaneshguy), and any other platforms under your control.

You are formally requested to comply in full with all points set out in the attached document **within five (5) calendar days** of receipt of this email.

Any questions regarding technical compliance or coordination for the removal of content may be directed to me at this email address.

**Sincerely,**

**Joseph Anthony Camp**
Bogotá D.C., Colombia
Email: campjosepha@gmail.com

______________________________

Adjunto encontrará la Solicitud Formal de Retractación, Eliminación de Contenido y Cese de Publicaciones Difamatorias, Bogotá, D.C.

Esta comunicación formal se realiza en virtud de los términos de la Sentencia SU-420 de 2019 de la Corte Constitucional de Colombia y demás jurisprudencia aplicable. En ella se exige la eliminación inmediata y permanente de todo contenido difamatorio, la publicación de una retractación, el cese de cualquier publicación difamatoria o amenazante adicional, y la supresión de mis datos personales de sus cuentas de Instagram (@thatdaneshguy), Substack ("Danesh"), Threads (@thatdaneshguy) y cualquier otra plataforma bajo su control.

Se le solicita formalmente dar cumplimiento pleno a todos los puntos expuestos en el documento adjunto en un plazo de cinco (5) días calendario a partir de la recepción de este correo electrónico.

Cualquier consulta relacionada con el cumplimiento técnico o la coordinación para la eliminación del contenido puede dirigirse a mí a esta dirección de correo electrónico.

Atentamente,

Joseph Anthony Camp
Bogotá D.C., Colombia
Correo electrónico: campjosepha@gmail.com

--
_/s________________________
Joseph A. Camp
CampJosephA@gmail.com
720.454.5240

**This e-mail message, including any attachments, is intended for the sole use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended**

**recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any use, dissemination, distribution, reproduction or copying of this email message, or any attachments, is strictly prohibited. If you have received this e-mail message in error, please notify the sender at once and destroy all copies of this message and any attachments. Thank you.**

---

**Formal Request for Retraction etc.pdf**
2326K

Bogotá, D.C., April 20, 2026.

Sir
**DANESH NOSHIRVAN**
Known on social media as "*Thatdaneshguy*"
Email: thatdaneshguy@gmail.com

**Subject matter:** Formal request for retraction, removal of content and cessation of defamatory publications against Mr. JOSEPH ANTHONY CAMP.

Mr. Noshirvan:

**JOSEPH ANTHONY CAMP,** a U.S. citizen and legal resident in the city of Bogotá D.C., Republic of Colombia, I hereby write to you in order to formulate, under the terms of Judgment SU-420 of 2019 of the Colombian Constitutional Court and other applicable jurisprudence, a formal request for retraction, elimination of the harmful content and definitive cessation of the defamatory publications displayed against my client through various digital platforms.

You have posted and maintain active, on your verified Instagram account identified with the username @thatdaneshguy, as well as on your Substack profile called "Danesh" (and, as it has recently been confirmed, also on your Threads account with the same username), content that falsely and publicly attributes to me the commission of extremely serious crimes, using, among others, the following expressions:

a. *"Child stalker Joey Camp".*
b. *"Apparently a registered sex offender according to Belizean media".*
c. *"A white supremacist who targets women and children with sexual assault for a fee."*
d. *"Real Rapist"* (rapist).
e. Statements according to which Mr. Camp "*cannot leave Colombia*", suggesting non-existent judicial restrictions, as well as insinuations that third parties have "*plans for him*", expressions that constitute veiled threats to his personal integrity.

Additionally, on November 18, 2025, you sent an email to the Virtual CAI of the Colombian National Police, in which you charged me with the commission of multiple crimes (including pornography with minors, typified in Article 218 of the Colombian Criminal Code), a communication in which you also expressly copied me as the recipient.

It has also disclosed my personal data, including my geographic location and email address, without authorization, exposing me to the risk of harassment by third parties.

These statements, considered individually and together, constitute a serious, current and ongoing violation of my client's fundamental rights to honor (art. 21 C.P.), to a good name (art. 15 C.P.), to human dignity (art. 1 C.P.), to personal privacy and to the protection of personal data

(art. 15 C.P. and Statutory Law 1581 of 2012). as well as a transgression of the constitutional limits of freedom of expression established by the Constitutional Court in judgments such as SU-420 of 2019, T-050 of 2016, T-277 of 2015, T-145 of 2016 and T-121 of 2018.

**In line with the foregoing,** and in accordance with the legal grounds set forth above, and in exercise of the fundamental right to rectification, you are formally requested to, within a period of no more than five (5) calendar days from the receipt of this email, proceed to:

1. **To permanently remove** all publications – texts, videos, images, stories, comments and any other audiovisual or written content – that contain slanderous, libelous or defamatory statements against Mr. Joseph Anthony Camp on his Instagram (@thatdaneshguy), Substack ("Danesh" profile) and Threads (@thatdaneshguy) accounts, as well as on any other platform where such statements have been replicated by his authorship.

2. **Publish a retraction in conditions of equity** on the same accounts and platforms on which the harmful publications were disseminated, in which it expressly recognizes the lack of evidentiary basis for the accusations made against Mr. Camp. Such retraction must remain visible for a period of no less than thirty (30) calendar days and have a scope equivalent to that of the original publications.

3. **Refrain from** publishing, disseminating or sharing any content that contains libelous, libelous, defamatory or threatening statements against Mr. Joseph Anthony Camp, on any digital platform, media or dissemination channel.

4. **Delete and refrain from disclosing** Mr. Camp's personal data, including his geographic location, legal situation, email address and any other personal information, in accordance with Article 15 of the Political Constitution and Statutory Law 1581 of 2012.

You are hereby informed, in the interests of transparency and procedural good faith, that you are currently pursuing a tutela action in Bogotá D.C. filed under No. 11001-41-89-011-2026-00619-00, the decision of the first instance is being challenged and is being processed before the constitutional judge of second instance.

In the event that you do not fully comply with the requests made herein within the period indicated, this communication will be submitted to the tutela file as additional evidence of the persistence of the conduct that violates my rights, and the corresponding orders will be requested from the constitutional judge for the removal of the harmful content, the public rectification and the cessation of the publications. including subsidiary orders against the platforms Meta Platforms, Inc. (Instagram and Threads) and Substack, Inc.

Any communication related to the fulfillment of this request, or to the coordination of the technical procedures necessary for the removal of the content, may be sent to the following emails: campjosepha@gmail.com

Sincerely,

**JOSEPH ANTHONY CAMP**

Bogotá, D.C., 28 de abril de 2026.

Respetado(a) señor(a), juez.
**JUZGADO SEXTO (6) CIVIL DE CIRCUITO DE BOGOTÁ, D.C.**

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-41-89-011-2026-00619-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | ALCANCE A IMPUGNACIÓN FALLO DE PRIMERA INSTANCIA |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. **A81664904** de los Estados Unidos de América, por medio del presente escrito doy segundo alcance al recurso de impugnación interpuesto contra el fallo de primera instancia proferido el catorce (14) de abril de 2026, con el fin de poner en conocimiento del juez de segunda instancia hechos sobrevinientes de la máxima gravedad y relevancia constitucional, ocurridos con posterioridad a la radicación de la impugnación y de su primer alcance, en los siguientes términos.

El presente escrito tiene por objeto poner en su conocimiento la respuesta textual de accionado a la solicitud formal de retracción y cese de todo tipo de publicaciones en mi contra. Esta respuesta, por si sola, constituye la prueba definitiva de que el requisito de subsidiariedad impuesto por el a quo es materialmente inutil.

Por otro lado, debo poner de presente que el accionado publicó el 26 de abril de 2026 un nuevo y extenso episodio de podcast de contenido difamatorio en mi contra en el que nuevamente me señala ante una audiencia masiva y acusa de la comisión de los delitos de la más alta gravedad social y penal: pedofilia, acoso sexual de menores, violación, explotación sexual comercial, supremacismo racial y, en la denuncia formulada ante la Policía Nacional el 18 de noviembre de 2025, pornografía con menores de edad.

Esta campaña sistemática desplegada por el accionado ha tenido impacto significativo en mi vida, al punto de que terceros en territorio colombiano están compartiendo deliberadamente el contenido lesivo en perjuicio directo de mi integridad personal, emocional y social.

El 27 de abril de 2026, el accionado señor DANESH NOSHIRVAN respondió, desde su correo electrónico thatdaneshguy@gmail.com, al requerimiento formal de cese y desistimiento (cease and desist) remitido por el señor Camp el mismo día, mediante la siguiente respuesta textual, que se reproduce íntegra por su brevedad y elocuencia: *«I'm not reading all that shit. Stop contacting me»* (Traducción: «No voy a leer toda esa mierda. Deje de contactarme».)

Esta respuesta es, para todos los efectos jurídicos del presente recurso, la prueba que el juez de primera instancia echó de menos y cuya ausencia motivó la denegación del amparo. Sin embargo, lo que acredita no es que la solicitud previa de retractación fuese un requisito válido cuyo cumplimiento habría cambiado el curso de la vulneración, sino exactamente lo contrario: confirma que el accionado jamás tuvo la menor intención de retractarse, corregir, enmendar o eliminar sus publicaciones, y que la exigencia ritual de esa solicitud era una carga absolutamente inane cuyo único efecto material ha sido dilatar la protección de los derechos fundamentales del hoy peticionario.

El accionado ha respondido a cada una de estas gestiones con una única conducta consistente: la intensificación de la vulneración. Reportes privados (2022-2025), silencio procesal frente a la tutela (marzo 2026), burla pública del fallo (16 de abril), solicitud formal del apoderado (20 de abril), nuevo video difamatorio (21 de abril), podcast completo dedicado a la difamación (26 de abril), y negativa expresa y burlesca al requerimiento de cese (27 de abril).

Esta situación se empeora debido a que el 26 de abril de 2026, cinco días después de radicada la impugnación y mientras el presente recurso se encuentra en trámite ante el juez de segunda instancia, el accionado publicó en su canal de YouTube @ThatDaneshGuy un extenso episodio de podcast dedicado íntegramente a la difamación.

El podcast no es una opinión ni un ejercicio legítimo de libertad de expresión. Es un acto deliberado, planeado y ejecutado con la intencionalidad dolosa de causar el mayor daño posible a mi vida, honra, buen nombre, dignidad e integridad personal. Su contenido va más allá de la difamación: configura incitación al hostigamiento en la comunidad de residencia del accionante, amenazas contra su familia, y divulgación masiva de datos personales.

Resulta imperativo que el juez de segunda instancia evalúe el requisito de subsidiariedad fijado por la SU-420 de 2019 a la luz del contexto integral del caso y no como una formalidad abstracta y desvinculada de la realidad. El presupuesto de solicitud previa de retractación tiene sentido cuando la conducta del emisor admite, razonablemente, la posibilidad de autocomposición; cuando quien publicó un contenido lesivo lo hizo de manera inadvertida, impulsiva, equivocada o sin plena conciencia de su alcance, y existe expectativa razonable de que una solicitud directa conduzca a la enmienda.

Respetuosamente me permito poner de presente al señor juez de segunda instancia que los perjuicios que se están ocasionando por la ausencia de una orden judicial oportuna de protección son gravísimos y se profundizan con cada día que transcurre sin intervención.
La Fiscalía General de la Nación, pese a conocer la denuncia penal radicada bajo el número único de noticia criminal 110016000050202653891, no ha adoptado hasta la fecha medida

alguna que detenga la conducta del accionado, y el ritmo propio de la jurisdicción penal resulta manifiestamente incompatible con la urgencia de la protección que mis derechos fundamentales demandan.

Mientras las instancias ordinarias avanzan, la campaña difamatoria continúa expandiéndose, ahora con terceros en Colombia compartiendo activamente el contenido. Temo fundadamente por mi integridad personal y la de mi entorno, particularmente ante las amenazas proferidas por el accionado en su podcast del 26 de abril, en el que anuncia su intención de localizar a mi familia y señalarme ante la comunidad colombiana como un peligro para los menores de edad.

**ANEXOS.**

Adjunto al presente alcance lo siguiente:

1. el enlace del video de Youtube referenciado:

https://www.youtube.com/watch?v=wsjeXIwnWE0

2. Captura de pantalla de comentarios que señalan que replicarán el contenido de las publicaciones:




3. Requerimiento hecho a YouTube para que se eliminen los videos publicados (adjunto)

4. Comentario al video solicitando retractación y eliminación del mismo. (adjunto captura de pantalla).

Atenta y cordialmente,

**JOSEPH ANTHONY CAMP**
Pasaporte No. A81664904 de Estados Unidos de América
Accionante

YouTube thatdaneshguy + Create




Danesh Podcast Episode 8 - Stalker Joey Camp

ThatDaneshGuy · 186K subscribers · Join · Subscribe · 106 · Share · Ask · Save

858 views Streamed 21 hours ago Danesh Podcast
Today we're going over former Garramone Plastic Surgery employee and stalker, Joseph Anthony Camp. He is a for-hire troll who was paid by Jennifer Couture and Ralph Garramone to terrorize ...more

Live chat replay
See what others said about this video while it was live.

5 Comments Sort by

Add a comment...

@CampJosephA 0 seconds ago

This letter serves as (1) a formal DMCA takedown notice pursuant to 17 U.S.C. § 512, (2) notice of defamation/libel under U.S. law, and (3) notice of criminal violations of Colombian law (calumnia and injuria) occurring where I reside in Bogotá, Colombia. The entire April 26 podcast (English and any Spanish-language version) and all related content on the channel @ThatDaneshGuy falsely accuse me of heinous crimes, attack my honor and reputation, dox me, incite harm against me in my local community, and repeatedly use my copyrighted intellectual property without authorization.

Active civil and criminal lawsuits/tort actions are currently pending against Danesh Noshirvan (ThatDaneshGuy) in Nebraska, Florida, and Colombia arising from the identical pattern of conduct. This podcast directly exacerbates those pending matters.

I. DEFAMATION / LIBEL (U.S. LAW – DEFAMATION PER SE) AND CRIMINAL CALUMNIA / INJURIA (COLOMBIAN PENAL CODE ARTS. 220–222 AND ART. 221)

The podcast consists of sustained false statements of fact published to the public that accuse me of specific serious crimes and injure my honor and reputation. Under U.S. law these constitute defamation per se (libel). Under Colombian law they constitute calumnia (false imputation of criminal conduct, punishable by 16–72 months imprisonment and fines) and injuria (attacks on honor and reputation, punishable by 16–54 months imprisonment and fines), with additional civil remedies for damage to good name and honor.

*Specific false and actionable statements (with timestamps from the attached full transcript, Exhibit A) include:*

A. Accusations of Sexual Crimes, Rape, Pedophilia, and Child Stalking (Defamation Per Se / Calumnia)

[illegible]: "the most despicable, the most deplorable, the most rotting pile of shit rap bastard we'll ever talk about. Child stalker, rapist, stalker, pedophile, Joseph Anthony Camp."

[illegible]–[illegible] (repeated): "Child stalker, rapist, stalker, pedophile."

[illegible]: "I'm going to Come find your family. Take your kids. And there's nothing you can do about it."

[illegible]–[illegible]: "he is currently hiding in Bogota, Colombia... a very dangerous individual because he does target children."

[illegible]: "Threats of sexual mutilation and rape to Nirshirvan and his children, including cutting a child's genitals off."

[illegible]–[illegible]: Detailed false rape allegations (got a woman drunk, took her to a hotel, strangled her, non-consensual sex, impregnation leading to abortion) accompanied by prison phone-call audio/transcript.

