UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FILED - USDC - FLMD - FTM
SEP 11 2026 AM11:41

RICHARD LUTHMANN,
Plaintiff,
v.
DANESH NOSHIRVAN,
Defendant.

Case No. 2:25-cv-00337-KCD-NPM

**MOTION FOR LEAVE TO FILE, AND PROPOSED SPECIAL APPEARANCE AND AMICUS CURIAE BRIEF OF NON-PARTY JOSEPH ANTHONY CAMP IN OPPOSITION TO DEFENDANT'S RESPONSE (DOC. 106) AND IN SUPPORT OF JUDICIAL NOTICE OF THE COLOMBIAN JUDGMENT AND RELATED COLOMBIAN PROCEEDINGS**

Joseph Anthony Camp ("Camp"), a United States citizen lawfully residing in Bogotá, D.C., Colombia, and the plaintiff in the Colombian tutela proceeding that produced the July 2, 2026 judgment of the Sala Cuarta de Decisión Civil of the Tribunal Superior del Distrito Judicial de Bogotá, Radicación No. 11001310300320260029301 (the "Colombian Judgment"), respectfully appears specially as a non-party and interested amicus. Camp does not seek to intervene as a party, does not seek damages in this action, and does not ask this Court to execute the Colombian Judgment. He asks only that the Court not accept Defendant's misdescription of a proceeding in which Camp was the plaintiff, Defendant was served and answered, Plaintiff Richard Luthmann appeared as an interested third party, and a three-judge Colombian appellate chamber unanimously granted constitutional protection.

Camp files this brief because Defendant's Response (Doc. 106) makes assertions about Camp's case that Camp is uniquely positioned to correct: that Defendant was "unrepresented" and "never heard"; that the proceeding was a one-sided paper exercise; that the judgment is unauthenticated; that it concerns only Camp and therefore has no bearing here; and that the SPEECH Act forbids this Court even to notice that the judgment exists.

## I. INTEREST OF THE AMICUS

**1.** Camp is the person named in the Colombian Judgment. He is the person to whom the removal and abstention orders run. He is the person against whom Defendant, after notice of the judgment, wrote to the Colombian court: "I will not be taking anything down," "The court decision is invalid," and "I am not going to delete anything and I will continue to refer to Joseph Camp as a child molester."

**2.** Plaintiff Luthmann appeared in the same tutela as a third party with a legitimate interest. The Tribunal recorded that appearance. Defendant's claim that the Colombian Judgment "adjudicated

nothing about" Plaintiff is therefore only half true. The Tribunal did not grant Luthmann independent relief. It did receive and record his allegation of a similar pattern, on the same platforms, by the same publisher.

**3.** Camp has a concrete interest in the accurate description of a live Colombian file. The first-instance judge who originally denied the tutela, Honorable Liliana Corredor Martínez of the Juzgado Tercero Civil del Circuito de Bogotá, retains compliance jurisdiction under Articles 27 and 52 of Decree 2591 of 1991. On August 19, 2026, that court issued an Auto Previo requiring Meta Platforms, Inc. and Substack to prove compliance within three days or face opening of the *incidente de desacato*. Camp has since supplemented that incident with post-judgment publications, including an August 30, 2026 YouTube transmission in which Defendant repeated the same criminal imputations, announced republication "on all my platforms," and asked viewers in Bogotá to help "pinpoint [Camp's] exact location."

**4.** Defendant's counsel now asks an American court to treat that record as if it were a rumor assembled by "the adverse party's foreign lawyers." Camp is that party. The judgment is an electronically signed official act of the Rama Judicial, generated July 7, 2026, verification code a180d96f05aa74d941c986e1d31dae0fb91ae46c9e7c812a6a010d0a585eae3b, validatable at https://firmaelectronica.ramajudicial.gov.co/FirmaElectronica.

## II. WHAT CAMP ASKS THIS COURT TO DO — AND WHAT HE DOES NOT

**5.** Camp supports Plaintiff's request that the Court take judicial notice, under Federal Rule of Evidence 201, of the existence, case number, parties, procedural history, electronic signature, notification, and operative terms of the Colombian Judgment, and of the subsequent compliance and contempt filings in the same radicado.

**6.** Camp does **not** ask this Court to: (a) domesticate or execute the Colombian Judgment; (b) impose Colombian constitutional law as the rule of decision on Plaintiff's Florida claims; (c) treat the Tribunal's legal standard as controlling under the First Amendment; or (d) resolve the truth of any underlying accusation about Camp or about Plaintiff.