B. Accusations of Multiple Felonies and Criminal History (Defamation Per Se / Calumnia)

[illegible]–[illegible]: Recitation of alleged felonies including repeated burglary second degree (multiple counts), petite larceny, grand larceny, criminal possession of stolen property, assault felony, menacing, simulated weapon crimes against a person, harassment, intimidation, stalking, emotional distress, bribery, bribery of a public servant, attempted influence of a public servant, unlawful possession/use of another person's identification, contempt of court, probation violation, and fraud.

C. Character Assassination, Sociopathic Accusations, and Incitement (Injuria + Defamation)

[illegible]: "this is a person who is a sociopath, an admitted sociopath."

[illegible]: "for hire troll" who terrorizes people, "doxing people... with malice."

[illegible], [illegible], [illegible]: "most rotting pile of shit," "absolute loser," "complete pile of [expletive]," "hideous, most disturbing person to look at," "ugly human being he is on the inside."

[illegible] & [illegible]: Direct call to Bogota residents to "know who is in your community just so your kids... could be safe" because I "target children," including threats to post school maps and false charges.

[illegible]–[illegible]: False claims of hacking photographs, inserting myself into them, and claiming the victim was "in love with him" and "obsessed with him."

The entire podcast frames me as an active, ongoing danger in Bogotá, Colombia, defames me with the intention of inciting violence against me, and maliciously attacks me with absolutely no legitimacy while using creative generation tools such as AI to fabricate "evidence", and worse.

II. COPYRIGHT INFRINGEMENT AND DMCA VIOLATIONS (17 U.S.C. §§ 501 AND 512)

I am the owner or exclusive rights holder of the following copyrighted intellectual property. The podcast and channel repeatedly reproduce, display, distribute, and publicly perform these works without my authorization or license:

My personal mugshot photographs and arrest images (displayed and mocked at approximately [illegible]–[illegible] and throughout).

Personal photographs and visual materials (including hacked or unlawfully obtained images referenced at [illegible]–[illegible]).

Audio clips and/or detailed transcriptions of the alleged prison phone call ([illegible]–[illegible]).

Screenshots, readings, and reproductions of private text messages ([illegible]–[illegible]).

Comparative images, court-related visuals, and other original content used to defame me (including "Last Action Hero" comparison at [illegible] and additional visuals throughout the video and channel).

These acts constitute direct copyright infringement under 17 U.S.C. § 501. YouTube has actual knowledge of the infringement through this detailed notice and is required to act expeditiously to remove or disable access to the infringing material under 17 U.S.C. § 512(c).

DEMAND FOR RELIEF

YouTube / Google LLC must immediately and permanently:

Remove the entire @ThatDaneshGuy channel and all videos, shorts, community posts, and related content (including the April 26 podcast and any Spanish version).

Disable access to all defamatory, criminally actionable, and infringing material worldwide.

Cease any further reproduction, distribution, or use of my copyrighted intellectual property.

Issue a public retraction and correction notice on the channel within 7 days.

Preserve all records, analytics, viewer data, upload logs, and communications related to the channel for pending and future litigation.

This DMCA notice fully complies with 17 U.S.C. § 512(c)(3). Please confirm receipt and full compliance in writing within 48 hours.

Failure to comply within 7 days will result in:

Immediate filing of criminal complaints in Colombia for calumnia (Arts. 220–222) and injuria (Art. 221) of the Colombian Penal Code.

Pursuit of civil damages, statutory copyright damages (up to $150,000 per infringed work), injunctive relief, and attorney fees in U.S. and Colombian courts.

Notification to relevant law enforcement and judicial authorities in both jurisdictions.

This demand does not constitute a waiver of any rights or claims.

Show less

Reply

@jamiegallier2106 5 hours ago
Well said. I appreciate your dedication, diligence, and integrity ❤️

Reply

@JJ-st9xw 9 hours ago
How is this guy not in prison for life?

Reply

@kimani 241 11 hours ago
What's the latest with Luhmann?


Be honest
When's the last time you actually logged into other SEO tools?
Get Your Keywords Everywhere API Key

Summarize This Video





Optimize This Video

Video Insights

| | |
|---|---|
| Optimization Score | 6/100 |
| Engagement Score | 13.05% |
| Views Per Day | 2,552 |
| Topic Expertise | n/a% |
| Total Subscribers | 186,000 |

How these metrics are calculated

Tags

Top chat replay


WORLD OF WARSHIPS
Play For Free on PC
Sponsored · worldofwarships
Download


All · From the series · From ThatDaneshGuy



Become a Special Warfare Combat Crewman.
Sponsored · United States Navy
Learn more




Ibiza Summer Mix 2026 · Best Of Tropical Deep House ...
Deep Calm
121 watching




The Hidden War Behind Belize's Paradise Islands
DISPATCH
57K views · 2 weeks ago




Avicii, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
Rd Deep Radio
1 year ago


Reply
2 replies
Top is selected, so you'll see featured comments
Morning Lofi Hiphop | Coffee · Chill · Walk
1:10:30
ACCOUNT RESTORED!
I ♥ BLACK PEOPLE
Afroman Talks Hous...
1.6M views
Thatdaneshg uy's Youtub...
20K views
KKK Member Was NOT ...
13M views
BORA BORA
Bora Bora Paradise 4K Drone Footage | Discover Paradise ...
Ocean Blue Deep
3:10:21
Last To Leave Grocery Store, Wins $250,000
MrBeast
DAY 67
42:57
Avicii, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
2:47:41
Bob Marley Top 20 Songs - The Best Reggae Vibes Ever - Bob ...
BOB MA
1:16:56
New
Dubbed
[OZ] Sophisticated, Warm, Relaxing Jazz / Lounge | OZ ...
AI MUSIC AGENT OZ
1:24:47
New
Alok, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
IBIZA
2:25:06
I Got Humiliated in the Philippines Slums...
49:17
New
Best Latin Tropical Summer Fiesta Vibe Hits 2026
LATINO MIX
1:07:18
Morning Energy 2025 Tropical Chillout & Deep Hous...
Morning Energy
1:27:33
Best of R&B Classics 90s & 2000s ~ Old School R&B Musi...
90's Classic
3:03:51
Avicii, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
HOUSE RELAX
3:07:49
Best Songs of the Decade 2010 to 2019 Throwback Playlis...
55:11
all NF songs
NF
4:40:59
Alan Walker, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
IBIZA
2:16:52
Roadtrip 2000-2026 Best driving songs ~summer vibes ...
2000-2026 roadtrip
1:27:16
Lounge Deep House Vibes | Ultimate April Background ...
APRIL CHILL
3:33:13
Danesh Podcast Ep1: Iran, Epstein, My Court Cases, ...
DANESH PODCAST
1:00:26
Ibiza Summer Mix 2026 Best Of Tropical Deep House ...
IBIZA
LIVE
Michael Jackson
1:15:19
Maldives 4K Drone Footage | Crystal Clear Waters & ...
MALDIVES
LIVE


Why did you join the ...
5.9M views
Sri Lankan Girl Falls in ...
12M views
Truco para vender ...
48M views
Morning Music Music for an active and happy work day ...
Rema, Selena Gomez - Calm Down (1 HOUR LOOP)
CALM DOWN
Joe Dirt (2001)
1:31:12
it's 2010 and you're on a road trip | nostalgia vibes playlist
summer 2010s
2_30PM Drive
Afroman Interview
REVENGE: Sent to Jail the Girl who Drugged Me in Medellin ...
I FOUND THE GIRL WHO DRUGGED ME
Summer Mix 2025 Best Popular Songs 2025 Faded,...
IBIZA
Rihanna, Avicii, Justin Bieber, Kygo, Selena Gomez, Alok, ...
IBIZA
Relaxing Music for Heart Healing Stop Overthinking,...
Alex Warren - Ordinary (Lyrics)
Ordinary
Paul Blart: Mall Cop
MALL COP
Disgusted by India's Naughtiest Street!!
Alan Walker, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
Throwback R&B Classics Chris Brown, Usher, Mariah ...
THROWBACK R&B MIX
Calm Down - Rema (Lyrics) Ellie Goulding, Halsey,... MIX

Gmail

**Joey Camp <joeycamp2020@gmail.com>**

# DEMAND FOR IMMEDIATE AND PERMANENT REMOVAL OF ENTIRE YouTube CHANNEL @ThatDaneshGuy – MULTIPLE VIOLATIONS OF U.S. COPYRIGHT LAW, U.S. DEFAMATION LAW, AND COLOMBIAN CRIMINAL LAW (CALUMNIA AND INJURIA)

**YouTube Legal Support Team** <legal+2mo4jdiuvkf2x0z@support.youtube.com> Mon, Apr 27, 2026 at 7:53 AM
Reply-To: YouTube Legal Support Team <legal+2mo4jdiuvkf2x0z@support.youtube.com>
To: joeycamp2020@gmail.com

Hello,

Hello,

Thank you for contacting the YouTube Legal Operations Team. We will review your request as soon as possible. The reference number for your complaint is G44WWIMMOIDARAYQQ7NSPZ43L4.

Regards,
The YouTube Legal Operations Team

Regards,

The YouTube Legal Support Team

Gmail

Joey Camp <joeycamp2020@gmail.com>

## CEASE AND DESIST DEMAND – DEFAMATION/LIBEL, COPYRIGHT INFRINGEMENT, CRIMINAL CALUMNIA AND INJURIA (COLOMBIAN PENAL CODE), AND RELATED TORTS – IMMEDIATE REMOVAL AND RETRACTION REQUIRED

**ThatDanesh Guy** <thatdaneshguy@gmail.com> Mon, Apr 27, 2026 at 8:32 AM
To: Joey Camp <joeycamp2020@gmail.com>
Cc: Nick Chiappetta <nick@chiappettalegal.com>

I'm not reading all that shit. Stop contacting me.

On Mon, Apr 27, 2026, 9:28 AM Joey Camp <joeycamp2020@gmail.com> wrote:

**Danesh Noshirvan**
**ThatDaneshGuy**
**https://www.youtube.com/@ThatDaneshGuy**
**thatdaneshguy@gmail.com**

**Re: CEASE AND DESIST DEMAND – DEFAMATION/LIBEL, COPYRIGHT INFRINGEMENT, CRIMINAL CALUMNIA AND INJURIA (COLOMBIAN PENAL CODE), AND RELATED TORTS – IMMEDIATE REMOVAL AND RETRACTION REQUIRED**

Dear Mr. Noshirvan:

This letter constitutes a **formal cease-and-desist demand** and **pre-litigation notice**. You are hereby demanded to **immediately and permanently** cease and desist from all unlawful conduct described below.

You, Danesh Noshirvan (operating the YouTube channel @ThatDaneshGuy), published and continue to publish a podcast episode dated April 26 (English and any Spanish-language version) and related content that contains extensive false and defamatory statements about me, Joseph Anthony Camp. The content doxes me, accuses me of heinous crimes, incites harm against me in my community in Bogotá, Colombia (where I reside), and repeatedly uses my copyrighted intellectual property without authorization. This conduct violates United States civil law (defamation per se and copyright infringement) and Colombian criminal law (calumnia and injuria).

Active civil and criminal lawsuits/tort actions are currently pending against you in **Nebraska, Florida, and Colombia** arising from the identical pattern of conduct. This podcast directly exacerbates those pending matters and constitutes further actionable harm.

### I. DEFAMATION / LIBEL (U.S. LAW – DEFAMATION PER SE) AND CRIMINAL CALUMNIA / INJURIA (COLOMBIAN PENAL CODE ARTS. 220–222 AND ART. 221)

The podcast consists of sustained false statements of fact published to the public that accuse me of specific serious crimes and injure my honor and reputation. Under U.S. law these constitute **defamation per se (libel)**. Under Colombian law they constitute **calumnia** (false imputation of criminal conduct, punishable by 16–72 months imprisonment and fines) and **injuria** (attacks on honor and reputation,

punishable by 16–54 months imprisonment and fines), with additional civil remedies for damage to good name and honor.

**Specific false and actionable statements** (with timestamps from the attached full transcript, Exhibit A) include:

**A. Accusations of Sexual Crimes, Rape, Pedophilia, and Child Stalking (Defamation Per Se / Calumnia)**

- 00:00:06: "the most despicable, the most deplorable, the most rotting pile of shit rap bastard we'll ever talk about. Child stalker, rapist, stalker, pedophile, Joseph Anthony Camp."
- 00:01:06–00:01:50 (repeated): "Child stalker, rapist, stalker, pedophile."
- 00:01:50: "I'm going to Come find your family. Take your kids. And there's nothing you can do about it."
- 00:02:39–00:03:15: "he is currently hiding in Bogota, Colombia… a very dangerous individual because he does target children."
- 00:19:49: "Threats of sexual mutilation and rape to Nirshirvan and his children, including cutting a child's genitals off."
- 00:21:40–00:26:06: Detailed false rape allegations (got a woman drunk, took her to a hotel, strangled her, non-consensual sex, impregnation leading to abortion) accompanied by prison phone-call audio/transcript.

**B. Accusations of Multiple Felonies and Criminal History (Defamation Per Se / Calumnia)**

- 00:09:52–00:13:05: Recitation of alleged felonies including repeated burglary second degree (multiple counts), petite larceny, grand larceny, criminal possession of stolen property, assault felony, menacing, simulated weapon crimes against a person, harassment, intimidation, stalking, emotional distress, bribery, bribery of a public servant, attempted influence of a public servant, unlawful possession/use of another person's identification, contempt of court, probation violation, and fraud.

**C. Character Assassination, Sociopathic Accusations, and Incitement (Injuria + Defamation)**

- 00:05:35: "this is a person who is a sociopath, an admitted sociopath."
- 00:01:06: "for hire troll" who terrorizes people, "doxing people… with malice."
- 00:00:06, 00:08:01, 00:11:45: "most rotting pile of shit," "absolute loser," "complete pile of [expletive]," "hideous, most disturbing person to look at," "ugly human being he is on the inside."
- 00:03:15 & 00:06:32: Direct call to Bogotá residents to "know who is in your community just so your kids… could be safe" because I "target children," including threats to post school maps and false charges.
- *00:04:45–00:05:35: False claims of hacking photographs, inserting myself into them, and claiming* the victim was "in love with him" and "obsessed with him."

The **entire** podcast frames me as an active, ongoing danger in Bogotá, Colombia, defames me with the intention of inciting violence against me, and maliciously attacks me with absolutely no legitimacy while using creative generation tools such as AI to fabricate "evidence," and worse.

## II. COPYRIGHT INFRINGEMENT AND DMCA VIOLATIONS (17 U.S.C. §§ 501 AND 512)

I am the owner or exclusive rights holder of the following copyrighted intellectual property. You have repeatedly reproduced, displayed, distributed, and publicly performed these works **without my authorization or license**:

- My personal **mugshot photographs and arrest images** (displayed and mocked at approximately 00:07:13–00:08:01 and throughout).
- **Personal photographs and visual materials** (including hacked or unlawfully obtained images referenced at 00:04:45–00:05:35).
- **Audio clips and/or detailed transcriptions** of the alleged prison phone call (00:23:02–00:26:06).
- **Screenshots, readings, and reproductions of private text messages** (00:35:39–00:39:43).
- Comparative images, court-related visuals, and other original content used to defame me (including "Last Action Hero" comparison at 00:08:59 and additional visuals throughout the video and channel).

These acts constitute **direct copyright infringement** under 17 U.S.C. § 501.