**7.** Those limitations matter. Defendant's Response collapses every use of a foreign judgment into "recognition or enforcement" under the SPEECH Act, 28 U.S.C. §§ 4101–4105. Congress barred domestic courts from recognizing or enforcing a foreign defamation judgment unless specified showings are made. It did not bar a federal court from noticing that a foreign court entered an order, that the defendant answered it, that he later told that court he would not obey it, and that a first-instance judge has opened compliance proceedings. Those are historical facts. Rule 201 permits notice of them. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994), forbids using another court's findings for their truth. It does not forbid noticing that the other court sat, ruled, and was told by the losing party that its order was "invalid."

## III. DEFENDANT'S ACCOUNT OF THE COLOMBIAN PROCEEDING IS INCOMPLETE AND, ON SEVERAL POINTS, FALSE

**A. Defendant was served, answered, and asserted defenses.**

**8.** Defendant's Response describes a man who "does not read Spanish," was "unrepresented," and was "given days to respond to a foreign-language petition." What the Tribunal's own judgment records is different.

**9.** The Juzgado Tercero Civil del Circuito de Bogotá admitted the tutela on May 28, 2026, and ordered notification of Defendant and linkage of Meta Platforms, Inc., Substack, Inc., the National Police, the Fiscalía, the Foreign Ministry, Migración Colombia, and the United States Embassy. Defendant filed a written *contestación*. File No. 007ContestaciónDaneshNoshirvan.pdf. In that answer he invoked freedom of expression, characterized the publications as opinion, satire, rhetorical hyperbole, or references to third-party reporting, argued that removal and future-speech orders would be incompatible with free expression, pointed to other remedies Camp had used, denied intent to cause harm, and accused Camp of harassing him by email.

**10.** That is participation. It is not "an unrepresented person's email to a foreign court that has summoned him," as counsel now styles it. It is a merits answer. The Tribunal treated it as such. It quoted Defendant's own concession that the challenged material consisted of "references to accusations, reports, or publications made by third parties." That concession was material to the Tribunal's conclusion that the publications were presented without judicial support.

**11.** After the July 2, 2026 appellate judgment was generated with electronic signature on July 7, 2026, the Secretariat notified the parties on July 9, 2026. Defendant acknowledged receipt the same morning, at 10:35 a.m., and again on July 11, 2026, at 1:05 p.m., in emails to the Secretariat copied to the trial court, the Attorney General's Office, the National Police, the Foreign Ministry, Migración Colombia, the United States Department of State, Instagram, and Substack. Those emails are not a mystery. They are the source of the quotations: "I will not be taking anything down." "The court decision is invalid." "I am not going to delete anything and I will continue to refer to Joseph Camp as a child molester."

**12.** A litigant who answers a petition, loses on appeal, and then writes the court that issued the judgment to announce that he will disobey it, has not been denied notice or an opportunity to be heard. He has used that opportunity and then rejected the result.

**B. The proceeding was not a secret, one-sided paper dump.**

**13.** Tutela is a summary constitutional action under Decree 2591 of 1991. It is designed to be fast. That is not a due-process defect under Colombian law; it is the point of the remedy. Both sides submitted writings. Linked public entities responded, including Migración Colombia, which confirmed Camp's regular stay on a *salvoconducto* pending a refugee application and confirmed that Defendant has no record of entering Colombia. Facebook Colombia S.A.S. appeared and identified Meta Platforms, Inc. as the administrator of Instagram. Meta and Substack were notified and remained silent.

**14.** First instance denied relief on June 11, 2026, on a *subsidiariedad* ground: the judge found an insufficient prior request for rectification. Camp appealed. Appeal in tutela is of right. The Fourth Civil Chamber deliberated on June 24 and July 2, 2026, Actas 24 and 25, and reversed. Three magistrates signed: Flor Margoth González Flórez, José Alfonso Isaza Dávila, and Martha Isabel García Serrano.

The judgment was not a clerk's form. It is a reasoned twenty-page opinion applying Sentencia T-256 de 2025 (moderate country-of-destination competence for cyber conduct with effects in Colombia), SU-420 de 2019 and T-561 de 2023 (exhaustion and platform duties), and the distinction between protected opinion and unprotected criminal imputation without judicial support.