## DEMAND FOR RELIEF

You, Danesh Noshirvan, must **immediately and permanently**:

1. Remove the **entire** April 26 podcast (English and any Spanish version), all related videos, shorts, community posts, and any other content containing the defamatory statements or my copyrighted material from the @ThatDaneshGuy YouTube channel and from **any and all** websites, platforms, or repositories under your control or direction.
2. Cease and desist from any further publication, republication, distribution, or dissemination of any defamatory statements about me or any use of my copyrighted intellectual property.
3. *Issue a public retraction and correction notice (in English and Spanish) on the @ThatDaneshGuy* channel and any other platforms where the content appeared, acknowledging the falsity of the statements, within **7 days**.
4. Preserve all records, analytics, viewer data, upload logs, communications, and evidence related to the podcast and channel for pending and future litigation.
5. Confirm in writing within **48 hours** that you have fully complied with all demands.

This demand does not constitute a waiver of any rights or claims. Failure to comply within **7 days** will result in:

- Immediate filing of **additional criminal complaints** in Colombia for calumnia (Arts. 220–222) and injuria (Art. 221) of the Colombian Penal Code.
- Pursuit of **civil damages, statutory copyright damages (up to $150,000 per infringed work), injunctive relief, attorney fees, and costs** in the pending Nebraska, Florida, and Colombian actions, as well as any new proceedings.
- Notification to relevant law enforcement and judicial authorities in both jurisdictions.

You are hereby on notice that continued publication will be treated as willful and malicious conduct, subjecting you to enhanced damages and penalties.

Sincerely,

**Joseph Anthony Camp**



**Joey Camp 2020**

CANDIDATE FOR PRESIDENT OF THE UNITED STATES OF AMERICA | CANDIDATE FOR UNITED STATES SENATE - COLORADO | CANDIDATE FOR UNITED STATES HOUSE OF REPRESENTATIVES - COLORADO, DISTRICT 1

Mobile: **720.454.5240**
Email: Joey@JoeyCamp2020.com
Website: **www.joeycamp2020.com**
Address: **@joeycamp2020 (for everything)**

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

Bogotá, D.C., 4 de junio de 2026.

Respetada señora, juez.
LILIANA CORREDOR MARTÍNEZ
***JUZGADO TERCERO (3) CIVIL DE CIRCUITO DE BOGOTÁ, D.C.***

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-31-03-003-2026-00293-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | PRONUNCIAMIENTO SOBRE NULIDAD DE LA ACCIÓN DE TUTELA Y CONSIDERACIONES SOBRE LA MEDIDAS ADOPTADAS |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. A81664904 de los Estados Unidos de América, en condición de accionante dentro del trámite de la referencia, por medio del presente escrito me permito poner a consideración del señor Juez una consideración de fondo de la mayor relevancia para la resolución del amparo, en los siguientes términos.

## I. ANTECEDENTES PROCESALES

Mediante providencia de 25 de mayo de 2026, el Juzgado Sexto (6°) Civil del Circuito de Bogotá declaró la nulidad de todo lo actuado en primera instancia dentro del presente trámite de tutela, al considerar que el conocimiento del asunto correspondía privativamente a los jueces civiles del circuito, en aplicación del inciso 3° del artículo 37 del Decreto 2591 de 1991, por estimar que el accionado señor **DANESH NOSHIRVAN** ostenta la condición de «*periodista digital*» o «*periodista de internet*». En consecuencia, ordenó la remisión del expediente a reparto para que sea asumido, en primera instancia, por un Juzgado Civil del Circuito de Bogotá.

El presente memorial se presenta para ser incorporado al expediente una vez surtido el reparto, con el propósito de exponer al juez de conocimiento una consideración esencial que debe orientar el análisis de fondo del amparo: que la condición de comunicador, influenciador digital o periodista que se atribuya al accionado, cualquiera sea su alcance, no constituye ni puede constituir una causal de inmunidad frente a la campaña de hostigamiento, difamación e instigación al delito que se ha desplegado en contra del accionante.

## II. CUESTIÓN PREVIA

Antes de abordar el fondo del asunto, resulta imperativo dejar sentada una precisión fáctica que constituye el presupuesto de todo el análisis que sigue: ninguna de las gravísimas imputaciones que el accionado ha difundido públicamente contra el señor Joseph Anthony Camp encuentra respaldo en decisión judicial alguna, ni en Colombia ni en los Estados Unidos de América.

En consecuencia, cuando el accionado afirma ante una audiencia masiva, y en lenguaje categórico, que el accionante es «*violador*», «*pedófilo*», «*acosador de menores*» o «*stalker*», no está reproduciendo el contenido de una decisión judicial en firme, ni informando sobre un hecho jurídicamente establecido, sino formulando imputaciones de su propia autoría carentes por completo de fundamento fáctico y jurídico.

Pretender que la imputación de delitos sexuales contra menores constituye «*debate de interés público*» cuando tales conductas jamás existieron es, precisamente, un acto dirigido a inducir deliberadamente a error a este Despacho.

Realizar este tipo de aseveraciones no constituye ejercicio legítimo de la libertad de expresión, sino difamación pura y simple, que el ordenamiento colombiano tipifica como calumnia, hostigamiento y otros delitos que ya fueron puestos en conocimiento de la Fiscalía General de la Nación. Y por tratarse de un contenido difundido sin restricción geográfica a través de plataformas digitales de alcance global, la vulneración de los derechos fundamentales del accionante a la honra, al buen nombre y a la dignidad humana adquiere una proyección nacional e internacional, que no se agota en el daño reputacional ya consumado, sino que genera una amenaza cierta, actual y evidente sobre su seguridad personal y la de su familia, agravada por el llamado expreso del accionado a movilizar a terceros en su contra en la ciudad de Bogotá, donde el accionante reside.

Lo único que entre las partes podría predicarse de naturaleza pública es la existencia de controversias jurídicas surtidas en los Estados Unidos; pero ninguna de ellas versa, ni remotamente, sobre pedofilia, violación, acoso sexual de menores, explotación sexual o terrorismo.

En un acto de lealtad procesal y de absoluta transparencia, el accionante manifiesta desde ya su disposición a poner a disposición de este Despacho la totalidad de la información relativa a las controversias jurídicas surtidas en los Estados Unidos de América, debidamente traducida, apostillada y revestida de cuantas formalidades el ordenamiento exija, en la oportunidad y términos que el juez constitucional estime pertinentes.

No obstante, el accionante estima necesario precisar que, hasta el momento, no ha incorporado dicha documentación por una razón estrictamente jurídica, y no por reticencia alguna: tales procesos no resultan relevantes para la resolución del asunto constitucional que aquí se debate.

## III. OBJETO DEL MEMORIAL

Sin que ello implique controvertir la providencia que definió la competencia, y aceptando, para los exclusivos efectos argumentativos de este escrito, la calificación del accionado como «*periodista digital*» o «*influencer*», el accionante se permite exponer al juez de conocimiento que

dicha calidad, lejos de excluir o atenuar la procedencia del amparo, no autoriza en modo alguno la comisión de conductas ilícitas, y que, por el contrario, dada la asimetría de poder comunicativo que la propia condición de *influencer* supone, agrava la situación de indefensión del accionante y refuerza la necesidad de protección constitucional.

La víctima de estas actuaciones es el señor Joseph Anthony Camp, con total independencia de las calidades que se estimen respecto del accionado.

**A) La condición de periodista, comunicador o *influencer* no confiere inmunidad ni autoriza la comisión de conductas ilícitas**

La libertad de expresión, aún en su ejercicio periodístico, no es un derecho absoluto. El artículo 20 de la Constitución Política, al tiempo que garantiza la libertad de expresar y difundir el pensamiento, consagra expresamente el derecho de rectificación y la responsabilidad social que recae sobre quien comunica. El artículo 13 de la Convención Americana sobre Derechos Humanos (Pacto de San José), si bien protege ampliamente la libertad de pensamiento y de expresión, dispone en su numeral 2 que su ejercicio está sujeto a responsabilidades ulteriores expresamente fijadas por la ley y necesarias para asegurar el respeto a los derechos o a la reputación de los demás. Y el artículo 19, numeral 3, del Pacto Internacional de Derechos Civiles y Políticos establece que el ejercicio de la libertad de expresión entraña deberes y responsabilidades especiales.

La propia Corte Constitucional, en la Sentencia SU-420 de 2019, reconoce con claridad que la libertad de expresión goza de un carácter prevalente, pero que ello no significa que carezca de límites, de modo que quien ejerce tal derecho queda sujeto a las consecuencias que conlleve la afectación de terceros, en particular cuando se emplean frases degradantes, insultos o vejaciones, o cuando el ejercicio del derecho se torna en un instrumento de persecución o acoso por la repetitividad y sistematicidad de las publicaciones lesivas.

Por otro lado, si en gracia de discusión se acepta la calificación del accionado como periodista digital, la consecuencia jurídica no es la atenuación de su responsabilidad, sino su agravamiento. El ejercicio periodístico, conforme a los estándares de la Corte Interamericana de Derechos Humanos y de la propia Corte Constitucional, conlleva deberes especiales de veracidad, imparcialidad y diligencia en la verificación de la información que se difunde. Quien se presenta ante el público como periodista asume el deber reforzado de distinguir entre hechos y opiniones, de verificar diligentemente la veracidad de las afirmaciones fácticas que comunica, y de abstenerse de presentar como ciertas imputaciones que carecen de sustento probatorio.

El accionado no ha verificado nada: imputa al accionante, como hechos ciertos y ante una audiencia masiva, la comisión de los delitos más graves del ordenamiento penal (pedofilia, violación, acoso sexual de menores, explotación sexual), sin que exista decisión judicial alguna que respalde tales imputaciones. La atribución de la comisión de un delito constituye, conforme a la jurisprudencia constitucional, una afirmación de hecho que, de ser falsa, no encuentra amparo alguno en la libertad de expresión y configura, además, el delito de calumnia. Invocar la condición de periodista para sostener tales imputaciones, sin verificación ni sustento, no protege al accionado: lo expone con mayor rigor, pues delata el incumplimiento flagrante de los deberes que el propio oficio periodístico le impondría.

Existe consenso en el derecho constitucional e internacional de los derechos humanos en que determinadas categorías de discurso no están amparadas por la libertad de expresión, precisamente por su aptitud para lesionar derechos de terceros o bienes jurídicos esenciales. Entre ellas se cuentan la difamación (calumnia e injuria, tipificadas en los artículos 220 a 222 y 221 del Código Penal), la incitación o instigación pública a la comisión de delitos (artículo 348 del Código Penal), las amenazas contra la vida y la integridad personal (artículo 347 del Código Penal) y la divulgación no autorizada de datos personales (artículo 269F del Código Penal y artículo 15 de la Constitución Política).

La conducta del accionado encuadra, simultáneamente, en todas estas categorías no protegidas. No se trata del ejercicio de un derecho fundamental sometido a un análisis de ponderación: se trata de conductas que el ordenamiento jurídico tipifica como delitos y que, por definición, escapan al ámbito de protección de la libertad de expresión. Ningún comunicador, periodista o influencer (por amplia que sea su audiencia o por relevante que se considere su actividad) está autorizado para amenazar a una persona y a su familia, para incitar a una ciudad entera a actuar contra un individuo identificado con nombre y apellido, o para imputarle falsamente delitos sexuales contra menores.

La misma definición de periodista que la providencia de 25 de mayo de 2026 trae a colación describe al periodista como quien observa, describe, documenta y analiza los acontecimientos con el propósito de sistematizar la información y reunir hechos y análisis para informar a la sociedad. Nada de eso describe la conducta del accionado en relación con el accionante.

Lo que el accionado ha desplegado no es una labor de información a la sociedad sobre un asunto de interés público, sino una campaña personal, sostenida y dolosa de destrucción de un individuo determinado. Lo acredita el contenido mismo de sus publicaciones: el llamado deliberado a difundir su podcast «*en Bogotá para que toda la ciudad sepa quién es*» el accionante; la amenaza directa de «*ir a buscar a su familia y tomar a sus hijos*»; la calificación reiterada del accionante como «*violador*», «*pedófilo*» y «*acosador de menores*»; y la instrumentalización del más sensible de los argumentos, la supuesta protección de la infancia, para movilizar a terceros en contra de una persona concreta. Esa actividad no es periodismo bajo ninguna definición conocida: es hostigamiento dirigido, y como tal, queda por completo fuera del ámbito de protección de la libertad de expresión, sea quien sea su autor.

**B) <u>La condición de influencer agrava la situación de la víctima.</u>**

La Sentencia SU-420 de 2019 establece que el análisis de procedencia de la tutela en estos casos exige valorar quién comunica, respecto de quién se comunica y cómo se comunica, y que la asimetría de poder comunicativo entre las partes es un factor determinante de la situación de indefensión que habilita el amparo contra particulares.

En el presente asunto, esa asimetría es máxima: de un lado, un comunicador con cuentas verificadas en Instagram, Threads, Substack y YouTube, con audiencias que superan los miles de seguidores y reacciones por publicación, y con capacidad técnica y económica para producir contenido difamatorio de manera profesional y recurrente (incluido un podcast con marca propia,

numeración de episodios y dominio web); del otro, una persona natural, sin plataforma, sin audiencia, materialmente incapaz de contrarrestar el flujo difamatorio con medios propios.

Cuanto mayor es el poder comunicativo del agresor, mayor es la indefensión de la víctima y más intensa la protección constitucional que el ordenamiento le debe. La condición de influencer del accionado, por tanto, no es un escudo, es la confirmación de la situación de indefensión que torna procedente el amparo.

El análisis constitucional del amparo debe centrarse en los derechos fundamentales de la víctima, y no en las calidades del agresor. Cualquiera sea la denominación que se asigne al accionado, lo cierto, probado y verificable es que el señor Joseph Anthony Camp ha visto vulnerados de manera grave, sistemática y continuada sus derechos fundamentales a la honra, al buen nombre, a la dignidad humana, a la intimidad personal, a la integridad psíquica (acreditada mediante diagnóstico clínico formal de Trastorno de Estrés Postraumático directamente atribuible a la conducta del accionado) y a la seguridad personal, esta última hoy en riesgo concreto por la incitación que el accionado ha dirigido contra él en la ciudad de Bogotá, donde reside.

La protección constitucional de estos derechos no puede hacerse depender de la categoría profesional o comunicativa que se atribuya a quien los vulnera. Sostener lo contrario equivaldría a crear una categoría de ciudadanos comunicadores o *influencer* autorizados para difamar, amenazar e instigar impunemente, y una categoría de víctimas, quienes son objeto de sus campañas, desprovistas de toda protección.

Esa conclusión es abiertamente contraria al artículo 2 de la Constitución Política, que consagra como fin esencial del Estado la protección de todas las personas en su vida, honra, bienes, creencias y demás derechos y libertades.

**C) <u>Análisis sobre la respuesta del accionado</u>.**

El accionado formula en su respuesta, en esencia, que: (i) su contenido se refiere a «*asuntos de interés público*»; (ii) que sus expresiones constituyen «*opiniones, comentarios, expresiones retóricas, sátira y referencias a acusaciones públicas*» y no afirmaciones fácticas falsas; (iii) que utilizó calificadores como «*aparentemente*» o «*según*» para indicar que la información provenía de reportes públicos; (iv) que las pretensiones del accionante equivaldrían a «*censura previa y expresión forzada*»; (v) que existen otros mecanismos de defensa idóneos (denuncias penales, reportes ante plataformas), por lo que el amparo es improcedente; (vi) que no actuó con intención maliciosa ni desprecio temerario hacia la verdad; y (vii) que el verdadero agresor es el accionante, quien le envía correos electrónicos diariamente en una conversación unilateral. Cada una de estas defensas será analizada y refutada a continuación, con apoyo en el material probatorio obrante en el expediente y en la conducta documentada del propio accionado.