**15.** Defendant says Camp "was never heard on the appeal." Camp was the appellant. Defendant had already placed his defenses in the file. The Tribunal addressed those defenses. If Defendant wished to file a further brief on appeal, he had the same electronic channels he later used to tell the court the judgment was "invalid." He used those channels to refuse compliance, not to argue the merits.

**C. The judgment is an official electronic act, not a Google Drive rumor.**

**16.** Defendant objects that the copy on this Court's docket lacks an apostille and that the English rendering is uncertified. Those are fair points about the form of Plaintiff's filing. They are not points about whether the judgment exists.

**17.** The Spanish original is an electronically signed judicial act under Ley 527 of 1999 and Decreto 2364 of 2012. It carries a verification code. Any person, including this Court or Defendant's counsel, can validate it on the Rama Judicial portal. Migración Colombia, the Fiscalía, the National Police, and the trial court are already on the same radicado. The August 19, 2026 Auto Previo of Judge Corredor Martínez recites the same operative paragraphs and the same case number.

**18.** Rule 44(a)(2) and Rule 902(3) address how a party proves a foreign official record at trial. They do not forbid judicial notice of a document whose authenticity can be confirmed on the issuing court's own website. Good cause to proceed without an apostille at the notice stage is obvious: the document is self-validating under Colombian electronic-signature law, Defendant has already treated it as authentic by answering it and denouncing it, and the only purpose now requested is notice of existence and terms, not execution.

## IV. THE SPEECH ACT DOES NOT REQUIRE THIS COURT TO PRETEND THE COLOMBIAN FILE DOES NOT EXIST

**19.** The SPEECH Act, 28 U.S.C. § 4102(a)(1), provides that a domestic court "shall not recognize or enforce a foreign judgment for defamation" unless the proponent makes specified showings. Camp agrees that this Court should not "enforce" the Colombian Judgment by contempt, attachment, or an American injunction tracking its operative paragraphs. That is a job for the Colombian judge who already has the *incidente de desacato.*

**20.** What Defendant seeks is broader than the statute. He asks the Court to refuse even to notice that the judgment was entered; to refuse to consider its existence as case-management context; and to treat any mention of it as a fee-shifting event under § 4105. That reading converts a statute about foreign libel tourism into a rule of silence. Congress did not enact a rule of silence.

**21.** Three distinctions matter. First, notice of existence is not recognition of preclusive effect. A court may notice that a foreign court entered a judgment without treating that judgment as establishing falsity in a Florida case. *Jones*, 29 F.3d at 1553. Second, the SPEECH Act's policy target is the libel tourist

who obtains a money judgment abroad and then sues to collect it here. *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013). Camp is not collecting a Colombian money judgment in Fort Myers. There is no money judgment. The Colombian relief is injunctive and constitutional: take-down by the platforms and an order that Defendant refrain from unsupported criminal imputations about Camp. Third, even if the Court concludes that "consideration as persuasive authority" would go too far under § 4102(a), that conclusion does not require denial of notice of the judgment's existence, of Defendant's answer, of Defendant's post-judgment emails, of Luthmann's third-party appearance, or of the open compliance proceeding. Those facts are independently admissible as party admissions, as evidence of notice, and as evidence of a continuing course of conduct. Fed. R. Evid. 801(d)(2).

**22.** Defendant's First Amendment comparison is a merits argument for another day. Camp does not ask this Court to adopt the Colombian rule that a criminal imputation is unprotected unless a court has already adjudicated the crime. Florida and federal law ask different questions: falsity, fault, opinion versus fact, and actual malice where required. Nothing in noticing that a Colombian court applied a different rule requires this Court to apply that rule. The opposite is true. The difference is why the SPEECH Act exists. The difference is not a reason to strike the foreign file from the American docket.

**23.** On personal jurisdiction, Defendant cites *Walden v. Fiore*, 571 U.S. 277 (2014), as if the Colombian court asserted power over a stranger who had never aimed anything at Colombia. The Tribunal found that the content circulated in Colombia, was geotagged to Bogotá, urged followers to "share my podcast in Bogotá so the entire city knows who he is," disclosed Camp's location, email, and migration status, and produced effects on a person lawfully residing in Bogotá. Defendant then appeared and answered. Whatever the correct American minimum-contacts analysis would have been *in a hypothetical Florida suit by Camp, the question under* § 4102(b) arises only if this Court is asked to recognize or enforce the judgment. It is not being asked to do that.