> La doctrina constitucional sobre libertad de expresión ha sido constante al reservar la categoría reforzada de «discurso de interés público» para asuntos de relevancia colectiva: el ejercicio del poder público, la conducta de funcionarios o personas con proyección pública en relación con sus funciones, las decisiones que afectan a la comunidad, entre otros. El señor Joseph Anthony Camp, en cambio, es una persona natural, sin proyección pública

relevante en Colombia, sin cargo público alguno, sin trayectoria política o mediática que justifique someter su honra a un escrutinio reducido.

Además, conviene precisar: la mera existencia de «acusaciones públicas» no convierte a una persona en figura pública. Si así fuera, bastaría con acusar públicamente a alguien para reducir su umbral de protección constitucional, lo que constituiría una grave inversión del principio de presunción de inocencia y del derecho al buen nombre

La distinción entre opiniones (juicios de valor, ampliamente protegidos) y afirmaciones de hecho (sujetas al deber de veracidad y susceptibles de calumnia cuando son falsas) es uno de los pilares de la doctrina constitucional sobre libertad de expresión. Las afirmaciones del accionado contra el señor Camp no son opiniones: son imputaciones precisas, específicas y verificables de la comisión de delitos concretos, expresadas además en lenguaje afirmativo, sin matices y con detalles fácticos.

No es una opinión decir «Stalker Joey Camp» como título de un episodio de podcast. No es sátira afirmar «*rapist and pedo Joseph Anthony Camp*». No es hipérbole retórica narrar que el accionante «*strangled and raped his victim*» con detalles sobre el escenario, el modus operandi y las consecuencias del supuesto delito. No es comentario protegido decir «He targets children». No es ironía afirmar «*I'm going to come find your family. Take your kids. And there's nothing you can do about it*». Cada una de estas expresiones, plenamente documentadas en el expediente, constituye una afirmación de hecho sobre la comisión de delitos por una persona identificada con nombre y apellido. Ningún operador razonable del lenguaje las leería como opiniones o ejercicios de sátira.

El accionado alega que el accionante acudió a denuncias penales y reportes ante plataformas, lo que tornaría improcedente la tutela. Este argumento se contesta con la documentación que ya obra en el expediente y con el material aportado a lo largo del trámite:

Primero, los reportes ante plataformas (Instagram y Substack), realizados sistemáticamente desde 2022, no produjeron resultado alguno: el contenido permanece, se amplía y se replica. Tras cuatro años de reportes ignorados, no puede sostenerse que ese mecanismo sea idóneo y eficaz.

Segundo, la denuncia penal radicada bajo NUNC 110016000050202653891 ante la Fiscalía 588 Local de Bogotá ha confirmado, mediante constancia oficial de 11 de mayo de 2026 firmada por el servidor público FABIO EMEL LOZANO BLANCO, que la conducta del accionado continúa «sistemática, diaria e ininterrumpidamente». A pesar de la denuncia, el accionado no compareció a la diligencia de conciliación Preprocesal y no justificó su inasistencia, lo que llevó a la Fiscalía a agotar el requisito de procedibilidad del artículo 522 del CPP y a remitir el asunto a la unidad correspondiente para inicio de la acción penal. La vía penal, así, está formalmente activada, pero su lentitud estructural es manifiestamente incompatible con la urgencia de la vulneración. La existencia de un mecanismo penal lento no es óbice para la procedencia del amparo cuando el daño es continuado, irreparable y se agrava por horas

Alega el accionado que la tutela «*caracteriza incorrectamente*» como afirmaciones fácticas lo que serían opiniones, comentarios, expresiones retóricas o sátira. No es así. Afirmar que una persona es «*violador*», «*pedófilo*», «*acosador de menores*», «*stalker*» o «*terrorista*» no es emitir un juicio de valor: es imputar hechos concretos, de connotación delictiva, susceptibles de verificación y, en este caso, rotundamente falsos. La opinión versa sobre lo opinable; la calidad de pedófilo o de violador no es materia de opinión, sino de prueba, y solo puede afirmarse de quien ha sido declarado responsable por juez competente. No existe sátira que convierta a una persona en autor de un delito sexual, ni hipérbole retórica capaz de transmutar una acusación falsa en comentario protegido.

Aduce el accionado que sus declaraciones se limitaron a referir «*acusaciones, reportajes o publicaciones realizadas por terceros*», y que empleó expresiones como «*aparentemente*» o «*según*» para señalar que la información no provenía de su conocimiento directo. La afirmación es falsa y encierra una circularidad que el Despacho debe advertir: ningún reportaje, investigación periodística ni publicación seria ha abordado jamás al señor Joseph Anthony Camp en relación con pedofilia, acoso sexual de menores u otros delitos sexuales. Los únicos que han construido y difundido esa narrativa falsa son el propio accionado y la audiencia que él moviliza.

Sostiene el accionado que el haber acudido el accionante a denuncias penales y a reportes ante las plataformas demuestra la existencia de otros medios de defensa y hace improcedente el amparo. El argumento desconoce la naturaleza y finalidad de cada vía. La acción penal persigue la sanción del responsable; no está concebida ni resulta idónea para obtener, con la urgencia que el caso reclama, la cesación inmediata de la conducta lesiva, la rectificación de lo falsamente afirmado y la protección de los derechos a la honra, al buen nombre, a la dignidad y a la seguridad personal del afectado, que se vulneran de manera actual y continuada.

La existencia de una querella penal en curso no desplaza la tutela cuando lo que está en juego es el cese de una afectación iusfundamental que se renueva con cada publicación. Antes bien, que el daño persista pese a los mecanismos ya intentados confirma su ineficacia para detener la lesión y refuerza la procedencia del amparo

**D) La protección solicitada no constituye censura.**

Califica el accionado las pretensiones como «*censura previa*» y «*expresión forzada*», incompatibles con la libertad de expresión. La objeción confunde categorías. La censura previa es la prohibición de difundir una expresión antes de que se produzca; aquí, en cambio, las expresiones ya fueron difundidas y son ilícitas, por lo que ordenar su cesación y la rectificación de lo falsamente imputado no es censura, sino el remedio que el propio ordenamiento constitucional contempla frente a la información falsa. La rectificación en condiciones de equidad y el cese de la conducta lesiva no «*fuerzan*» la opinión de nadie: restablecen la verdad frente a una imputación deliberadamente falsa.

La libertad de expresión es un derecho de la mayor jerarquía, pero no ampara la calumnia, el hostigamiento ni la incitación, y su invocación no puede operar como salvoconducto para perpetuar la lesión.

Finalmente, niega el accionado haber actuado con intención maliciosa y asegura no haber publicado información falsa de manera consciente ni con desprecio temerario por la verdad. Sus propios actos lo contradicen. Quien formaliza una denuncia penal sustentada en hechos falsos, y quien insta públicamente a sus seguidores a tomar acciones contra una persona determinada en la ciudad donde reside, no actúa con la diligencia de quien informa de buena fe, sino con el propósito deliberado de causar daño. El dolo no se acredita por confesión del difamador, sino por la entidad y la dirección de su conducta; y aquí la conducta revela, de manera inequívoca, conocimiento de la falsedad y ánimo de dañar.

## IV. PETICIÓN

Con fundamento en lo expuesto, se solicita respetuosamente al señor Juez de conocimiento que se sirva:

**PRIMERO: TENER EN CUENTA** las consideraciones expuestas en el presente memorial al momento de resolver, en primera instancia, la acción de tutela de la referencia, y, en particular, que la condición de periodista digital o *influencer* atribuida al accionado no constituye causal de inmunidad ni excluye la procedencia del amparo.

**SEGUNDO: VALORAR INTEGRALMENTE** la totalidad del acervo probatorio acumulado en el expediente, incluyendo los escritos de impugnación y los cinco (5) alcances sucesivos, las capturas de pantalla de las publicaciones del accionado, la admisión expresa del accionado sobre el cese y desistimiento, la certificación clínica del profesional tratante del accionante, y la constancia oficial de la Fiscalía 588 Local de Bogotá que corrobora el carácter sistemático, diario e *ininterrumpido de la vulneración*.

**TERCERO: CONSIDERAR LA ADOPCIÓN DE MEDIDAS PROVISIONALES URGENTES** conforme al artículo 7 del Decreto 2591 de 1991, dada la naturaleza actual, continuada, dolosa y deliberada de la vulneración, y el riesgo concreto que se cierne sobre la integridad personal del accionante en la ciudad de Bogotá.

**CUARTO: TUTELAR** los derechos fundamentales a la honra, al buen nombre, a la dignidad humana, a la intimidad personal, a la integridad psíquica, a la seguridad personal y a la protección de datos personales del señor **JOSEPH ANTHONY CAMP**, y, en consecuencia, ordenar al accionado la cesación inmediata de las publicaciones difamatorias, la eliminación definitiva del contenido lesivo, la rectificación pública en condiciones de equidad y la abstención de nuevas conductas vulneradoras, conforme a las pretensiones formuladas a lo largo del trámite.

## V. NOTIFICACIONES

**ACCIONANTE:**

**JOSEPH ANTHONY CAMP** recibirá notificaciones en los correos electrónicos: legal@mglegal.global y alejandro.isaza@mglegal.global, o en la dirección física ubicada en la ciudad de Bogotá D.C., Calle 108 No. 15 – 41, Oficina 202, Edificio Villa Ángela.

**ACCIONADO:**

**DANESH NOSHIRVAN**, conocido como «*Thatdaneshguy*», ciudadano estadounidense, identificado con el correo electrónico thatdaneshguy@gmail.com. Canal de YouTube: @ThatDaneshGuy. Cuentas verificadas de Instagram y Threads: @thatdaneshguy. Perfil de Substack: «*Danesh*».

Atenta y cordialmente,

______________________________

**JOSEPH ANTHONY CAMP**
Pasaporte No. A81664904 de los Estados Unidos de América
Accionante

MG LEGAL

Alejandro Isaza <alejandro.isaza@mglegal.global>

## Respuesta Acción de Tutela No. 11001310300320260029300 – Danesh Noshirvan"

1 mensaje

**ThatDanesh Guy** <thatdaneshguy@gmail.com> 29 de mayo de 2026 a las 8:24 a.m.
Para: PressB@state.gov, ACSBogota@state.gov, noti.judiciales@migracioncolombia.gov.co, judicial@cancilleria.gov.co, contactenos@cancilleria.gov.co, juridicanotificacionestutela@fiscalia.gov.co, jur.notificacionesjudiciales@fiscalia.gov.co, joey@joeycamp2020.com, notificacion.tutelas@policia.gov.co, caivirtual@correo.policia.gov.co, ponal.csirt1@policia.gov.co, ler@substackinc.com, security@substackinc.com, JOAQUINSME@hotmail.com, support@fb.com, fbbmbogota@bakermckenzie.com, security@mail.instagram.com, support@instagram.com, ler@support.facebook.com, phish@fb.com, legal@mglegal.global, "alejandro.isaza@mglegal.global" <alejandro.isaza@mglegal.global>

Honorable Juzgado Tercero Civil del Circuito de Bogotá D.C.

Ref.: Acción de tutela No. 11001310300320260029300

Yo, Danesh Noshirvan, presento respetuosamente la siguiente respuesta frente a la acción de tutela interpuesta por el señor Joseph Anthony Camp.

En primer lugar, niego haber vulnerado los derechos constitucionales del accionante. Mis publicaciones y comentarios se refieren a asuntos de interés público relacionados con una persona que ha sido objeto de controversia pública, reportajes, acusaciones públicas y debate abierto en múltiples plataformas y jurisdicciones.

La tutela intenta caracterizar incorrectamente opiniones, comentarios, expresiones retóricas, sátira y referencias a acusaciones públicas como si fueran afirmaciones fácticas falsas realizadas con conocimiento de falsedad. Mi contenido constituye expresión protegida y comentarios sobre asuntos que ya eran objeto de discusión pública en medios, publicaciones digitales y redes sociales.

En la medida en que algunas declaraciones hicieron referencia a acusaciones, reportajes o publicaciones realizadas por terceros, dichas referencias no fueron presentadas como decisiones judiciales ni como hechos establecidos personalmente por mí. En múltiples ocasiones se utilizaron expresiones como "aparentemente", "según", o frases similares precisamente para indicar que la información provenía de reportes públicos o alegaciones de terceros y no de conocimiento personal directo.

El accionante solicita además medidas extraordinariamente amplias que equivaldrían a censura previa y expresión forzada, incluyendo prohibiciones sobre comentarios futuros y la obligación de publicar retractaciones bajo imposición judicial. Tales solicitudes son incompatibles con los principios fundamentales de libertad de expresión y debate público abierto.

Adicionalmente, el propio accionante reconoce haber acudido previamente a denuncias penales, reportes ante plataformas digitales y otros mecanismos legales. Esto demuestra la existencia de otros medios de defensa y hace improcedente el uso excepcional de la acción de tutela como mecanismo para censurar expresiones y comentarios realizados principalmente fuera de Colombia por un ciudadano estadounidense en plataformas digitales globales.

Asimismo, muchas de las expresiones cuestionadas constituyen claramente opiniones, críticas, hipérboles retóricas o comentarios protegidos, los cuales no pueden verificarse objetivamente como afirmaciones fácticas falsas. El desacuerdo con una opinión o crítica no convierte automáticamente una expresión protegida en una violación constitucional.

Niego haber actuado con intención maliciosa de causar un daño ilícito al accionante. Mis publicaciones abordaron asuntos que ya se encontraban en circulación y debate público. No publiqué información falsa de manera consciente ni con desprecio temerario hacia la verdad.

En caso de que el Despacho considere necesaria alguna aclaración respecto de una afirmación específica, manifiesto mi disposición a aportar contexto sobre las fuentes públicas, reportajes y materiales referenciados. Sin embargo, me opongo respetuosamente a cualquier orden de censura general, expresión forzada, eliminación de comentarios lícitos o restricciones sobre futuras expresiones.

Por las razones expuestas, solicito respetuosamente que se niegue la presente acción de tutela y las pretensiones formuladas por el accionante.

Respetuosamente,

Danesh Noshirvan
"ThatDaneshGuy"

El accionante busca acosarme. Adjunto acciones legales relevantes para contextualizar la situación. También adjunto una captura de pantalla de mi carpeta de spam que demuestra que el accionante me envía correos electrónicos varias veces al día en una conversación unilateral en la que yo no participo.

Asimismo, adjunto algunos de los correos electrónicos más recientes enviados por el accionante. Nunca he respondido a sus mensajes.

Como puede observar su señoría, este no es el comportamiento de una víctima, sino el de una persona que actúa como agresor.

**5 archivos adjuntos**



**Exhibit D.jpg**
491K

**exhibit A.PDF**
83K

**exhibit C.PDF**
82K

**exhibit B.PDF**
91K

**the lawsuit (1).pdf**
9236K

Alejandro Isaza <alejandro.isaza@mglegal.global>

# ALCANCE A ESCRITO DE IMPUGNACIÓN DE TUTELA

1 mensaje

**Alejandro Isaza** <alejandro.isaza@mglegal.global> 27 de abril de 2026 a las 7:05 p.m.
Para: j06cctobta@cendoj.ramajudicial.gov.co
CCO: MGLegal Área Legal <legal@mglegal.global>

Bogotá, D.C., 28 de abril de 2026.