**24.** Section 230 is likewise a non-issue for the limited use Camp supports. Section 4102(c) forbids recognition or enforcement of a foreign judgment that would be inconsistent with 47 U.S.C. § 230. Noticing that a Colombian court ordered Meta and Substack to remove specified posts does not make those companies defendants here and does not impose Colombian platform duties on this Court's docket.

## V. RELEVANCE TO THIS CASE IS NOT IDENTITY OF PLAINTIFFS

**25.** Defendant's strongest practical point is that the Colombian Judgment names Camp, not Luthmann. That is true of the operative relief. It is not true of the record.

**26.** Luthmann appeared in the tutela. The Tribunal described him as a third party who alleged similar conduct and asked that his intervention be recognized. The same publisher, the same Instagram account, and the same Substack profile are at issue in both matters. Defendant's own Response ties this case to *Noshirvan v. Couture*, No. 2:23-cv-01218, on the theory of overlapping publications, witnesses, and a "repeatable method." A court that is willing to stay this case because of *Couture* cannot simultaneously declare that a reasoned appellate judgment about the same publisher, on the same platforms, entered after the same defendant answered, is irrelevant "pattern, notice, [and] context."

**27.** Camp takes no position on whether Plaintiff has stated a claim under Florida law. He does take the position that Defendant should not be heard to tell this Court that the Colombian file is a nullity, while telling the Colombian court that its judgment is "invalid," while continuing to publish the same categories of accusation the Tribunal ordered withdrawn, and while asking an American audience to help locate Camp in Bogotá.

**28.** Post-judgment conduct is not "the Colombian court's findings." It is Defendant's own speech after he had notice of a court order. On August 30, 2026 — eleven days after Judge Corredor Martínez required proof of compliance — Defendant published a roughly one-hour transmission on YouTube, https://www.youtube.com/watch?v=pV7p5mXwZ2o, in which he called Camp a "documented child *predator," said everyone in Bogotá "should be aware," announced he would cut the segment for* "all my platforms," asked viewers to help "pinpoint his exact location," promised he would "never lose track" "not while he is still breathing," and said he hoped "something horrible happens to him." Those statements are on a public URL. They do not require this Court to adopt Colombian constitutional doctrine. They require this Court, if it notices anything, to notice that the foreign proceeding did not end on July 2.

## VI. THE STAY

**29.** Camp is not a party and does not control the stay. He notes only that Defendant cannot have it both ways. If *Couture* is a reason to pause this case because of overlapping method and witnesses, the Colombian radicado is at least as much a live, identified proceeding involving the same Defendant and the same platforms. If the stay exists to conserve judicial resources, refusing to notice the one foreign judgment that actually names this Defendant, this account, and this pattern, does not conserve anything. It merely guarantees that the American file will be litigated in deliberate ignorance of a record Defendant himself created.

## VII. REQUESTED RELIEF

WHEREFORE, non-party Joseph Anthony Camp respectfully requests that the Court:

**A.** Grant leave to file this special appearance and amicus brief;

**B.** Take judicial notice, under Rule 201, of the existence, radicado, electronic signature and verification code, notification, parties, procedural history, and operative paragraphs of the July 2, 2026 judgment in 11001310300320260029301, and of the subsequent compliance filings and the August 19, 2026 Auto Previo of the Juzgado Tercero Civil del Circuito de Bogotá;

**C.** Decline Defendant's request that the SPEECH Act be read to forbid notice of those historical facts;

**D.** Decline to treat the Colombian Judgment as establishing the truth of any factual finding, as controlling law on Plaintiff's Florida claims, or as an order this Court will execute; and

**E.** Grant such other relief as is just.

Respectfully submitted this 4th day of September, 2026.

/s/ Joseph Anthony Camp
JOSEPH ANTHONY CAMP
*United States Passport No. A81664904*
Non-party / Proposed Amicus Curiae
Bogotá, D.C., Colombia

---

**CERTIFICATE OF SERVICE**

I certify that on September 4, 2026, a true copy of the foregoing was served by electronic mail upon:

Richard Luthmann, Plaintiff pro se
richard.luthmann@protonmail.com

Nicholas A. Chiappetta, Esq.
Counsel for Defendant Danesh Noshirvan
nick@chiappettalegal.com
Service@chiappettalegal.com

/s/ Joseph Anthony Camp
JOSEPH ANTHONY CAMP