Respetado(a) señor(a), juez.
**JUZGADO SEXTO (6) CIVIL DEL CIRCUITO DE BOGOTÁ, D.C.**

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-41-89-011-2026-00619-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | ALCANCE A IMPUGNACIÓN FALLO DE PRIMERA INSTANCIA |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. **A81664904** de los Estados Unidos de América, por medio del presente escrito doy segundo alcance al recurso de impugnación interpuesto contra el fallo de primera instancia proferido el catorce (14) de abril de 2026, con el fin de poner en conocimiento del juez de segunda instancia hechos sobrevinientes de la máxima gravedad y relevancia constitucional, ocurridos con posterioridad a la radicación de la impugnación y de su primer alcance, en los términos del escrito adjunto.

Cordialmente,

**JOSEPH ANTHONY CAMP**
Pasaporte No. A81664904 de Estados Unidos de América

**SEGUNDO ALCANCE JOSEPH CAMP.pdf**
4144K

Bogotá, D.C., 28 de abril de 2026.

Respetado(a) señor(a), juez.
**JUZGADO SEXTO (6) CIVIL DE CIRCUITO DE BOGOTÁ, D.C.**

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-41-89-011-2026-00619-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | ALCANCE A IMPUGNACIÓN FALLO DE PRIMERA INSTANCIA |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. **A81664904** de los Estados Unidos de América, por medio del presente escrito doy segundo alcance al recurso de impugnación interpuesto contra el fallo de primera instancia proferido el catorce (14) de abril de 2026, con el fin de poner en conocimiento del juez de segunda instancia hechos sobrevinientes de la máxima gravedad y relevancia constitucional, ocurridos con posterioridad a la radicación de la impugnación y de su primer alcance, en los siguientes términos.

El presente escrito tiene por objeto poner en su conocimiento la respuesta textual de accionado a la solicitud formal de retracción y cese de todo tipo de publicaciones en mi contra. Esta respuesta, por si sola, constituye la prueba definitiva de que el requisito de subsidiariedad impuesto por el a quo es materialmente inutil.

Por otro lado, debo poner de presente que el accionado publicó el 26 de abril de 2026 un nuevo y extenso episodio de podcast de contenido difamatorio en mi contra en el que nuevamente me señala ante una audiencia masiva y acusa de la comisión de los delitos de la más alta gravedad social y penal: pedofilia, acoso sexual de menores, violación, explotación sexual comercial, supremacismo racial y, en la denuncia formulada ante la Policía Nacional el 18 de noviembre de 2025, pornografía con menores de edad.

Esta campaña sistemática desplegada por el accionado ha tenido impacto significativo en mi vida, al punto de que terceros en territorio colombiano están compartiendo deliberadamente el contenido lesivo en perjuicio directo de mi integridad personal, emocional y social.

El 27 de abril de 2026, el accionado señor DANESH NOSHIRVAN respondió, desde su correo electrónico thatdaneshguy@gmail.com, al requerimiento formal de cese y desistimiento (cease and desist) remitido por el señor Camp el mismo día, mediante la siguiente respuesta textual, que se reproduce íntegra por su brevedad y elocuencia: *«I'm not reading all that shit. Stop contacting me»* (Traducción: «No voy a leer toda esa mierda. Deje de contactarme».)

Esta respuesta es, para todos los efectos jurídicos del presente recurso, la prueba que el juez de primera instancia echó de menos y cuya ausencia motivó la denegación del amparo. Sin embargo, lo que acredita no es que la solicitud previa de retractación fuese un requisito válido cuyo cumplimiento habría cambiado el curso de la vulneración, sino exactamente lo contrario: confirma que el accionado jamás tuvo la menor intención de retractarse, corregir, enmendar o eliminar sus publicaciones, y que la exigencia ritual de esa solicitud era una carga absolutamente inane cuyo único efecto material ha sido dilatar la protección de los derechos fundamentales del hoy peticionario.

El accionado ha respondido a cada una de estas gestiones con una única conducta consistente: la intensificación de la vulneración. Reportes privados (2022-2025), silencio procesal frente a la tutela (marzo 2026), burla pública del fallo (16 de abril), solicitud formal del apoderado (20 de abril), nuevo video difamatorio (21 de abril), podcast completo dedicado a la difamación (26 de abril), y negativa expresa y burlesca al requerimiento de cese (27 de abril).

Esta situación se empeora debido a que el 26 de abril de 2026, cinco días después de radicada la impugnación y mientras el presente recurso se encuentra en trámite ante el juez de segunda instancia, el accionado publicó en su canal de YouTube @ThatDaneshGuy un extenso episodio de podcast dedicado íntegramente a la difamación.

El podcast no es una opinión ni un ejercicio legítimo de libertad de expresión. Es un acto deliberado, planeado y ejecutado con la intencionalidad dolosa de causar el mayor daño posible a mi vida, honra, buen nombre, dignidad e integridad personal. Su contenido va más allá de la difamación: configura incitación al hostigamiento en la comunidad de residencia del accionante, amenazas contra su familia, y divulgación masiva de datos personales.

Resulta imperativo que el juez de segunda instancia evalúe el requisito de subsidiariedad fijado por la SU-420 de 2019 a la luz del contexto integral del caso y no como una formalidad abstracta y desvinculada de la realidad. El presupuesto de solicitud previa de retractación tiene sentido cuando la conducta del emisor admite, razonablemente, la posibilidad de autocomposición; cuando quien publicó un contenido lesivo lo hizo de manera inadvertida, impulsiva, equivocada o sin plena conciencia de su alcance, y existe expectativa razonable de que una solicitud directa conduzca a la enmienda.

Respetuosamente me permito poner de presente al señor juez de segunda instancia que los perjuicios que se están ocasionando por la ausencia de una orden judicial oportuna de protección son gravísimos y se profundizan con cada día que transcurre sin intervención.
La Fiscalía General de la Nación, pese a conocer la denuncia penal radicada bajo el número único de noticia criminal 110016000050202653891, no ha adoptado hasta la fecha medida

alguna que detenga la conducta del accionado, y el ritmo propio de la jurisdicción penal resulta manifiestamente incompatible con la urgencia de la protección que mis derechos fundamentales demandan.

Mientras las instancias ordinarias avanzan, la campaña difamatoria continúa expandiéndose, ahora con terceros en Colombia compartiendo activamente el contenido. Temo fundadamente por mi integridad personal y la de mi entorno, particularmente ante las amenazas proferidas por el accionado en su podcast del 26 de abril, en el que anuncia su intención de localizar a mi familia y señalarme ante la comunidad colombiana como un peligro para los menores de edad.

**ANEXOS.**

Adjunto al presente alcance lo siguiente:

1. el enlace del video de Youtube referenciado:

https://www.youtube.com/watch?v=wsjeXIwnWE0

2. Captura de pantalla de comentarios que señalan que replicarán el contenido de las publicaciones:




3. Requerimiento hecho a YouTube para que se eliminen los videos publicados (adjunto)

4. Comentario al video solicitando retractación y eliminación del mismo. (adjunto captura de pantalla).

Atenta y cordialmente,

______________________________

**JOSEPH ANTHONY CAMP**
Pasaporte No. A81664904 de Estados Unidos de América
Accionante

YouTube thatdaneshguy + Create




daneshfoundyou.com

**Danesh Podcast Episode 8 - Stalker Joey Camp**

ThatDaneshGuy 186K subscribers Join Subscribe 106 Share Ask Save

858 views Streamed 21 hours ago Danesh Podcast
Today we're going over former Garramone Plastic Surgery employee and stalker, Joseph Anthony Camp. He is a for hire troll who was paid by Jennifer Couture and Ralph Garramone to terroriz ...more

Live chat replay
See what others said about this video while it was live.

**5 Comments** Sort by

Add a comment...

@CampJosephA 0 seconds ago
This letter serves as (1) a formal DMCA takedown notice pursuant to 17 U.S.C. § 512, (2) notice of defamation/libel under U.S. law, and (3) notice of criminal violations of Colombian law (calumnia and injuria) occurring where I reside in Bogotá, Colombia. The entire April 26 podcast (English and any Spanish-language version) and all related content on the channel @ThatDaneshGuy falsely accuse me of heinous crimes, attack my honor and reputation, dox me, incite harm against me in my local community, and repeatedly use my copyrighted intellectual property without authorization.
Active civil and criminal lawsuits/tort actions are currently pending against Danesh Noshirvan (ThatDaneshGuy) in Nebraska, Florida, and Colombia arising from the identical pattern of conduct. This podcast directly exacerbates those pending matters.
I. DEFAMATION / LIBEL (U.S. LAW – DEFAMATION PER SE) AND CRIMINAL CALUMNIA / INJURIA (COLOMBIAN PENAL CODE ARTS. 220–222 AND ART. 221)
The podcast consists of sustained false statements of fact published to the public that accuse me of specific serious crimes and injure my honor and reputation. Under U.S. law these constitute defamation per se (libel). Under Colombian law they constitute calumnia (false imputation of criminal conduct, punishable by 16–72 months imprisonment and fines) and injuria (attacks on honor and reputation, punishable by 16–54 months imprisonment and fines), with additional civil remedies for damage to good name and honor.
Specific false and actionable statements (with timestamps from the attached full transcript, Exhibit A) include:
A. Accusations of Sexual Crimes, Rape, Pedophilia, and Child Stalking (Defamation Per Se / Calumnia)
[illegible]: "the most despicable, the most deplorable, the most rotting pile of shit rap bastard we'll ever talk about. Child stalker, rapist, stalker, pedophile, Joseph Anthony Camp."
[illegible]–[illegible] (repeated): "Child stalker, rapist, stalker, pedophile."
[illegible]: "I'm going to Come find your family. Take your kids. And there's nothing you can do about it."
[illegible]–[illegible]: "he is currently hiding in Bogota, Colombia... a very dangerous individual because he does target children."
[illegible]: "Threats of sexual mutilation and rape to Nirshirvan and his children, including cutting a child's genitals off."
[illegible]–[illegible]: Detailed false rape allegations (got a woman drunk, took her to a hotel, strangled her, non-consensual sex, impregnation leading to abortion) accompanied by prison phone-call audio/transcript.
B. Accusations of Multiple Felonies and Criminal History (Defamation Per Se / Calumnia)
[illegible]–[illegible]: Recitation of alleged felonies including repeated burglary second degree (multiple counts), petite larceny, grand larceny, criminal possession of stolen property, assault felony, menacing, simulated weapon crimes against a person, harassment, intimidation, stalking, emotional distress, bribery, bribery of a public servant, attempted influence of a public servant, unlawful possession/use of another person's identification, contempt of court, probation violation, and fraud.
C. Character Assassination, Sociopathic Accusations, and Incitement (Injuria + Defamation)
[illegible]: "this is a person who is a sociopath, an admitted sociopath."
[illegible]: "for hire troll" who terrorizes people, "doxing people... with malice."
[illegible], [illegible], [illegible]: "most rotting pile of shit," "absolute loser," "complete pile of [expletive]," "hideous, most disturbing person to look at," "ugly human being he is on the inside."
[illegible] & [illegible]: Direct call to Bogota residents to "know who is in your community just so your kids... could be safe" because I "target children," including threats to post school maps and false charges.
[illegible]–[illegible]: False claims of hacking photographs, inserting myself into them, and claiming the victim was "in love with him" and "obsessed with him."
The entire podcast frames me as an active, ongoing danger in Bogotá, Colombia, defames me with the intention of inciting violence against me, and maliciously attacks me with absolutely no legitimacy while using creative generation tools such as AI to fabricate "evidence", and worse.
II. COPYRIGHT INFRINGEMENT AND DMCA VIOLATIONS (17 U.S.C. §§ 501 AND 512)
I am the owner or exclusive rights holder of the following copyrighted intellectual property. The podcast and channel repeatedly reproduce, display, distribute, and publicly perform these works without my authorization or license:
My personal mugshot photographs and arrest images (displayed and mocked at approximately [illegible]–[illegible] and throughout).
Personal photographs and visual materials (including hacked or unlawfully obtained images referenced at [illegible]–[illegible]).
Audio clips and/or detailed transcriptions of the alleged prison phone call ([illegible]–[illegible]).
Screenshots, readings, and reproductions of private text messages ([illegible]–[illegible]).
Comparative images, court-related visuals, and other original content used to defame me (including "Last Action Hero" comparison at [illegible] and additional visuals throughout the video and channel).
These acts constitute direct copyright infringement under 17 U.S.C. § 501. YouTube has actual knowledge of the infringement through this detailed notice and is required to act expeditiously to remove or disable access to the infringing material under 17 U.S.C. § 512(c).
DEMAND FOR RELIEF
YouTube / Google LLC must immediately and permanently:
Remove the entire @ThatDaneshGuy channel and all videos, shorts, community posts, and related content (including the April 26 podcast and any Spanish version).
Disable access to all defamatory, criminally actionable, and infringing material worldwide.
Cease any further reproduction, distribution, or use of my copyrighted intellectual property.
Issue a public retraction and correction notice on the channel within 7 days.
Preserve all records, analytics, viewer data, upload logs, and communications related to the channel for pending and future litigation.
This DMCA notice fully complies with 17 U.S.C. § 512(c)(3). Please confirm receipt and full compliance in writing within 48 hours.
Failure to comply within 7 days will result in:
Immediate filing of criminal complaints in Colombia for calumnia (Arts. 220–222) and injuria (Art. 221) of the Colombian Penal Code.
Pursuit of civil damages, statutory copyright damages (up to $150,000 per infringed work), injunctive relief, and attorney fees in U.S. and Colombian courts.
Notification to relevant law enforcement and judicial authorities in both jurisdictions.
This demand does not constitute a waiver of any rights or claims.
Show less

Reply

@jamiegallier2106 5 hours ago
Well said. I appreciate your dedication, diligence, and integrity. ❤️

Reply

@JJ-st9xw 9 hours ago
How is this guy not in prison for life?

Reply

@kimani 24( 1( hours ago
What's the latest with Luthmann?

Be honest
When's the last time you actually logged into other SEO tools?
Get Your Keywords Everywhere API Key

Summarize This Video




Optimize This Video

Video Insights

| | |
|---|---|
| Optimization Score | 6/100 |
| Engagement Score | 13.05% |
| Views Per Day | 2,552 |
| Topic Expertise | n/a% |
| Total Subscribers | 186,000 |

How these metrics are calculated

Tags
KEYWORD

Top chat replay Top fans

WORLD OF WARSHIPS
Play For Free on PC Download
Sponsored

All From the series From ThatDaneshGuy



Become a Special Warfare Combat Crewman.
Sponsored · United States Navy
Learn more




Ibiza Summer Mix 2026 Best Of Tropical Deep House ...
Deep Calm
171 watching




The Hidden War Behind Belize's Paradise Islands
DISPATCH
57K views · 2 weeks ago




Avicii, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
Ru Deep Radio
1.3M views · 1 year ago

Reply

2 replies

Top is selected, so you'll see featured comments

5:57:56

Morning Lofi Hiphop | Coffee · Chill · Walk
shiycat
1.5M views · 3 years ago
1:10:30

ACCOUNT RESTORED!

I ♥ BLACK PEOPLE

Afroman Talks Hous...
1.6M views

Thatdaneshguy's Youtub...
20K views

KKK Member Was NOT ...
13M views

BORA BORA 4K 3:10:27
Bora Bora Paradise 4K Drone Footage | Discover Paradise ...
Ocean Blue Deep
583K views · 1 month ago

DAY 67 42:57
Last To Leave Grocery Store, Wins $250,000
MrBeast
99M views · 8 days ago

2:47:41
Avicii, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
Ru Deep Radio
1.1M views · 7 months ago

BOB MARLEY 1:16:56
Bob Marley Top 20 Songs - The Best Reggae Vibes Ever - Bob ...
Kings of Reggae and REGGAE MELODY
17K views · 5 days ago
New Dubbed

OZ CAFE 1:24:47
[OZ] Sophisticated, Warm, Relaxing Jazz / Lounge | OZ ...
AI MUSIC AGENT OZ
1 view · 28 minutes ago
New

DEEP HOUSE IBIZA 2:25:06
Alok, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
Ru Deep Radio
704K views · 4 months ago

49:17
I Got Humiliated in the Philippines Slums...PH
Timmy Karter
100K views · 2 days ago
New

LATINO MIX 1:07:18
Best Latin Tropical Summer Fiesta Vibe Hits 2026 🌴 ...
Reggaeton Studio
505K views · 2 weeks ago

Morning Energy 1:27:35
Morning Energy 2025 ☀️ Tropical Chillout & Deep Hous...
ChillMusicDelight
1.4M views · 5 months ago

90's Classic R&B 3:03:51
Best of R&B Classics 90s & 2000s – Old School R&B Musi...
Forever Love and Chill R&B Station
1.2M views · 3 months ago

HOUSE RELAX 3:07:49
Avicii, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
Deep Light and XDeep Music
802K views · 2 months ago

55:11
Best Songs of the Decade 2010 to 2019 ☀️ Throwback Playlis...
Summer Dreams
28K views · 2 months ago

NF 4:40:59
all NF songs
HeartfeltOdyssey
333K views · 3 years ago

DEEP HOUSE IBIZA 2:16:52
Alan Walker, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
Soul Deep Club
96K views · 1 month ago

2000-2026 roadtrip 1:27:16
Roadtrip 2000-2026 Best driving songs ~summer vibes ...
Tavern Muzic
578K views · 1 month ago

APRIL CHILL 3:33:13
Lounge Deep House Vibes | Ultimate April Background ...
Rhythm Depths
2M views · 4 months ago

DANESH PODCAST 1:00:26
Danesh Podcast Ep1: Iran, Epstein, My Court Cases, ...
ThatDaneshGuy
1.1K views · 1 month ago

DEEP HOUSE IBIZA LIVE
Ibiza Summer Mix 2026 🍓 Best Of Tropical Deep House ...
Summer Love
232 watching

1:15:19
Michael Jackson
Jackson Kala
1.5M views · 4 months ago

MALDIVES 4K LIVE
Maldives 4K Drone Footage MV | Crystal Clear Waters 🌊 & ...
TOP PLACES
397 watching


Why did you join the ...
5.9M views
Sri Lankan Girl Falls in ...
12M views
Truco para vender ...
48M views
Morning Music Music for an active and happy work day ...
Miracle Music Radio
690 watching
Rema, Selena Gomez - Calm Down (1 HOUR LOOP)
Redefined Destiny Inc
315K views · 2 years ago
1:01:01
Joe Dirt (2001)
Comedy · 2001
PG-13
1:31:12
it's 2010 and you're on a road trip | nostalgia vibes playlist
Random Melody
894K views · 6 months ago
summer 2010s
1:11:29
2_30PM Drive
No views · 16 minutes ago
New
3:23
Afroman Interview
Channel 5 with Andrew Callaghan
1.6M views · 2 weeks ago
2:07:48
REVENGE: Sent to Jail the Girl who Drugged Me in Medellin ...
Obi Laand
2.8M views · 8 months ago
I FOUND THE GIRL WHO DRUGGED ME
1:00:35
Summer Mix 2025 Best Popular Songs 2025 Faded,...
Deep Radio
796 watching
DEEP HOUSE IBIZA
LIVE
Rihanna, Avicii, Justin Bieber, Kygo, Selena Gomez, Alok, ...
Deep Legacy
52 watching
DEEP HOUSE IBIZA
LIVE
Relaxing Music for Heart Healing Stop Overthinking,...
SoulEase Space
570K views · Streamed 4 weeks ago
57:54
Alex Warren - Ordinary (Lyrics)
New
Ordinary
26:47
Paul Blart: Mall Cop
Comedy · 2009
PG
MALL COP
1:30:52
Disgusted by India's Naughtiest Street!!
Timmy Karter
243K views · 2 weeks ago
46:19
Alan Walker, Dua Lipa, Coldplay, Martin Garrix & Kygo, The ...
Soul Deep Club
24K views · 13 days ago
2:16:55
Throwback R&b Classics Chris Brown, Usher, Mariah ...
RnB Old School
1.3M views · 2 months ago
THROWBACK R&B MIX
1:02:42
Calm Down - Rema (Lyrics) Ellie Goulding, Halsey,... MIX
Music Hunter
50K views · 4 days ago
New
15:29

Gmail

Joey Camp <joeycamp2020@gmail.com>

**DEMAND FOR IMMEDIATE AND PERMANENT REMOVAL OF ENTIRE YouTube CHANNEL @ThatDaneshGuy – MULTIPLE VIOLATIONS OF U.S. COPYRIGHT LAW, U.S. DEFAMATION LAW, AND COLOMBIAN CRIMINAL LAW (CALUMNIA AND INJURIA)**

**YouTube Legal Support Team** <legal+2mo4jdiuvkf2x0z@support.youtube.com> Mon, Apr 27, 2026 at 7:53 AM
Reply-To: YouTube Legal Support Team <legal+2mo4jdiuvkf2x0z@support.youtube.com>
To: joeycamp2020@gmail.com

Hello,

Hello,

Thank you for contacting the YouTube Legal Operations Team. We will review your request as soon as possible. The reference number for your complaint is G44WWIMMOIDARAYQQ7NSPZ43L4.

Regards,
The YouTube Legal Operations Team

Regards,

The YouTube Legal Support Team

Gmail

Joey Camp <joeycamp2020@gmail.com>

## CEASE AND DESIST DEMAND – DEFAMATION/LIBEL, COPYRIGHT INFRINGEMENT, CRIMINAL CALUMNIA AND INJURIA (COLOMBIAN PENAL CODE), AND RELATED TORTS – IMMEDIATE REMOVAL AND RETRACTION REQUIRED

**ThatDanesh Guy** <thatdaneshguy@gmail.com> Mon, Apr 27, 2026 at 8:32 AM
To: Joey Camp <joeycamp2020@gmail.com>
Cc: Nick Chiappetta <nick@chiappettalegal.com>

I'm not reading all that shit. Stop contacting me.

On Mon, Apr 27, 2026, 9:28 AM Joey Camp <joeycamp2020@gmail.com> wrote:

**Danesh Noshirvan**
**ThatDaneshGuy**
**https://www.youtube.com/@ThatDaneshGuy**
**thatdaneshguy@gmail.com**

**Re: CEASE AND DESIST DEMAND – DEFAMATION/LIBEL, COPYRIGHT INFRINGEMENT, CRIMINAL CALUMNIA AND INJURIA (COLOMBIAN PENAL CODE), AND RELATED TORTS – IMMEDIATE REMOVAL AND RETRACTION REQUIRED**

Dear Mr. Noshirvan:

This letter constitutes a **formal cease-and-desist demand** and **pre-litigation notice**. You are hereby *demanded to* ***immediately and permanently*** *cease and desist from all unlawful conduct described* below.

You, Danesh Noshirvan (operating the YouTube channel @ThatDaneshGuy), published and continue to publish a podcast episode dated April 26 (English and any Spanish-language version) and related content that contains extensive false and defamatory statements about me, Joseph Anthony Camp. The content doxes me, accuses me of heinous crimes, incites harm against me in my community in Bogotá, Colombia (where I reside), and repeatedly uses my copyrighted intellectual property without authorization. This conduct violates United States civil law (defamation per se and copyright infringement) and Colombian criminal law (calumnia and injuria).

Active civil and criminal lawsuits/tort actions are currently pending against you in **Nebraska, Florida, and Colombia** arising from the identical pattern of conduct. This podcast directly exacerbates those pending matters and constitutes further actionable harm.

### I. DEFAMATION / LIBEL (U.S. LAW – DEFAMATION PER SE) AND CRIMINAL CALUMNIA / INJURIA (COLOMBIAN PENAL CODE ARTS. 220–222 AND ART. 221)

The podcast consists of sustained false statements of fact published to the public that accuse me of specific serious crimes and injure my honor and reputation. Under U.S. law these constitute **defamation per se (libel)**. Under Colombian law they constitute **calumnia** (false imputation of criminal conduct, punishable by 16–72 months imprisonment and fines) and **injuria** (attacks on honor and reputation,

punishable by 16–54 months imprisonment and fines), with additional civil remedies for damage to good name and honor.

**Specific false and actionable statements** (with timestamps from the attached full transcript, Exhibit A) include:

**A. Accusations of Sexual Crimes, Rape, Pedophilia, and Child Stalking (Defamation Per Se / Calumnia)**

- 00:00:06: "the most despicable, the most deplorable, the most rotting pile of shit rap bastard we'll ever talk about. Child stalker, rapist, stalker, pedophile, Joseph Anthony Camp."
- 00:01:06–00:01:50 (repeated): "Child stalker, rapist, stalker, pedophile."
- 00:01:50: "I'm going to Come find your family. Take your kids. And there's nothing you can do about it."
- 00:02:39–00:03:15: "he is currently hiding in Bogota, Colombia… a very dangerous individual because he does target children."
- 00:19:49: "Threats of sexual mutilation and rape to Nirshirvan and his children, including cutting a child's genitals off."
- 00:21:40–00:26:06: Detailed false rape allegations (got a woman drunk, took her to a hotel, strangled her, non-consensual sex, impregnation leading to abortion) accompanied by prison phone-call audio/transcript.

**B. Accusations of Multiple Felonies and Criminal History (Defamation Per Se / Calumnia)**

- 00:09:52–00:13:05: Recitation of alleged felonies including repeated burglary second degree (multiple counts), petite larceny, grand larceny, criminal possession of stolen property, assault felony, menacing, simulated weapon crimes against a person, harassment, intimidation, stalking, emotional distress, bribery, bribery of a public servant, attempted influence of a public servant, unlawful possession/use of another person's identification, contempt of court, probation violation, and fraud.

**C. Character Assassination, Sociopathic Accusations, and Incitement (Injuria + Defamation)**

- 00:05:35: "this is a person who is a sociopath, an admitted sociopath."
- 00:01:06: "for hire troll" who terrorizes people, "doxing people… with malice."
- 00:00:06, 00:08:01, 00:11:45: "most rotting pile of shit," "absolute loser," "complete pile of [expletive]," "hideous, most disturbing person to look at," "ugly human being he is on the inside."
- 00:03:15 & 00:06:32: Direct call to Bogotá residents to "know who is in your community just so your kids… could be safe" because I "target children," including threats to post school maps and false charges.
- *00:04:45–00:05:35: False claims of hacking photographs, inserting myself into them, and claiming* the victim was "in love with him" and "obsessed with him."

The **entire** podcast frames me as an active, ongoing danger in Bogotá, Colombia, defames me with the intention of inciting violence against me, and maliciously attacks me with absolutely no legitimacy while using creative generation tools such as AI to fabricate "evidence," and worse.

## II. COPYRIGHT INFRINGEMENT AND DMCA VIOLATIONS (17 U.S.C. §§ 501 AND 512)

I am the owner or exclusive rights holder of the following copyrighted intellectual property. You have repeatedly reproduced, displayed, distributed, and publicly performed these works **without my authorization or license**:

- My personal **mugshot photographs and arrest images** (displayed and mocked at approximately 00:07:13–00:08:01 and throughout).
- **Personal photographs and visual materials** (including hacked or unlawfully obtained images referenced at 00:04:45–00:05:35).
- **Audio clips and/or detailed transcriptions** of the alleged prison phone call (00:23:02–00:26:06).
- **Screenshots, readings, and reproductions of private text messages** (00:35:39–00:39:43).
- Comparative images, court-related visuals, and other original content used to defame me (including "Last Action Hero" comparison at 00:08:59 and additional visuals throughout the video and channel).

These acts constitute **direct copyright infringement** under 17 U.S.C. § 501.

## DEMAND FOR RELIEF

You, Danesh Noshirvan, must **immediately and permanently**:

1. Remove the **entire** April 26 podcast (English and any Spanish version), all related videos, shorts, community posts, and any other content containing the defamatory statements or my copyrighted material from the @ThatDaneshGuy YouTube channel and from **any and all** websites, platforms, or repositories under your control or direction.
2. Cease and desist from any further publication, republication, distribution, or dissemination of any defamatory statements about me or any use of my copyrighted intellectual property.
3. *Issue a public retraction and correction notice (in English and Spanish) on the @ThatDaneshGuy* channel and any other platforms where the content appeared, acknowledging the falsity of the statements, within **7 days**.
4. Preserve all records, analytics, viewer data, upload logs, communications, and evidence related to the podcast and channel for pending and future litigation.
5. Confirm in writing within **48 hours** that you have fully complied with all demands.

This demand does not constitute a waiver of any rights or claims. Failure to comply within **7 days** will result in:

- Immediate filing of **additional criminal complaints** in Colombia for calumnia (Arts. 220–222) and injuria (Art. 221) of the Colombian Penal Code.
- Pursuit of **civil damages, statutory copyright damages (up to $150,000 per infringed work), injunctive relief, attorney fees, and costs** in the pending Nebraska, Florida, and Colombian actions, as well as any new proceedings.
- Notification to relevant law enforcement and judicial authorities in both jurisdictions.

You are hereby on notice that continued publication will be treated as willful and malicious conduct, subjecting you to enhanced damages and penalties.

Sincerely,

**Joseph Anthony Camp**



# Joey Camp 2020

CANDIDATE FOR PRESIDENT OF THE UNITED STATES OF AMERICA | CANDIDATE FOR UNITED STATES SENATE - COLORADO | CANDIDATE FOR UNITED STATES HOUSE OF REPRESENTATIVES - COLORADO, DISTRICT 1

Mobile: **720.454.5240**
Email: Joey@JoeyCamp2020.com
Website: **www.joeycamp2020.com**
Address: **@joeycamp2020 (for everything)**

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

Alejandro Isaza <alejandro.isaza@mglegal.global>

# TERCER ALCANCE - ESCALAMIENTO DEL PERJUICIO

1 mensaje

**Alejandro Isaza** <alejandro.isaza@mglegal.global> 28 de abril de 2026 a las 4:17 p.m.
Para: j06cctobta@cendoj.ramajudicial.gov.co
CCO: MGLegal Área Legal <legal@mglegal.global>

Bogotá, D.C., 28 de abril de 2026.

Respetado señor, juez.
***JUZGADO SEXTO (6) CIVIL DEL CIRCUITO DE BOGOTÁ, D.C.***

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-41-89-011-2026-00619-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | TERCER ALCANCE A IMPUGNACIÓN FALLO DE PRIMERA INSTANCIA |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. **A81664904** de los Estados Unidos de América, por medio del presente escrito doy segundo alcance al recurso de impugnación interpuesto contra el fallo de primera instancia proferido el catorce (14) de abril de 2026, con el fin de poner en conocimiento del juez de segunda instancia **NUEVOS** hechos sobrevinientes de la máxima gravedad y relevancia constitucional, ocurridos con posterioridad a la radicación de la impugnación y de los anteriores escritos de alcance, en los términos del escrito adjunto.

Cordialmente,

**JOSEPH ANTHONY CAMP**
Pasaporte No. A81664904 de Estados Unidos de América

**TERCER ALCANCE.pdf**
312K

Bogotá, D.C., 28 de abril de 2026.

Respetado(a) señor(a), juez.
**JUZGADO SEXTO (6) CIVIL DE CIRCUITO DE BOGOTÁ, D.C.**

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-41-89-011-2026-00619-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | TERCER ALCANCE A IMPUGNACIÓN FALLO DE PRIMERA INSTANCIA |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. **A81664904** de los Estados Unidos de América, por medio del presente escrito doy segundo alcance al recurso de impugnación interpuesto contra el fallo de primera instancia proferido el catorce (14) de abril de 2026, con el fin de poner en conocimiento del juez de segunda instancia hechos gravísimos ocurridos en las últimas horas que confirman, de manera irrefutable, cada una de las previsiones formuladas en la impugnación y sus anteriores alcances, y que evidencian un riesgo inminente para mi integridad personal, en los siguientes términos.

## I. HECHOS SOBREVINIENTES

1. **El accionado publicó en Instagram la solicitud formal de cese y desistimiento, junto con su respuesta burlesca, como contenido de entretenimiento para su audiencia masiva.**

En las últimas horas, el accionado señor DANESH NOSHIRVAN publicó en su cuenta verificada de Instagram (@thatdaneshguy) una publicación en la que exhibe ante su audiencia masiva las capturas de pantalla del requerimiento formal de cese y desistimiento (cease and desist) remitido por el accionante el 27 de abril de 2026, junto con su propia respuesta: «*I'm not reading all that shit. Stop contacting me*».

La publicación, a la fecha de esta captura, acumula 258 reacciones, 17 comentarios y 5 compartidos, y va acompañada de un pie de página del accionado que comienza con: «*The latest episode of my podcast is about career criminal and f...*» (El último episodio de mi podcast trata sobre un delincuente de carrera y...).




*Captura de pantalla: publicación de Instagram del accionado exhibiendo el requerimiento de cese y su respuesta burlesca. Geoetiqueta: «Bogota, Colombia». 258 likes, 17 comentarios, 5 compartidos.*

Este hecho es de relevancia para la resolución del presente recurso, porque materializa la previsión formulada expresamente en los numerales 3 y 4 del acápite de fundamentos de la impugnación de 21 de abril de 2026, donde se sostuvo que *«Todo ese material sería previsiblemente divulgado por el accionado en sus redes sociales, acompañado de sus propios comentarios denigrantes, reproduciendo el mismo patrón ya documentado con el oficio judicial del Juzgado.»*

Lo que en la impugnación se formuló como previsión fundada acaba de confirmarse como hecho consumado. El accionado hizo exactamente lo que se advirtió, tomó el requerimiento de cese, lo publicó en Instagram, lo acompañó de su respuesta burlesca, y lo convirtió en contenido de entretenimiento para su audiencia de miles de seguidores. La comunicación formal del accionante, aquella que el a quo exigió como presupuesto de procedibilidad, ha sido utilizada como arma adicional de la campaña difamatoria.

Si alguna duda residual existía sobre la idoneidad del requisito de solicitud previa de retractación en el caso concreto, esta prueba la disipa de manera definitiva. El accionado no solo no se retractó, si no que convirtió la propia solicitud de retractación en un nuevo acto de hostigamiento público.

2. **Los seguidores del accionado están etiquetando a Migración Colombia y a la Policía Nacional, llamando «*pedófilo*» al accionante y solicitando su deportación.**

La publicación del accionado ha desatado una cadena de reacciones en los comentarios que trasciende la esfera digital y genera un riesgo directo, concreto e inminente para la integridad personal del accionante en la ciudad de Bogotá. Los siguientes comentarios, visibles en las capturas de pantalla que se adjuntan. Se destacan los siguientes:

> Usuario @itsalfredhimself: «*@migracioncol pedo en bogota! @policiadecolombia*» — etiqueta directamente a Migración Colombia y a la Policía Nacional, denunciando a un presunto «*pedófilo en Bogotá*».
>
> El mismo usuario @itsalfredhimself: «*Tag @migracioncol enough times they will notice and get his ss*» — insta a otros usuarios a etiquetar masivamente a Migración Colombia hasta que la entidad «*lo note y actúe*» contra la víctima.
>
> Usuario @dallas_floral_atelier: «*When describing this creep, please do not abbreviate 'pedo'. The slang version diminishes the impact of what he is, a PEDOPHILE. How does this guy live in Columbia without a job?*» — *exige que se utilice la palabra completa* «PEDOPHILE» para maximizar la estigmatización, y cuestiona la permanencia de la víctima en Colombia.
>
> Usuario @the.sassy.colombian: «*Yes please, the men are a blight in Colombia*» — refuerza una narrativa xenófoba de persecución de la víctima en territorio colombiano.
>
> Otros usuarios celebran el contenido, llaman a la víctima «*SCUM*» (escoria), señalan que tiene «*sick thoughts about CHILDREN*», y alientan al denunciado como quien «*limpia*» a la sociedad.




*Captura de pantalla: comentarios en la publicación del accionado donde terceros etiquetan a @migracioncol y @policiadecolombia, llaman «PEDOPHILE» al accionante e instan a la acción masiva contra él en Bogotá.*

## II. CONSECUENCIAS JURÍDICAS

### 1. El daño ha trascendido la esfera digital y constituye un riesgo inminente para la integridad personal del accionante.

Los comentarios documentados revelan un fenómeno que excede la difamación y se proyecta directamente sobre la seguridad física del accionante: terceros, identificados como colombianos y usuarios activos de redes sociales, están etiquetando a Migración Colombia (@migracioncol) y a la Policía Nacional (@policiadecolombia) para que «*actúen*» contra una persona que, conforme a la narrativa del accionado, es un pedófilo que vive en Bogotá.

Uno de los usuarios insta expresamente a etiquetar a Migración Colombia «*enough times*» hasta que «*lo noten y actúen*».

Esto ya no es un conflicto entre dos particulares sobre libertad de expresión en redes sociales. Es una campaña de hostigamiento transnacional que ha producido, como efecto comprobado,

un movimiento de terceros que presionan a autoridades colombianas para que tomen medidas contra el accionante con base en imputaciones falsas.

El accionante, quien ya se encuentra en proceso de reconocimiento de la condición de refugiado ante la Cancillería colombiana y amparado por un salvoconducto vigente expedido por Migración Colombia, enfrenta ahora el riesgo concreto de que la presión mediática masiva interfiera en sus trámites migratorios y lo exponga a actos de hostigamiento físico en su lugar de residencia.

Ante esta situación, aplicar mecánicamente el requisito de solicitud previa de retractación como barrera de acceso a la jurisdicción constitucional no es un acto de rigor jurídico, es la denegación de justicia a una persona cuya dignidad, honra, buen nombre, integridad psíquica e integridad personal están siendo destruidas públicamente, diariamente y ante los ojos del aparato judicial.

## III. PETICIÓN URGENTE

Con fundamento en todo lo expuesto, se solicita respetuosamente al señor juez de segunda instancia, con carácter de urgencia:

**PRIMERO: TENER EN CUENTA** los hechos sobrevinientes aquí documentados y las pruebas que se aportan, al momento de resolver el recurso de impugnación.

**SEGUNDO: DAR POR DEFINITIVAMENTE ACREDITADO** que el requisito de solicitud previa de retractación fue cumplido, que la respuesta del accionado fue la negativa expresa y burlesca, y que la propia solicitud fue instrumentalizada como nuevo acto de difamación pública, confirmando la inutilidad y el carácter contraproducente del requisito en el caso concreto.

**TERCERO: VALORAR** la totalidad de la conducta del accionado como una actuación enteramente dolosa, incompatible con el tratamiento procesal propio de un conflicto entre iguales, y que demanda la intervención inmediata de la jurisdicción constitucional.

**CUARTO: REVOCAR** la sentencia de primera instancia y TUTELAR los derechos fundamentales del accionante conforme a las pretensiones formuladas en la impugnación de 21 de abril de 2026 y sus alcances, cuya procedencia se encuentra hoy acreditada más allá de toda duda.

Atenta y cordialmente,

______________________________

**JOSEPH ANTHONY CAMP**
*Pasaporte No. A81664904 de Estados Unidos de América*
Accionante

MG LEGAL

Alejandro Isaza <alejandro.isaza@mglegal.global>

## PONE EN CONOCIMIENTO NUEVOS HECHOS LESIVOS

1 mensaje

**Alejandro Isaza** <alejandro.isaza@mglegal.global> 8 de mayo de 2026 a las 4:45 p.m.
Para: j06cctobta@cendoj.ramajudicial.gov.co
CCO: MGLegal Área Legal <legal@mglegal.global>

Bogotá, D.C., 8 de mayo de 2026.

Respetado(a) señor(a), juez.
**JUZGADO SEXTO (6) CIVIL DEL CIRCUITO DE BOGOTÁ, D.C.**

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-41-89-011-2026-00619-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, *MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE* COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | PONE EN CONOCIMIENTO NUEVOS HECHOS LESIVOS |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. **A81664904** de los Estados Unidos de América, por medio del presente escrito doy **cuarto alcance urgente** al recurso de impugnación, con el fin de poner en conocimiento del juez de segunda instancia hechos sobrevinientes de la máxima gravedad que confirman, una vez más y de manera ya incontestable, la procedencia del amparo solicitado, así como la urgencia impostergable de su intervención.

Cordialmente,

**JOSEPH ANTHONY CAMP**
Pasaporte No. A81664904 de Estados Unidos de América

**PONE EN CONOCIMIENTO NUEVOS HECHOS.pdf**
450K

Bogotá, D.C., 8 de mayo de 2026.

Respetado(a) señor(a), juez.
**JUZGADO SEXTO (6) CIVIL DE CIRCUITO DE BOGOTÁ, D.C.**

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-41-89-011-2026-00619-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | PONE EN CONOCIMIENTO NUEVOS HECHOS LESIVOS |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. **A81664904** de los Estados Unidos de América, por medio del presente escrito doy **cuarto alcance urgente** al recurso de impugnación, con el fin de poner en conocimiento del juez de segunda instancia hechos sobrevinientes de la máxima gravedad que confirman, una vez más y de manera ya incontestable, la procedencia del amparo solicitado, así como la urgencia impostergable de su intervención.

## I. CUESTIÓN PRELIMINAR

Resulta imperativo, antes de exponer los nuevos hechos, dejar plena constancia ante el juez de segunda instancia que cada hora que transcurre sin orden judicial de cesación, el accionado produce, publica, distribuye y amplifica nuevo contenido difamatorio en mi contra; sus seguidores lo replican en territorio colombiano; las autoridades colombianas son etiquetadas y presionadas con base en imputaciones falsas; y el daño psicológico, reputacional, social y físico que tengo que soportar se agrava de manera irreversible. Cada día que se posterga la decisión *es un día de hostigamiento adicional, y configura un perjuicio irremediable que el ordenamiento* constitucional precisamente prohíbe tolerar.

El accionado convirtió la campaña difamatoria en una serie de contenido recurrente con marca propia.

## II. HECHOS SOBREVINIENTES

1. **Episodio 8 del Danesh Podcast: «*Stalker Joey Camp*».**

Conforme se acredita con la prueba documental que se aporta, el accionado publicó en su cuenta verificada de Instagram (@thatdaneshguy) un nuevo episodio de su podcast titulado expresamente «*Tears of a Rapist clip from The Danesh Podcast Episode 8 — Stalker Joey Camp*» (Lágrimas de un violador, fragmento del Danesh Podcast Episodio 8 — Acechador Joey Camp). La publicación acumula 1.350 reacciones y 1.600 comentarios, con dominio publicitario asociado «*daneshfoundyou.com*».

El texto del post, que se transcribe íntegramente por su gravedad y para facilitar la valoración del juez, expresa:

> «*Tears of a Rapist clip from The Danesh Podcast Episode 8 - Stalker Joey Camp. Joseph Anthony Camp has been stalking and threatening my family for 4 years on behalf of Jennifer Couture and Dr Ralph Garramone. This episode goes over the history of Joey Camp. In this clip, Joey was arrested after he violated a protective order when he strangled and raped his victim. Audio legally obtained by @bullyville.*»

(**Traducción libre**: «*Lágrimas de un violador, fragmento del Danesh Podcast Episodio 8 — Acechador Joey Camp. Joseph Anthony Camp ha estado acosando y amenazando a mi familia durante 4 años por encargo de Jennifer Couture y el Dr. Ralph Garramone. Este episodio repasa la historia de Joey Camp. En este fragmento, Joey fue arrestado tras violar una orden de protección al estrangular y violar a su víctima. Audio legalmente obtenido por @bullyville*».)

**Es de la mayor gravedad advertir tres elementos contenidos en esta sola publicación:** (i) la campaña difamatoria ha sido formalizada como una serie con identidad propia («The Danesh Podcast»), ya en su «*Episodio 8*», con marca, dominio web y tratamiento profesional, lo que evidencia premeditación, planeación e intención dolosa de causar el mayor daño posible; (ii) la imputación del delito de violación se reitera ahora como hecho asumido y narrado en primera persona del accionado, presentado al público como verdad establecida; y (iii) la publicación describe escenas de extrema violencia sexual «estrangulación y violación» que se atribuyen al accionante de manera pública, ante una audiencia masiva y verificable.




2. **Admisión expresa, pública y voluntaria del accionado: declara abiertamente que el cese y desistimiento «*no le importa*» y que «*no leyó el correo*».**

En una publicación adicional realizada en su cuenta verificada de Instagram (@thatdaneshguy), geo-etiquetada como «Bogota, Colombia», es decir, dirigida específicamente a la audiencia ubicada en la ciudad de mi residencia, el accionado manifestó textualmente, ante su audiencia masiva, lo siguiente:

> «*Due to his excessive lies, I never read his email to me and assumed it was a lie anyway. If it was a real cease and desist 1. I would have no way of knowing. 2. I wouldn't give a fuck because he has been stalking my family for 4 years.*»

(**Traducción libre**: «Debido a sus excesivas mentiras, nunca leí su correo y asumí que era una mentira de todas maneras. Si era un cese y desistimiento real 1. No tendría forma de saberlo. 2. No me importaría una mierda porque él ha estado acosando a mi familia durante 4 años».)

**Esta admisión, hecha de manera espontánea, pública y voluntaria por el propio accionado en sus redes sociales verificadas,** *cierra de manera definitiva e irrevocable el debate sobre el primer requisito de subsidiariedad fijado por la Sentencia SU-420 de 2019* que motivó la denegación del amparo en primera instancia. El accionado declara, sin ambages, que: (i) no leyó el correo formal de cese y desistimiento que le remití; (ii) asumió *a priori* que cualquier comunicación del accionante era mentira y por tanto no la examinó; (iii) en caso de que hubiese

sido una solicitud genuina, no le habría importado en absoluto («I wouldn't give a fuck»); y (iv) sustenta su negativa absoluta en una narrativa difamatoria autoconstruida de cuatro años de antigüedad.

Cualquier discusión jurídica posterior sobre si el accionante cumplió o no con la carga de solicitar previamente la retractación al accionado pierde por completo su sentido material ante esta admisión: el destinatario de la solicitud declara públicamente que la solicitud no fue leída, que de haber sido leída no habría sido atendida, y que ninguna gestión privada del accionante podría jamás producir el efecto de una eventual retractación voluntaria.

**3. Incitación expresa, geolocalizada y dolosa contra mi contra.**

En la misma publicación, el accionado realiza un llamado público y directo a su audiencia para que difunda el contenido difamatorio en la ciudad de residencia del accionante, utilizando como herramienta el más sensible de los argumentos: la supuesta protección de los menores de edad. Sus palabras textuales son:

> *«This man is currently hiding in Bogota, Colombia. Share my podcast in Bogota so the entire city knows who he is so the children of Colombia can be safe.»*

(**Traducción libre**: «*Este hombre se está escondiendo actualmente en Bogotá, Colombia. Compartan mi podcast en Bogotá para que toda la ciudad sepa quién es y para que los niños de Colombia puedan estar a salvo*».)

Y me describe en los siguientes términos, en el mismo post:

> *«career criminal and former Garramone Plastic Surgery employee, rapist and pedo Joseph Anthony Camp. This man is the most revolting and pathetic sociopath you'll ever hear about. He targets children and thought he could come for mine.»*

(**Traducción libre**: «*delincuente de carrera y exempleado de Garramone Plastic Surgery, violador y pedófilo Joseph Anthony Camp. Este hombre es el sociópata más repulsivo y patético del que jamás escucharán. Él se dirige a niños y pensó que podía venir por los míos*».)




4. **Continuación de la replicación viral del contenido por terceros en territorio colombiano.**

En los comentarios de las publicaciones referidas, terceros usuarios continúan difundiendo activamente el contenido. A modo de ejemplo, la usuaria @canele_elenac comenta expresamente: «*Reposting for my Bogotá friends* ❤️» (Reposteando para mis amigos en Bogotá), reproduciendo el patrón ya documentado en alcances anteriores. La campaña ya no depende exclusivamente del accionado: terceros voluntarios en territorio colombiano la mantienen activa, multiplicando el daño y elevando el riesgo concreto sobre mi integridad personal.

## III. PETICIÓN URGENTE

Respetuosamente me permito poner de presente al señor juez de segunda instancia que los perjuicios que se están ocasionando por la inacción judicial son gravísimos y se profundizan con cada hora que transcurre sin que se adopte una orden de protección. Cada nueva publicación, cada nuevo episodio del podcast, cada nuevo comentario amplificado por terceros en Bogotá, constituye un acto adicional de hostigamiento que agrava de manera irreversible la situación personal, psicológica, reputacional y de seguridad del accionante. La Fiscalía General de la Nación, pese a conocer la denuncia penal radicada bajo el NUNC 110016000050202653891 y sus alcances, no ha adoptado a la fecha medida alguna que detenga la conducta del accionado,

y el ritmo propio de la jurisdicción penal resulta manifiestamente incompatible con la urgencia que la situación demanda.

Temo fundadamente por mi integridad personal. Las publicaciones del accionado están geo-etiquetadas en Bogotá, su audiencia está siendo movilizada explícitamente para difundir el contenido en esa ciudad, y terceros residentes en Colombia están reposteándolo activamente. La incitación a la persecución de un supuesto «pedófilo en Bogotá» no es retórica: en el contexto social y emocional de la denuncia falsa de delitos sexuales contra menores, ese tipo de imputaciones tienen capacidad demostrada de provocar reacciones violentas espontáneas.

Por estas razones, se solicita respetuosamente al señor juez de segunda instancia que se sirva:

**PRIMERO: TENER EN CUENTA** los hechos sobrevinientes aquí documentados y las pruebas que se aportan, al momento de resolver el recurso de impugnación.

**SEGUNDO: DAR POR DEFINITIVAMENTE ACREDITADO** que el requisito de solicitud previa de retractación fue cumplido, que la respuesta del accionado fue la negativa expresa y burlesca, y que la propia solicitud fue instrumentalizada como nuevo acto de difamación pública, confirmando la inutilidad y el carácter contraproducente del requisito en el caso concreto.

**TERCERO: VALORAR** la totalidad de la conducta del accionado como una actuación enteramente dolosa, incompatible con el tratamiento procesal propio de un conflicto entre iguales, y que demanda la intervención inmediata de la jurisdicción constitucional.

**CUARTO: REVOCAR** la sentencia de primera instancia y **TUTELAR** los derechos fundamentales del accionante conforme a las pretensiones formuladas en la impugnación de 21 de abril de 2026 y sus alcances, cuya procedencia se encuentra hoy acreditada más allá de toda duda.

Atenta y cordialmente,

______________________________

**JOSEPH ANTHONY CAMP**
Pasaporte No. A81664904 de Estados Unidos de América
Accionante

MG LEGAL

Alejandro Isaza <alejandro.isaza@mglegal.global>

# PONE EN CONOCIMIENTO ACTUACIONES NUEVAS

1 mensaje

**Alejandro Isaza** <alejandro.isaza@mglegal.global> 19 de mayo de 2026 a las 8:00 a.m.
Para: j06cctobta@cendoj.ramajudicial.gov.co

Bogotá, D.C., 19 de mayo de 2026.

Respetado(a) señor(a), juez.
**JUZGADO SEXTO (6) CIVIL DEL CIRCUITO DE BOGOTÁ, D.C.**

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-41-89-011-2026-00619-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | PONE EN CONOCIMIENTO NUEVOS HECHOS |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. **A81664904** de los Estados Unidos de América, por medio del presente escrito doy **cuarto alcance urgente** al recurso de impugnación, con el fin de poner en conocimiento del juez de segunda instancia hechos sobrevinientes que sustentan, aún más, la procedencia del amparo solicitado, así como la urgencia impostergable de su intervención.

Cordialmente,

**JOSEPH ANTHONY CAMP**
Pasaporte No. A81664904 de Estados Unidos de América

**2 archivos adjuntos**

**PONE EN CONOCIMIENTO DEL DESPACHO.pdf**
104K

**ANEXO FISCALÍA GENERAL DE LA NACIÓN.pdf**
895K

Bogotá, D.C., 19 de mayo de 2026.

Respetado(a) señor(a), juez.
**JUZGADO SEXTO (6) CIVIL DE CIRCUITO DE BOGOTÁ, D.C.**

**Acción de tutela**

| | | |
|---|---|---|
| **REFERENCIA** | : | 11001-41-89-011-2026-00619-00 |
| **ACCIONANTE** | : | JOSEPH ANTHONY CAMP |
| **ACCIONADO** | : | DANESH NOSHIRVAN |
| **VINCULADOS** | | FISCALÍA 588 LOCAL DE BOGOTÁ, POLICÍA NACIONAL – CAI VIRTUAL, MINISTERIO DE RELACIONES EXTERIORES – CANCILLERÍA DE COLOMBIA, MIGRACIÓN COLOMBIA, EMBAJADA DE ESTADOS UNIDOS EN COLOMBIA Y A LAS PLATAFORMAS META PLATFORMS, INC. (INSTAGRAM) Y SUBSTACK, INC. |
| **ASUNTO** | : | PUESTA EN CONOCIMIENTO DE ACTUACIÓN SURTIDA EN DENUNCIA PENAL – CONSTANCIA DE INASISTENCIA DEL ACCIONADO A DILIGENCIA DE CONCILIACIÓN ANTE LA FISCALÍA 588 LOCAL DE BOGOTÁ |

**JOSEPH ANTHONY CAMP**, mayor de edad, ciudadano estadounidense, identificado con el Pasaporte No. A81664904 de los Estados Unidos de América, en condición de accionante dentro del trámite de la referencia, por medio del presente escrito me permito poner en conocimiento del juez de segunda instancia una actuación procesal surtida ante la Fiscalía General de la Nación dentro de la denuncia penal conexa instaurada en contra del accionado, cuyas constancias resultan de directa pertinencia para la resolución del recurso de impugnación, en los siguientes términos.

## I. ANTECEDENTE

Como es de conocimiento del Despacho, el accionante presentó ante la Fiscalía General de la Nación denuncia penal contra el señor DANESH NOSHIRVAN por los delitos de calumnia, injuria, hostigamiento, constreñimiento ilegal, violación de datos personales, falsa denuncia y concierto para delinquir, identificada con número único de noticia criminal **110016000050202653891**, y conocida por la **Fiscalía 588 Local de Bogotá** – Unidad de Conciliación Preprocesal – Usaquén.

Esta denuncia fue uno de los elementos que el accionante puso de presente en la acción de tutela y fue expresamente analizada por el a quo en su sentencia de 14 de abril de 2026, ocasión en la que se descartó su idoneidad como mecanismo principal de protección.

## II. ACTUACIÓN PROCESAL QUE SE PONE EN CONOCIMIENTO

Dentro del trámite penal de la referencia, la Fiscalía 588 Local de Bogotá programó la diligencia de conciliación Preprocesal, en cumplimiento del requisito de procedibilidad consagrado en el artículo 522 del Código de Procedimiento Penal para los delitos querellables. Ambas partes fueron notificadas en debida forma.

A pesar de haber sido debidamente notificado, el accionado señor DANESH NOSHIRVAN no se hizo presente a la diligencia ni justificó su inasistencia. Solo compareció el accionante JOSEPH ANTHONY CAMP.

En la diligencia, el querellante manifestó expresamente ante el Despacho fiscal que el accionado ha continuado desplegando manifestaciones difamatorias, ahora intensificadas.

Esta manifestación, ahora documentada por la Fiscalía General de la Nación y elevada a constancia con firma electrónica del servidor público, Fiscal FABIO EMEL LOZANO BLANCO, constituye corroboración estatal independiente de los hechos que el accionante ha sostenido a lo largo del trámite de tutela y de sus alcances posteriores: la conducta del accionado es sistemática, diaria e ininterrumpida, y se extiende a amenazas, acoso, instigación a terceros, injuria y calumnia.

## III. PETICIÓN

Por estas razones, se solicita respetuosamente al señor juez de segunda instancia que se sirva:

**PRIMERO: TENER EN CUENTA** la actuación procesal puesta en conocimiento mediante el presente memorial, así como la constancia oficial de la Fiscalía 588 Local de Bogotá de fecha 11 de mayo de 2026 que se aporta como prueba documental, al momento de resolver el recurso de impugnación interpuesto el 21 de abril de 2026.

**SEGUNDO: VALORAR** el contenido de la referida constancia como corroboración estatal independiente del carácter sistemático, diario e ininterrumpido de la vulneración de derechos fundamentales que el accionante ha sostenido a lo largo del trámite, así como prueba adicional del carácter doloso, recalcitrante y materialmente inconciliable de la conducta del accionado.

Atenta y cordialmente,

______________________________

**JOSEPH ANTHONY CAMP**
Pasaporte No. A81664904 de Estados Unidos de América
Accionante

| FISCALÍA GENERAL DE LA NACIÓN | CONSTANCIA |
|---|---|

Hoja N° 1 de 2

| Departamento | BOGOTÁ, D. C. | Municipio | BOGOTÁ, D.C. | Fecha | 2026 | 05 | 11 |
|---|---|---|---|---|---|---|---|

**NÚMERO ÚNICO DE NOTICIA CRIMINAL:**

| | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 0 | 0 | 1 | 6 | 0 | 0 | 0 | 0 | 5 | 0 | 2 | 0 | 2 | 6 | 5 | 3 | 8 | 9 | 1 |
| Departamento | | Municipio | | | Entidad | | Unidad Receptora | | | | | Año | | | | Consecutivo | | | | |

**1. DESCRIPCION DEL ASUNTO (INDIQUE BREVEMENTE LOS MOTIVOS DE LA CONSTANCIA):**

AL REVISAR EN LA CARPETA DIGITAL DEJA CONSTANCIA QUE DENTRO DEL PROCESO SE ENCONTRABA PROGRAMADA LA PRIMERA CITACIÓN A DILIGENCIA DE CONCILIACIÓN, HABIÉNDOSE NOTIFICADO A LAS PARTES EN DEBIDA FORMA, TODA VEZ QUE SE ALLEGÓ CONTANCIA DE NOTIFICACIÓN PERSONAL A TRAVÉS DE CORREO ELECTRÓNICO DEL PRESUNTO INDICIADO EL CUAL SE ANEXA A LAS DILIGENCIAS. NO OBSTANTE NO SE HIZO PRESENTE EL QUERELLADO DANESH NOSHIRVAN CIUDADANO AMERICANO INDOCUMENTADO, CORREO THATDANESHGUY@GMAIL.COM. NI JUSTIFICÓ SU INASISTENCIA.
TAN SOLO SE HIZO PRESENTE LA PRESUNTA VICTIMA JOSEPH ANTHONY CAMP CIUDADANO AMERICANO CON PASAPORTE USA A81664904 CORREO legal@mglegal.global CELULAR 3102572265 EN COMPAÑÍA DE SU APODERADO JUDICIAL Y QUERELLANTE DOCTOR RAFAEL EDUADO BUSTAMANTE HERNÁNDEZ identificado con C.C. 1.020.797.208 y T.P. No. 418295 DEL C.S. DE LA J.

EL QUERELLANTE MANIFIESTA A ESTE DESPACHO QUE DEBIDO A QUE CON POSTERIORIDAD A ESTA DENUNCIA SE VIENEN PRESENTANDO MANIFESTACIÓNES POR PARTE DEL QUERRELLADO DE AMENAZAS, ACOSO, INSTIGACIÓN A TERCEROS A DELINQUIR DE MANERA SISTEMATICA, DIARIA E ININTERRUMPIDA LA INJURIA Y LA CALUMNIA EN CONTRA DE LA PRESUNTA VICTIMA, NO EXISTE ÁNIMO CONCILIATORIO Y DESEA CONTINUAR CON LA ACCION PENAL.

CON LA MANIFESTACION DEL QUERELLANTE ESTE DESPACHO PROCEDERA A REMITIR A LA UNIDAD DE FISCALIA CORRESPONDIENTE PARA DAR INICIO DE LA ACCION PENAL. DEJANDO CONSTANCIA DE QUE ESTE DESPACHO AGOTÓ EL REQUISITO DE PROCEDIBILIDAD PREVISTO EN EL ARTÍCULO 522 DEL CÓDIGO DE PROCEDIMIENTO PENAL, HABIÉNDOSE ADELANTADO LAS ACTUACIONES CORRESPONDIENTES.
EN CONSECUENCIA, SE PROCEDERÁ A REMITIR LAS DILIGENCIAS A QUIEN CORRESPONDA, PARA LO DE SU COMPETENCIA.

**2. DATOS DEL SERVIDOR:**

| | |
|---|---|
| Nombres y apellidos: | FABIO EMEL LOZANO BLANCO |
| Dirección: | |

11001600000502026538891

Firma Electrónica,

FISCALÍA
Fiscalía General de la Nación
Fecha: 2026-05-11 12:20:03
Firmado :FABIO EMEL LOZANO BLANCO
Código: 0cf244a079 ,Firma electrónica



LUTHMANN DECL. 116 69

| FISCALÍA GENERAL DE LA NACIÓN | CONSTANCIA |
|---|---|

Hoja N°. 2 de 2

| Departamento | BOGOTÁ, D. C. | Municipio | BOGOTÁ, D.C. | Fecha | 2026 | 05 | 11 |
|---|---|---|---|---|---|---|---|

**NÚMERO ÚNICO DE NOTICIA CRIMINAL:**

| 1 | 1 | 0 | 0 | 1 | 6 | 0 | 0 | 0 | 0 | 5 | 0 | 2 | 0 | 2 | 6 | 5 | 3 | 8 | 9 | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Departamento | | Municipio | | | Entidad | | Unidad Receptora | | | | | Año | | | | Consecutivo | | | | |

| Departamento: | BOGOTÁ, D. C. | | Municipio: | BOGOTÁ, D.C. |
|---|---|---|---|---|
| Teléfono: | | Correo electrónico: | fis588locucppbog@fiscalia.gov.co | |
| Unidad | UNIDAD DE CONCILIACION PREPROCESAL - USAQUEN | | No. de Fiscalía | FISCALIA 588 |

**Firma Electrónica,**

DOCUMENTO FIRMADO ELECTRÓNICAMENTE POR:
FABIO EMEL LOZANO BLANCO.

110016000050202653891
Firma Electrónica,

Fiscalía General de la Nación
Fecha: 2026-05-11 12:20:02
Firmado :FABIO EMEL LOZANO BLANCO
Código: 0cf244a079 ;Firma electrónica